IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

ROBERT BELLISTRI                      )
                                      )
              Plaintiff,              )
                                      )        Cause No. 06JE-CC893J4
v.                                    )
                                      )
GLEN CROUTHER, et.al.                 )
                                      )
              Defendants.             )

<u>CERTIFICATE OF SERVICE</u>

True and accurate copies of **Defendant Ocwen Loan Servicing, LLC's (1) Notice of**

**Appeal; (2) Court of Appeals Civil Case Information Form; (3) Judgment being appealed;**

**(4) Docket Fee of $70; and (5) Certificate of Service** were mailed postage-prepaid this 28th day

of May, 2008 to:

1.     Phillip Gebhardt, Attorney for Plaintiff/Respondent Robert Bellistri, 1270 North

       Main Street, Desoto MO  63020, pkgmag@swbell.net; and

2.     Richard Gartner, Attorney for Separate Defendant Glen L. Crouther, 220 Salt

       Lick Road, St. Peters MO  63376.

SHAPIRO & WEISMAN, LC

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Separate Defendant/Appellant Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext. 101
314-770-1850
S&W 07-2145
bhill@logs.com

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI,
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

ROBERT BELLISTRI,                                   )
                                                    )
                 Plaintiff,                         )
                                                    )
v.                                                  )      Case No. 06JE-CC00893
                                                    )
GLEN L. CROUTHER, and                               )      Division 4
                                                    )
OCWEN LOAN SERVICING, LLC, as agent and             )
servicer for DEUTSCHE BANK NATIONAL                 )
TRUST COMPANY, as Trustee for the registered        )
holders of the CDC MORTGAGE CAPITAL                 )
TRUST 2002-HE1, and                                 )
                                                    )
All unknown and unnamed persons or entities who     )
are the heirs, grantees or successors of            )
Glen L. Crouther, BNC Mortgage, Inc., or any        )
persons or entities who have, or claim to have, or  )
appear of record as having, an interest, deed of    )
trust, mortgage, lease, lien, claim, title, or estate in )
the real property and the improvements thereon, if  )
any, located in the County of Jefferson, in the State )
of Missouri, commonly known as 1210 Airglades,      )
Arnold, Missouri 63010, and more particularly       )
described as:                                       )
                                                    )
All of Lot Fifty-six (56) of BAYSHORE NORTH         )
PLAT ONE, a Subdivision in U.S. Survey 2020, as     )
shown by plat on file in the Recorder's Office of   )
Jefferson County, Missouri, in Plat Book 40, Pages  )
13 and 14,                                          )
                                                    )
                 Defendants.                        )

**FILED**

APR 0 4 2008

**HOWARD WAGNER
CIRCUIT CLERK**

---

**~~PLAINTIFF'S PROPOSED~~ JUDGMENT, ORDER AND DECREE GRANTING
PLAINTIFF'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT AND
DENYING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT OCWEN
LOAN SERVICING LLC, AS AGENT AND SERVICER FOR DEUTSCHE BANK
NATIONAL TRUST COMPANY, as Trustee for the registered holders of the CDC
MORTGAGE CAPITAL TRUST 2002-HE1**



1

Plaintiff's First Amended Motion for Summary Judgment and the Motion for Summary Judgment of Defendant Ocwen Loan Servicing LLC, as agent and servicer for Deutsche Bank National Trust Company, as Trustee for the registered holder of the CDC Mortgage Capital Trust 2002-HE1 (hereinafter sometimes referred to as "Defendant Ocwen") called for hearing on April 1, 2008. Plaintiff appeared by counsel. Defendant Ocwen appeared by counsel. Defendant Glen L. Crouther appeared not, even though Richard A. Gartner is entered as attorney of record for said Defendant. Arguments were heard on said Motions on April 1, 2008, and the cause was submitted to this Court for determination, subject to the right of Plaintiff to submit a proposed Judgment in this matter, Defendant Ocwen already having submitted same.

## UNCONTROVERTED MATERIAL FACTS

Based upon the motions for summary judgment and the supporting affidavits, documents and discovery provided to the Court, the Court finds the following uncontroverted material facts:

1.      By General Warranty Deed dated on or about March 5, 2002 and recorded on or about March 8, 2002 as Document No. 020012852 of the Jefferson County Land Records, Steven Gaither and Julie Gaither, husband and wife, conveyed the Property, as that term is defined herein, to Defendant Glen L. Crouther (See paragraph 2 of the Affidavit in Support of Plaintiff' Motion for Summary Judgment and the exhibit marked Summary Judgment No. 1, as well as the admission of paragraph 2 of Plaintiff's First Amended Motion for Summary Judgment in Separate Defendant Ocwen's Response to Plaintiff's Amended Motion for Summary Judgment.) The subject real estate (hereinafter sometimes referred to as the "Property") is located in Jefferson County, Missouri, commonly known as 1210 Airglades, Arnold, Missouri 63010, and more particularly described as follows:

All of Lot Fifty-six (56) of BAYSHORE NORTH PLAT ONE, a Subdivision in U.S. Survey 2020, as shown by plat on file in the Recorder's Office of Jefferson County, Missouri in Plat Book 40, Pages 13 and 14.

2.      By Deed of Trust dated on or about March 2, 2002, and recorded on or about March 8, 2002, as Document No. 020012853 of the Jefferson County Land Records, Defendant Glen L. Crouther (a single person), as Grantor, conveyed a security interest in the Property to Millsap & Singer, P.C., as Trustee for Mortgage Electronic Registration Systems, Inc., acting solely as nominee for BNC Mortgage, Inc., and its successors and assigns, to secure indebtedness in the amount of $93,595.00 and other charges specified therein (hereinafter sometimes referred to as the "Deed of Trust"). (See paragraph 3 of the Affidavit in Support of Plaintiff's Motion for Summary Judgment and the exhibits marked Summary Judgment No. 2 and Defendant's Exhibit RSJ-1 and B-SJ1.)

3.      Said Deed of Trust states, in part:

DEFINITIONS

....

(B)     "Borrower" is Glen L. Crouther, a single person, .... Borrower is the trustor under this Security Instrument.

GRANTEE:     BNC MORTGAGE, INC., A DELAWARE CORPORATION

(C)     "Lender" is BNC MORTGAGE, INC. ...

(D)     "Trustee" is Millsap, Singer & Dunn, P.C. ...

(E)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. ...

TRANSFER OF RIGHTS IN THE PROPERTY

*3*

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property ....

4.     A review of the Deed of Trust indicates that the Lender is granted all substantive rights under the Deed of Trust, and MERS is named therein solely as a nominee of the Lender and Lender's successors and assigns.

5.     By Notice of Federal Tax Lien dated on or about March 23, 2005 and recorded on or about March 29, 2005, as Tax Lien No. 23273 of the Jefferson County Land Records, Defendant Internal Revenue Service gave notice of a lien against Defendant Glen L. Crouther in the amount of $25,205.74 and other charges specified therein. (Plaintiff's Summary Judgment Exhibit No. 3, as well as the admission of paragraph 4 of Plaintiff's First Amended Motion for Summary Judgment in Separate Defendant Ocwen's Response to Plaintiff's Amended Motion for Summary Judgment.)

6.     The Court takes judicial notice that the Internal Revenue Service has filed a disclaimer of interest in the real estate that is the subject of this litigation, and Plaintiff has dismissed the Internal Revenue Service as a Defendant herein as well as BNC Mortgage, Inc., which was originally named as a Defendant herein.

7.     A Collector's Deed dated on or about September 19, 2006 and recorded on or about September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records has been issued by Beth Mahn, the Collector of Revenue of Jefferson County, Missouri, to Plaintiff Robert Bellistri (hereinafter sometimes referred to as the "Collector's Deed"). (See paragraph 5 of

the Affidavit in Support of Plaintiff's Motion for Summary Judgment and the exhibit marked Summary Judgment No. 4, as well as the limited admission of paragraph 5 of the Plaintiff's First Amended Motion for Summary Judgment in Separate Defendant Ocwen's Response to Plaintiff's Amended Motion for Summary Judgment.)

8.     The August 22, 2005 tax sale pursuant to which Plaintiff obtained the Collector's Deed was not the third such offering by the Jefferson County Collector.  (See Plaintiff's Responses to Defendant Ocwen's Request for Admissions No. 1, Defendant Ocwen's Exhibit RSJ-5).

9.     Plaintiff did not mail by certified mail any notice of any right to redeem, or any other correspondence, to Mortgage Electronic Registration Systems, Inc. ("MERS").  (See Plaintiff's Responses to Defendant Ocwen's Request for Admissions Nos. 5, 6, 8, 13, 14 and Defendant Ocwen's Exhbits RSJ-5 and RSJ-3.)

10.     Plaintiff's letter of May 12, 2006 addressed to BNC Mortgage is the only purported notice of the right to redeem to any person or entity listed on the Deed of Trust, and states in part: "To redeem your security claim, contact, [sic] Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406 with [sic] 90 days from the date of receipt of this letter." (See Plaintiff's Responses to Defendant Ocwen's Request for Admissions No. 14 and Defendant Ocwen's Exhibits RSJ-6 and RSJ-5.)

11.     By Assignment of Deed of Trust dated on or about April 4, 2007, and recorded on or about April 23, 2007, as Document No. 2007R-018586 of the Jefferson County Land Records, Mortgage Electronic Registration Systems, Inc., as nominee for Defendant BNC Mortgage, Inc., assigned the above-described Deed of Trust to Ocwen Loan Servicing, L.L.C., as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage

Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HEI. (See the Affidavit in Support of Plaintiff's First Amended Motion for Summary Judgment and exhibits marked Summary Judgment Exhibit No. 5 and Defendant Ocwen's Exhibit RSJ-3).

## I.

## STANDARD OF JUDICIAL REVIEW

The Plaintiff's First Amended Motion for Summary Judgment is a motion for summary judgment by a claimant within the purview of Missouri Supreme Court Rule 74.04. Defendant Ocwen's Motion for Summary Judgment is a motion for summary judgment by a defending party within the purview of Missouri Supreme Court Rule 74.04, as Defendant Ocwen has not filed any counterclaims in this action. As stated in *ITT Commercial Finance v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993):

> A movant's right to judgment as a matter of law differs significantly depending upon whether that movant is a 'claimant' or a 'defending party.' A 'claimant' must establish that there is no genuine dispute as to those material facts upon which the 'claimant' would have had the burden of persuasion at trial.
>
> ...
>
> The prima facie showing required by Rule 74.04(c) is necessarily different where the movant is a "defending party." Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to

judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper.

854 S.W.2d at 381.

## II.

## STATUTORY AND CONSTITUTIONAL FRAMEWORK FOR DELINQUENT TAX SALES UNDER THE JONES-MUNGER ACT

There are three (3) sets of Missouri statutes currently in use that authorize the sale of real estate for the non-payment of real estate taxes: (A) the Missouri Municipal Land Reutilization Law, Sections 92.700 to 92.920, RSMo, which applies to the City of St. Louis, Missouri, (B) the Land Tax Collection Act, Sections 141.210 to 141.810, RSMo, which applies to Jackson County and which may apply to some parts of Kansas City, Missouri, lying outside Jackson County, Missouri under Section 141.230, RSMo, and (C) the Jones-Munger Act, Chapter 140, RSMo, which applies to all other counties and some or all cities in Missouri. Under the provisions of Sections 141.160 or 141.230, RSMo, or other applicable law, St. Louis County, Missouri, a first class constitutional charter county, has elected by ordinance to use the Jones-Munger Act, Chapter 140, RSMo, to foreclose tax liens, instead of the Land Tax Collection Act, Chapter 141, RSMo. The delinquent tax sale procedures currently used in the City of St. Louis and Jackson County are based upon judicial foreclosure of tax liens through land tax suits and provide judicial confirmation of the delinquent tax sale as one of the procedures followed in land tax suits. The procedures under the Jones-Munger Act, Chapter 140, RSMo, are based upon administrative actions taken by the county collector of revenue in conducting delinquent tax sales. Suits to confirm these administrative procedures are authorized under Section 140.330, RSMo. Among other things, this case is an action to confirm the administrative foreclosure of tax lien encumbering the Property described in Plaintiff's Petition

7

under Section 140.330, RSMo.

The Jones-Munger Act, Chapter 140, RSMo, provides for the annual sale of real estate on which payments of real property taxes have been delinquent. Section 140.150.1, RSMo. Prior to the sale, the county collector must publish notice each week for three (3) consecutive weeks. Section 140.170.1, RSMo. On the fourth Monday in August of each year, the county collector conducts a delinquent tax sale. Section 140.150.1, RSMo. If, at the first offering, no one bids a sum equal to the delinquent taxes thereon with interest, penalties and costs, a second offering is made the following August. Section 140.240.1, RSMo. If no one submits an adequate bid in an amount equaling or exceeding the accrued taxes, interest and penalties at the second offering, a third offering is made the following August, and the property is sold to the highest bidder. Section 140.250.1, RSMo. Taxing authorities, acting through a trustee, are authorized to bid at third offering delinquent tax sales to prevent loss to the taxing authorities from inadequate bids. Section 140.260.1, RSMo.

A first or second delinquent tax sale under the Jones-Munger Act is followed by the issuance of a tax sale certificate of purchase and a one-year redemption period during which the "owner or occupant of any land or lot sold for taxes, or any other person having an interest therein, may redeem the same" by paying the county collector the purchase price plus cost of the sale and interest. Section 140.340.1, RSMo. A party redeeming their interest in a property sold at a first or second offering delinquent tax sale is required to pay ten percent (10%) per annum on the delinquent taxes and other costs (the opening bid at the delinquent tax sale), together with interest at the rate of eight percent (8%) per annum on any subsequent taxes paid by the delinquent tax sale purchaser after the tax sale. Section 140.340.1, RSMo. The Property was not sold at a third offering delinquent tax sale. The Collector's Deed issued in this case was issued to a certificate holder, not to a purchaser at a third

offering delinquent tax sale.  See Summary Judgment No. 4.

The purchaser at a first or second offering delinquent tax sale acquires a certificate of purchase.  Section 140.290.1, RSMo.  The "holder of a certificate of purchase, throughout the … [one year] immediately succeeding the delinquent tax sale, is vested with an inchoate or inceptive interest in the land subject to the absolute right of redemption in the record owner in whom the title remains vested." *M & P Enterprises, Inc. v. Transamerica Financial Services,* 944 S.W.2d 154, 157 (Mo. banc 1997) (*quoting, State ex rel. Baumann v. Marburger*, 182 S.W.2d 163, 165 (Mo. 1944)).

Legal title may not vest in the purchaser until the period of redemption has lapsed.  After the one-year redemption period has expired, the purchaser can consummate the delinquent tax sale and foreclose any rights of redemption under the tax liens foreclosed by applying for a collector's deed in compliance with the notice requirements of Section 140.405, RSMo.  If no one redeems their interest in the property during the statutory redemption period, the county collector executes to the purchaser a deed to the property, which vests in the grantee an absolute estate in fee simple, subject to certain interests discussed in detail elsewhere in the Memorandum.  Section 140.420.1, RSMo.

Under the Jones-Munger Act, prior notice of the sale of property for delinquent taxes was historically conducted solely by publication.  The Jones-Munger Act did not require that prior mailed notice be sent to lien holders or owners of record.  Section 140.010, 140.150, and 140.170, RSMo. Prior to the decision of the United States Supreme Court in *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983), constructive notice by publication alone was held to comport with the constitutional requirements of due process under the theory "that those with an interest in property were under an obligation to act reasonably in keeping themselves informed of proceedings that affected that property." *Id.* at 804 (O'Connor, J., dissenting).

*Mennonite Board of Missions* brought about a significant change in the notice procedures required to enforce state tax liens. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at 798.  Accordingly, the Supreme Court of Missouri in *Lohr v. Cobur Corp.*, 654 S.W.2d 833 (Mo. banc 1983), citing *Mennonite Board of Missions*, held that the notice-by-publication procedure of the Jones-Munger Act was insufficient to satisfy the due process rights of a publicly recorded deed of trust holder: "We conclude that where a deed of trust naming the deed of trust beneficiary is publicly recorded, notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known available address or by personal service." *Id.* at 886.

In apparent response to the *Mennonite Board of Missions* and *Lohr* decisions, the General Assembly of Missouri attempted to cure the constitutional defect in the Jones-Munger Act by amending Section 140.250 and by enacting a new Section 140.405, RSMo, in 1984. Senate Bill No. 707, 1984 *Mo. Laws* 431-32.  Rather than requiring county collectors to provide prior mailed notice to owners, lien holders or other interested parties of record, the General Assembly required the purchaser of the tax sale certificate or of property sold at a third offering delinquent tax sale to conduct a title examination and mail post-sale notice to inform interested parties, including lien holders, of their tax sale redemption rights prior to the expiration of the redemption rights in the property.  Apparently, the General Assembly chose not to impose on the collectors of revenue the cost of providing notice, which would include the cost of conducting a title examination on each property to be sold and the cost of mailing notice to all lien holders identified.

A recent significant United States Supreme Court decision on the notice required by the

Fourteenth Amendment to the United States Constitution in order for a state to deprive a person of real property at a delinquent tax sale is *Jones v. Flowers*, 547 U.S. ____, 126 S. Ct. 1708 (2006). The Court held that when attempted notice of tax sale redemption rights is sent by certified mail and returned unclaimed, additional steps must be taken, such as: (1) Notice of tax sale redemption rights must be sent by regular mail, as well as certified mail; (2) notice of tax sale redemption rights must be posted on improved property; and (3) notice of tax sale redemption rights must be mailed addressed to "Occupant" at the address of the property that is the subject of the delinquent tax sale.

The notice provisions of Section 140.405, RSMo, have not yet been amended by the General Assembly to incorporate the ruling in *Jones v. Flowers*. No assertions that notice of tax sale redemption rights were not sent to the last known available address of any party or that any such notices were not received or of any *Jones v. Flowers* claims exist in this case.

If proper notice is given (and all other procedural requirements are met), under Section 140.420, RSMo, the grantee of a collector's deed issued under the Jones-Munger Act is vested with an absolute estate in fee simple free and clear of:

A.     Any unrecorded interests in the property under Section 140.330.1, RSMo (*see, e.g,, Trailwoods Homeowners' Association v. Scott,* 938 S.W.2d 669 (Mo. App., E.D. 1997) (adverse possession claims do not survive a delinquent tax sale under the Jones-Munger Act); and

B.     Any publicly recorded deed of trust, mortgage, lease, lien or claim upon the property that is "forever barred" under Section 140.405, RSMo.

Collectors' deeds under the Jones-Munger Act are specifically made subject to:

*11*

A.     All claims for unpaid taxes, except such unpaid taxes existing at the time of the purchase of said lands and the lien for which taxes was inferior to the lien for taxes for which said tract or lot of land was sold under Section 140.420, RSMo; and

B.     Valid recorded covenants running with the land and to valid easements of record or in use under Section 140.722, RSMo.

## III.

### THE COLLECTOR'S DEED IN FAVOR OF PLAINTIFF IS PRIMA FACIE EVIDENCE OF GOOD AND VALID TITLE IN PLAINTIFF, UNENCUMBERED BY ANY INTEREST OF DEFENDANTS; HOWEVER, THE DEFENDANTS HAVE THE RIGHT TO ATTEMPT TO OVERCOME THIS PRIMA FACIE EVIDENCE OF REGULARITY IN THE ISSUANCE OF THE COLLECTOR'S DEED BY OFFERING THEIR OWN EVIDENCE AT VARIANCE WITH THE TITLE.

Section 140.420, RSMo, provides that collector's deeds issued under the provisions of the Jones-Munger Law, Chapter 140, RSMo, "shall vest in the grantee an absolute estate in fee simple, subject, however, to [certain encumbrances not relevant here]". Section 140.460.2, RSMo, provides that such Collector's Deeds "shall be prima facie evidence that the property conveyed was subject to taxation at the time assessed, that the taxes were delinquent and unpaid at the time of sale, of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, that said land or lot had not been redeemed and that the period therefore had elapsed, and prima facie evidence of a good and valid title in fee simple in the grantee of said deed".

In *Stadium West Properties v. Johnson,* 133 S.W.3d 128 (Mo. App., W.D. 2004), the Court stated:

At the outset, we note that a tax deed which has been properly

"recorded in the recorder's office before delivery" as provided in § 140.460.1, RSMo 2000, is to be considered "prima facie evidence . . . of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, . . . and prima facie evidence of a good and valid title in fee simple in the grantee of said deed[.]" § 140.460.2, RSMo 2000. As the Missouri Supreme Court observed in *Mitchell v. Atherton*, 563 S.W.2d 13, 17-18 (Mo. banc 1978), this means that such a deed is also "prima facie evidence of notice in compliance with the law because notice and sale would be 'prior proceedings' under sec. 140.460." Of course, this does not prevent an opposing party from attempting to overcome this prima facie evidence of regularity by offering its own evidence at variance with the title, id. at 18, which is exactly what Stadium West did here. *See, e.g., Nole v. Wenneker*, 609 S.W.2d 212, 215 (Mo. App. W.D. 1980).

133 S.W.3d at 136 (footnote omitted).

The Collector's Deed purporting to convey same to Plaintiff is *prima facie* evidence of good and valid title in fee simple in Plaintiff, unencumbered by any interest, deed of trust, mortgage, lease, lien, claim, title, or estate of Defendants. This, however, does not prevent Defendants from offering their own evidence at variance with the title in favor of Plaintiff. Defendant Glen L. Crouther has failed to respond to Plaintiff's First Amended Motion for Summary Judgment and has offered no evidence to rebut the statutory presumption of regularity in Section 140.460, RSMo. Defendant Ocwen challenges the validity of the Collector's Deed on the following grounds: (1) Defendant Ocwen argues that Plaintiff failed to comply with Section 140.405, RSMo, and thus lost all interest in the Property by failing to provide MERS with any tax sale redemption notice; and (2) Defendant Ocwen argues that Plaintiff failed to comply with Section 140.405, RSMo, and thus lost all interest in the Property by giving BNC Mortgage, Inc. a tax sale redemption notice that incorrectly stated the duration of that party's tax sale redemption rights.

## IV.

**DEFENDANT GLEN L. CROUTHER HAS FAILED TO PRODUCE ANY EVIDENCE AT VARIANCE WITH THE TITLE AS SHOWN BY THE COLLECTOR'S DEED, AND THE PRIMA FACIE EVIDENCE OF GOOD AND VALID TITLE IN FAVOR OF PLAINTIFF SHOWN BY THE COLLECTOR'S DEED HAS NOT BEEN OVERCOME AS TO DEFENDANT GLEN L. CROUTHER.**

Defendant Glen L. Crouther has failed to respond to Plaintiff's First Amended Motion for Summary Judgment. Under Missouri Supreme Court Rule 74.04(c), the failure of Defendant Glen L. Crouther to respond to the statement of uncontroverted facts in Plaintiff's First Amended Motion for Summary Judgment acts as an admission of those facts, including the issuance of the Collector's Deed. Plaintiff's First Amended Motion for Summary Judgment is granted as to Defendant Glen L. Crouther.

## V.

**DEFENDANT OCWEN DOES NOT HAVE STANDING TO CHALLENGE THE COLLECTOR'S DEED BASED ON ANY PURPORTED NONCOMPLIANCE WITH SECTION 140.405, RSMO, BECAUSE DEFENDANT OCWEN WAS NOT ENTITLED TO NOTICE UNDER SECTION 140.405, RSMO, AND IS NOT WITHIN THE CLASS OF PERSONS ENTITLED TO PROTECTION UNDER SECTION 140.405, RSMO.**

In *Glasgow Enterprises, Inc. v. Bowers*, 196 S.W.2d 625 (Mo. App., E.D. 2006), the Court interpreted Section 140.405, RSMo, as requiring tax sale redemption notices to be sent to those parties having a publicly recorded interest in the real estate as of the beginning of the ninety-day redemption period provided by that statute. Because the appellants in the *Bowers* decision had acquired their interest in the subject property after the beginning of the redemption period, they were not entitled to notice under Section 140.405, RSMo. Likewise, in this case, Defendant Ocwen

acquired its interest in the subject property not only after the redemption period began but after the Collector's Deed had been issued.  Defendant Ocwen was not entitled to notice under Section 140.405, RSMo.  Further, Defendant Ocwen acquired its interest in the Property with at least constructive knowledge of the issuance of the Collector's Deed under the Missouri Recording Act (Sections 442.380 to 442.400, RSMo).  Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HEI, the entity that Ocwen Loan Servicing LLC acts as servicer or agent for in holding title to the Deed of Trust, must be presumed to have known of the issuance of the Collector's Deed under the Missouri Recording Act, but said entity acquired the Deed of Trust despite this constructive notice.  The Court finds that Defendant Ocwen does not have standing to challenge this Collector's Deed.  However, as an alternative basis for this Court's ruling, the Court has examined the merits of Defendant Ocwen's arguments as follows:

## VI.

### MERS IS NAMED AS A NOMINEE AND BENEFICIARY UNDER THE DEED OF TRUST AND CANNOT BE BOTH BENEFICIARY AND NOMINEE OF THE DEED OF TRUST UNDER MISSOURI LAW; THEREFORE, MERS WAS NOT ENTITLED TO NOTICE UNDER SECTION 140.405, RSMO.

The Deed of Trust in question identifies MERS as the beneficiary of the Deed of Trust, and *Glasgow Enterprises, Inc. v. Kusher,* 231 S.W.3d 201, 204-205 (Mo. App., E.D. 2007), holds that tax sale redemption notices must be sent to the beneficial owner of the Deed of Trust.

In *Prindable v. Walsh,* 69 S.W.3d 912, 913 (Mo. App., E.D. 2002), the Court stated:

> The term "nominee" has an established meaning in the law of securities. See definition in Black's Law Dictionary, 7th Edition 1999, definition of "nominee: . . .2. A person who holds bare legal title for the benefit of others or who receives and distributes funds for the

benefit of others. . ." Most corporate shares, indeed, are probably issued in the names of nominees. The typical example is the conventional brokerage account. *If a person is a nominee for another, the nominee is not the beneficial owner.*

(Emphasis added.)

In this case, the Deed of Trust identifies MERS as a beneficiary of the Deed of Trust and also states that MERS is acting solely as a nominee for Lender and Lender's successors and assigns. These are inconsistent statements under Missouri law, as MERS cannot be both the beneficiary of the Deed of Trust and the nominee of another who is holding bare legal title to the Deed of Trust for another beneficiary. Under Missouri law, the Deed of Trust's designation of MERS as both a beneficiary of the Deed of Trust and as a nominee holding bare legal title to the Deed of Trust is ambiguous if not inconsistent or contradictory.

Looking to the *Kusher* case for guidance, the Court finds that it was held that sending tax sale redemption notices to the trustee of a deed of trust was not in compliance with Section 140.405, RSMo, as the trustee of a deed of trust holds bare legal title to the security interest for the benefit of the beneficiary, but the trustee is not the holder of the deed of trust for purposes of Section 140.405, RSMo. *Compare Lohr v. Cobur Corporation,* 654 S.W.2d 883, 887 (Mo. banc 1983) (Blackmar, J., concurring) (asking the question answered by *Kusher* as to whether the trustee under a deed of trust is entitled to tax sale redemption notices).

By analogy, this Court cannot conclude that a nominee holding bare legal title for the benefit of others is the holder of a deed of trust entitled to tax sale redemption notices. If a trustee serving under the Deed of Trust and to whom legal title has been transferred is not a party to whom notice of tax sale redemption rights must be given under Section 140.405, RSMo, as was held in *Kusher,* a

nominee holding bare legal title to the beneficial interest under the deed of trust is not the holder of

the deed of trust for purposes of Section 140.405, RSMo.

The Court concludes that MERS is acting solely as nominee for the Lender, BNC Mortgage,

Inc., and its successors and assigns, and that the designation of MERS as beneficiary in the Deed of

Trust means that MERS holds bare legal title of the beneficial interest of the Deed of Trust for the

benefit of BNC Mortgage, Inc., the then-actual beneficial owner of the Deed of Trust.

Based upon the foregoing, the Court concludes that MERS is not a necessary or indispensable

party to these proceedings, and that MERS did not hold a publicly recorded deed of trust

encumbering the Property within the meaning of the word "holds" as used in Section 140.405,

RSMo, and that Section 140.405, RSMo, does not require that notice be sent to MERS.

## VII.

### THE NOTICE OF TAX SALE REDEMPTION RIGHTS SENT TO BNC MORTGAGE, INC. DOES NOT INCORRECTLY STATE THE DURATION OF THE REDEMPTION RIGHTS OF BNC MORTGAGE, INC.

Defendant Ocwen, relying on *Valli v. Glasgow Enterprises, Inc.,*  204 S.W.3d 273 (Mo.

App., E.D. 2006), argues that the language of the May 12, 2006 tax sale redemption notice sent to

BNC Mortgage, Inc., does not comply with Section 140.405, RSMo, because said notice purportedly

incorrectly states the duration of the tax sale redemption period, purportedly on the basis that said

notice of tax sale redemption rights states that the tax sale redemption period begins on receipt of the

tax sale redemption letter and not when an affidavit is filed with the Jefferson County Collector of

Revenue stating that proper notice has been given.  In *Valli v. Glasgow Enterprises, Inc.*, 204 S.W.3d

273, 276 (Mo. App., E.D. 2006), the Court interpreted Section 140.405, RSMo, as follows:

This Section, as a prerequisite to an application for a Collector's Deed, imposes on purchasers several distinct notice requirements. First, this Section identifies who must be notified, that is, "any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon th[e] real estate" in question, "including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale." Second, this Section provides for how notice is to be provided, that is, "by certified mail ... at such person's last known available address." Third, this Section provides when notice must be sent, that is, "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed." Finally, this Section identifies what such persons are entitled to be notified of, that is, of their right to "redeem said property" within ninety days from the date the county collector receives an affidavit from the purchaser that "proper notice has been given," or such party will "be forever barred from redeeming said property."

Defendant Ocwen argues that the May 12, 2006 redemption notice fails to comply with the interpretation of Section 140.405, RSMo, found in *Valli*.

The *Valli* decision does not specifically state whether the property at issue in that case was sold at a third offering delinquent tax sale or a first or second offering delinquent tax sale.

Based upon the following analysis, this Court concludes that *Valli* may be an accurate interpretation of Section 140.405, RSMo, as that statute applies to third offering delinquent tax sales, but *Valli* does not correctly state the law applicable to first or second offering delinquent tax sales, such as is the circumstance here.

Section 140.405, RSMo, currently states:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. ***At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease,***

> *lien or claim upon that real estate of the latter person's right to*
> *redeem such person's publicly recorded security or claim.* Notice
> shall be sent by certified mail to any such person, including one who
> was the publicly recorded owner of the property sold at the delinquent
> land tax auction previous to such sale, at such person's last known
> available address. Failure of the purchaser to comply with this
> provision shall result in such purchaser's loss of all interest in the real
> estate. *If any real estate is purchased at a third-offering tax auction*
> *and has a publicly recorded deed of trust, mortgage, lease, lien or*
> *claim upon the real estate, the purchaser of said property at a third-*
> *offering tax auction shall notify anyone with a publicly recorded*
> *deed of trust, mortgage, lease, lien or claim upon the real estate*
> *pursuant to this section.   Once the purchaser has notified the*
> *county collector by affidavit that proper notice has been given,*
> *anyone with a publicly recorded deed of trust, mortgage, lease, lien*
> *or claim upon the property shall have ninety days to redeem said*
> *property or be forever barred from redeeming said property.* If the
> county collector chooses to have the title search done then the county
> collector must comply with all provisions of this section, and may
> charge the purchaser the cost of the title search before giving the
> purchaser a deed pursuant to section 140.420.

(Emphasis added.)  Elsewhere in this Judgment the first italicized sentence is sometimes referred to

as the "At Least 90-day Provision" and the second set of italicized sentences are sometimes referred

to as the "90-day Provision".

Since its original enactment in 1984, Section 140.405, RSMo, has undergone amendments in

1987, (House Bill No. 283, 1987 Mo. Laws 542), 1996 (House Committee Substitute for Senate Bill

No. 914, 1996 Mo. Laws 268), 1998 (Conference Committee Subsitute #2 for House Committee

Substitute for Senate Bill No. 778, 1998 Mo. Laws 1367), and 2003 (House Committee Substitute

for Senate Committee Substitute for Senate Bill No. 295, 2003 Mo. Laws 965).

The Jones-Munger Act was originally enacted in 1933.  Beginning in 1939 through the

effective date of the enactment of Senate Bill No. 707 in 1984, there was no right of redemption after

a third offering delinquent tax sale. *M & P Enterprises, Inc. v. Transamerica Financial Services,*

944 S.W.2d 154, 157 (Mo. banc 1997).  As originally enacted in 1984, Section 140.405, RSMo, was interpreted as giving tax sale redemption rights to parties interested in properties sold at third sale. *Russo v. Kelm*, 835 S.W.2d 568 (Mo. App., E.D. 1992).  Because trustees appointed by the relevant county under Section 140.260, RSMo, purchase properties sold at third offering delinquent tax sales, Section 140.405, RSMo, as originally enacted in 1984, required county trustees to provide notice to those entitled under Section 140.405, RSMo, when a county trustee purchased property at a third offering delinquent tax sale. *Russo*, 835 S.W.2d at 570.

The 1987 amendments to Sections 140.250 and 140.405, RSMo, eliminated the right of redemption of parties interested in properties sold at a third offering delinquent tax sale and concomitantly eliminated the obligation of county trustees to provide tax sale redemption notices to those interested in properties sold at third offering delinquent tax sales. *M & P Enterprises, Inc. v. Transamerica Financial Services*, 944 S.W.2d 154, 157 (Mo. banc 1997).  In particular, the Court in the *M & P Enterprises, Inc.* case held that the "At Least 90-day Provision" in Section 140.405, RSMo, applies to first or second offering delinquent tax sales where a certificate of purchase has been issued and a collector's deed is issued under Section 140.420, RSMo, and the Court specifically held that the "At Least 90-day Provision" does not apply when a collector's deed is issued after a third offering delinquent tax sale (where no certificate of purchase is issued) under Section 140.250, RSMo.

In apparent response to the *M & P Enterprises, Inc.* case, the General Assembly amended Section 140.405, RSMo, in 1998, to provide parties interested in properties sold at third offering delinquent tax sales a ninety-day right of redemption by enacting what the Court has designated as the "90-day Provision".

Although it would have been much less confusing if the General Assembly had specifically stated in the second sentence of the "90-day Provision" that the "90-day Provision" applies only to purchasers at third offering delinquent tax sales, the differences between the "At Least 90-day Provision" and the "90-day Provision" make it clear that the "90-day Provision" applies only to third offering delinquent tax sales.

The "90-day Provision" requires the filing of an affidavit of proper notice with the county collector.  The "At Least 90-day Provision" has no requirement for filing such an affidavit.  The affidavit is important in the "90-day Provision", as the filing of the affidavit commences the 90-day redemption period applicable to third offering sales.  The right of redemption from third offering delinquent tax sales exists solely by virtue of the 1998 amendment to Section 140.405, RSMo, and did not exist prior to that time, except for a limited period from 1984 through 1987.  The redemption period applicable to first or second offering delinquent tax sales is dependent upon the interaction of various laws, including Section 140.405, RSMo, in creating redemption rights for those interested in properties sold at first or second offering delinquent tax sales, such as Section 140.340, RSMo (which creates an absolute one-year period for redemption), Section 140.410, RSMo (which requires the collector's deed to be issued within two years of the issuance of the certificate of purchase or else the certificate of purchase expires), 26 U.S.C. Section 7425 (giving the Internal Revenue Service a redemption period of 120 days), as well as the "At Least 90-day Provision" of Section 140.405, RSMo.

In this case the tax sale redemption notice was mailed on May 12, 2006, with respect to property that was sold on August 22, 2005.  Under Section 140.340, RSMo, the first day the property was eligible for issuance of a collector's deed was August 23, 2006.  The period from May 12, 2006,

*21*

to August 23, 2006 is more than ninety days. Use of the notice required by the *Valli* decision would have incorrectly stated the redemption period in this case.

Under the "At Least 90-day Provision" of Section 140.405, RSMo, tax sale redemption notices must be sent at least ninety days prior to the date when a purchaser is authorized to acquire the deed. In large part, the tax sale purchaser determines when the purchaser is authorized to acquire the deed. *Boston v. Williamson,* 807 S.W.2d 216, 218 (Mo. App., W.D. 1991). For example, a collector's deed is not authorized to be issued until subsequent taxes are paid, Section 140.440, RSMo, the original of the certificate of purchase is produced to the collector of revenue, Section 140.420, RSMo, the recording fee for the collector's deed is paid to the collector, Section 140.460, RSMo, as well as the provision of notice of tax sale redemption rights under Section 140.405, RSMo. Within the one-year and two-year parameters established by Sections 140.340 and 140.410, RSMo, the purchaser at a first or second offering sale has wide latitude in determining when the deed is authorized to be issued. In this case, the Collector's Deed was not issued until September 19, 2006, even though the earliest date that the certificate holder might have become eligible to obtain a collector's deed was August 23, 2006. In this case, the redemption period was longer than ninety days, which is accommodated by the "At Least 90-day Provision". The "90-day Provision" makes sense only if it is applied to third offering delinquent tax sales, which have no redemption period other than that provided by Section 140.405, RSMo.

The purpose of the 1998 amendment to Section 140.405, RSMo, appears to have been the legislative reversal of the *M & P Enterprises, Inc.* case, not application of the 90-day redemption period to first and second offering delinquent tax sales. If the language of the *Valli* decision were applied to first and second delinquent tax sales, it would be possible for a tax sale purchaser to

*22*

purchase a certificate in August of a particular year and then provide the 90-day redemption notice required by the "90-day Provision" the very next day after the tax sale purchase without waiting for the expiration of the one-year redemption right provided by Section 140.340, RSMo. The Court is not convinced that the 1998 amendment to Section 140.405, RSMo, was intended to be an implied repeal of the one-year redemption period in Section 140.340, RSMo, or the two-year expiration period provided by Sections 140.410, RSMo. The "At Least 90-day Provision" in Section 140.405, RSMo, accommodates the actual redemption period for first and second offering delinquent tax sales.

The "At Least 90-day Provision" merely requires the tax sale purchaser to inform interested parties of their right to redeem their publicly recorded security or claim. The May 12, 2006 letter adequately informed BNC Mortgage, Inc. of its right to redeem its security or claim to the Property. There is no duty created by the "At Least 90-day Provision" of Section 140.405, RSMo, to inform the addressee of the duration of their tax sale redemption rights.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff Robert Bellistri is vested with fee simple title in and to the real property and the improvements thereon, if any, located in the County of Jefferson, in the State of Missouri, commonly known as 1210 Airglades, Arnold, Missouri 63010, and more particularly described as follows:

> All of Lot Fifty-six (56) of BAYSHORE NORTH PLAT ONE, a Subdivision in U.S. Survey 2020, as shown by plat on file in the Recorder's Office of Jefferson County, Missouri in Plat Book 40, Pages 13 and 14.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following Defendants have no right, title, claim, estate or interest in said real estate or any lien or encumbrance thereon whatsoever, either legal or equitable, to-wit: Defendants GLEN L. CROUTHER, OCWEN LOAN

SERVICING, LLC, as agent and servicer for DEUTSCHE BANK NATIONAL TRUST

COMPANY, as Trustee for the registered holders of the CDC MORTGAGE CAPITAL TRUST

2002-HE1, and all unknown and unnamed persons or entities who are the heirs, grantees or

successors of Glen L. Crouther, BNC Mortgage, Inc., or any persons or entities who have, or claim to

have, or appear of record as having, an interest, deed of trust, mortgage, lease, lien, claim, title, or

estate in the real property and the improvements thereon, if any, located in the County of Jefferson,

in the State of Missouri, commonly known as 1210 Airglades, Arnold, Missouri 63010, and more

particularly described as:

All of Lot Fifty-six (56) of BAYSHORE NORTH PLAT ONE, a Subdivision in U.S. Survey 2020,
as shown by plat on file in the Recorder's Office of Jefferson County, Missouri, in Plat Book 40,
Pages 13 and 14.

IT IS FURTHER ORDERD, ADJUDGED AND DECREED that Plaintiff have possession of

the real estate described herein, and that execution may issue therefore upon application of Plaintiff.

Plaintiff shall cause a certified copy of this Default Judgment of this Court to be recorded in

the Office of the Recorder of Deeds of Jefferson County, Missouri, pursuant to Section 511.320,

RSMo.

Costs are hereby taxed against Plaintiff.

SO ORDERED, DECREED AND ADJUDGED this _1st_ day of _May_____,

2008, by

_(signature)_
_____
The Honorable Mark T. Stoll,
Circuit Judge

Copy to Phillip K. Gebhardt, Attorney for Plaintiff
Copy to Jeffrey T. Weisman and Blake D. Hill, Attorney for Ocwen Loan Servicing LLC, as agent and servicer for Deutsche Bank National Trust
          Company, as Trustee for the registered holders of the CDC MORTGAGE CAPITAL TRUST 2002-HE1
Copy to Richard A. Gartner, Attorney for Plaintiff Glen L. Crouther
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Judgment
File No. 06-348-L-5352
Pkg

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF
MISSOURI, AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

ROBERT BELLISTRI,                                  )
                                                   )
          Plaintiff,                               )
                                                   )
v.                                                 )      Case No. 06JE-CC00893
                                                   )
GLEN L. CROUTHER, and                              )      Division 4
                                                   )
OCWEN LOAN SERVICING, LLC, as agent and            )
servicer for DEUTSCHE BANK NATIONAL                )
TRUST COMPANY, as Trustee for the registered       )
holders of the CDC MORTGAGE CAPITAL                )
TRUST 2002-HE1, and                                )
                                                   )
All unknown and unnamed persons or entities who    )
are the heirs, grantees or successors of           )
Glen L. Crouther, BNC Mortgage, Inc., or any       )
persons or entities who have, or claim to have, or )
appear of record as having, an interest, deed of   )
trust, mortgage, lease, lien, claim, title, or estate in )
the real property and the improvements thereon, if )
any, located in the County of Jefferson, in the State )
of Missouri, commonly known as 1210 Airglades,     )
Arnold, Missouri 63010, and more particularly      )
described as:                                      )
                                                   )
All of Lot Fifty-six (56) of BAYSHORE NORTH        )
PLAT ONE, a Subdivision in U.S. Survey 2020, as    )
Shown by plat on file in the Recorder's Office of  )
Jefferson County, Missouri, in Plat Book 40, Pages )
13 and 14,                                         )
                                                   )
          Defendants.                              )

FILED
APR 0 4 2008
HOWARD WAGNER
CIRCUIT CLERK

## FILING MEMORANDUM

COMES NOW Plaintiff, by and through his attorney, and herewith files his

Proposed Judgment, Order and Decree Granting Plaintiff's First Amended Motion for

Summary Judgment and Denying the Motion for Summary Judgment of Defendant

Ocwen Loan Servicing LLC, as Agent and Servicer for Deutsche Bank National Trust

Company, as Trustee for the Registered Holders of the CDC Mortgage Capital Trust 2002-HE1.

Respectfully submitted,

GEBHARDT REAL ESTATE AND
LEGAL SERVICES, L.L.C.

Phillip K. Gebhardt            29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mailed, via first class U.S. mail, postage prepaid, this _4th_ day of _April_, 2008, to: Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as assignee of BNC Mortgage, Inc.

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Filing Memorandum
File No. 06-348-L-5352
pkg

LEXSEE 231 S.W.3D 201

**GLASGOW ENTERPRISES, INC., Appellant, v. ANN KUSHER, et al., Respondents.**

**No. ED88472**

**COURT OF APPEALS OF MISSOURI, EASTERN DISTRICT, DIVISION THREE**

*231 S.W.3d 201; 2007 Mo. App. LEXIS 837*

**June 5, 2007, Filed**

**PRIOR HISTORY:** [**1]
Appeal from the Circuit Court of St. Louis County. Honorable Sandra Hemphill, Judge.

**COUNSEL:** For Respondents: Charles S. Kramer, Michael P. Wolf, Jennifer L. Geschke, Clayton, Missouri.

For Appellant: Thomas A. Connelly, Saint Louis, Missouri.

**JUDGES:** GLENN A. NORTON, Presiding Judge. Lawrence E. Mooney, J., concurs, with J. Norton. Kenneth M. Romines, J., dissents in separate opinion.

**OPINION BY:** GLENN A. NORTON

**OPINION**

[*202] **OPINION**

Glasgow Enterprises, Inc. ("Glasgow") appeals the trial court's grant of Ann Kusher's ("Ann") and the Frieda Kusher Revocable Trust's ("Trust") motion for summary judgment and the denial of its motion for summary judgment. We affirm.

**I. BACKGROUND**

The Trust lent money to Ann and Theodore Thomas ("Theodore") in 1998 and received a security interest in their home at 12162 Lake Meade Drive. Ann and Theodore were married at the time. The security interest was evidenced by a deed of trust that was filed with the Recorder of Deeds in St. Louis County. The deed of trust named Philip A. Kaiser as its trustee. The deed of trust also directed that all "tax notices" be sent to "Ann Kusher Thomas and Theodore [**2] Thomas" at the Lake Meade address.

Ann and Theodore separated and divorced in 2000. The judgment granted Ann the exclusive right to reside on the property and ordered Theodore to quit claim all his interest in the property to Ann.

Following the refinancing through the Trust, no property taxes were paid on the property. St. Louis County held a tax sale on the property in 2002, and the county's interest was purchased by Glasgow.

Ann claimed to have never received a tax bill or notice of the tax sale until 2004. Frieda Kusher, trustee of the Trust, stated in her affidavit that neither she nor the Trust ever received a tax bill from St. Louis County. A representative of the County claimed that notices of the tax sale were sent in January and June 2002. He testified that the correspondence was sent to the property addressed to "Thomas S. and Ann M. Thomas." The County never sent notice, however, to Ann or Thomas individually or to the Trust.

Two years after the tax sale, Glasgow ordered and received a letter report for the property from a title company. The letter report indicated that Theodore S. Thomas and Ann M. Thomas, as tenants in common, were the grantees in the last recorded [**3] deed.

In May 2004, Glasgow sent four notices of its acquisition in the tax sale and the right of redemption to the following entities via certified mail: Philip A. Kaiser, Trustee for Frieda Kusher, 11172 Cricket Hill Dr., St. Louis, MO 63146; Theodore S. & Ann M. Thomas, 12162 Lake Meade Dr., St. Louis, MO 63146; and two to another mortgagee. Kaiser did not live at the address where the first letter was sent; only Frieda Kusher lived there. She signed the return receipt and disposed of the letter unopened after Kaiser told her to do so. The letter sent to Theodore S. & Ann M. Thomas was returned to Glasgow non-delivered.

Three months later, after Glasgow filed an affidavit that it had sent redemption notices to all statutorily required parties, St. Louis County executed a Collector's Deed for Taxes in favor of the company. Ann and Frieda Kusher claim they did not receive notice or copies of the Collector's Deed. A few months later, Glasgow's owner visited Ann at the property and informed her of the purchase. Glasgow then filed an action to quiet title in its [*203] favor. The petition requested an order quieting title to the property and declaring it free of all deeds of trust, mortgages, [**4] liens, leases and claims. The Trust and Ann filed a counterclaim alleging that required notice was not sent and requesting, among other things, a declaratory judgment that the deed issued to Glasgow had no effect and that Ann was the fee holder of the property subject to the Trust's interest. The Trust and Ann's counterclaim did not offer to refund Glasgow the money he paid at the tax sale.

The court heard cross-motions for summary judgment from plaintiff Glasgow and defendants Ann and the Trust. The court found that Glasgow was required to send redemption notices to Ann and Theodore individually as owners of the property as tenants in common and to the Trust but had failed to do so. The court denied Glasgow's motion against Ann and the Trust and granted their motion against Glasgow. The court later amended its judgment to dismiss other third-party defendants and ordered Ann and St. Louis County to reimburse Glasgow for money it spent purchasing the property. Glasgow appeals.

## II. DISCUSSION

We review the grant of summary judgment *de novo. I.T.T. Commercial Financial Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment [**5] is proper where the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id. at 381.* We view the evidence in the light most favorable to the party against whom summary judgment was entered. *Id. at 376.*

### A. Failure to Plead Tender Under *Section 140.600*

In its first and fourth points, Glasgow argues that the trial court erred in granting Ann and the Trust's motion for summary judgment and denying its motion because Ann and the Trust failed to plead, in their counterclaim and motion for summary judgment, tender of the tax amounts that Glasgow paid at the sale. *Section 140.600 RSMo 2000* [1] states that no action to set aside a tax sale shall be maintained unless the plaintiff seeking to set it aside offers in its petition to refund the defendant all taxes paid by the defendant. Ann and the Trust respond

that the intent of *section 140.600* was fulfilled by the court's judgment.

> 1   All statutory references are to RSMo 2000 unless otherwise indicated.

[**6] In *Greenwich Condominium Ass'n v. Clayton Investment Corp.,* a party that putatively lost its interest at a tax sale did not expressly plead tender of the tax amounts paid by the purchaser at a tax sale. *918 S.W.2d 410, 415 (Mo. App. E.D. 1996).* This Court found that the statute's intent was satisfied, however, by the trial court's judgment awarding reimbursement to the purchaser of "all monies ever paid by it to the City as and for real estate taxes on the property, together with all penalties, attorneys' fees or other money paid to the City, and with the legal rate of interest thereon." *Id.* We noted that the statute's intent is to protect the purchaser's interest and that the court-ordered refund of money paid sufficiently protected that interest. *Id.*

Similarly, the court's amended judgment here ordered Ann to pay Glasgow over $ 11,000, representing the principal and interest on all delinquent taxes paid by it at the tax sale and taxes paid on the property after the sale. The court also ordered St. Louis County to refund Glasgow $ 10,000, [*204] representing the amount paid by it at the tax sale over the amount of delinquent taxes owed. The judgment was consistent [**7] with the holding in *Greenwich* and satisfied the intent of *section 140.600.* The trial court did not err in considering Ann and the Trust's pleadings and motion.

Still, Glasgow argues that under the statute's interpretation in *Hawkins v. Heagerty,* Ann and the Trust are obligated to plead tender. [2] *See Hawkins v. Heagerty, 348 Mo. 914, 156 S.W.2d 642 (Mo. 1941).* The Court in *Hawkins* stated that "an offer to refund as provided in [section 140.600] is a condition precedent to recovery." *Id. at 644.* In *Hawkins,* however, the Court affirmed the trial court's judgment *not* to set aside the tax sale. *Id. at 643-44.* Necessarily, the Missouri Supreme Court did not have to consider whether the statute's intent was fulfilled by the trial court's judgment. When this Court revisited the issue over fifty years after *Hawkins,* we found that the trial court could satisfy the statute's intent where the party had not.

> 2   *Hawkins* addressed Sec. 11179 RSMo 1939, which mirrors the language of *section 140.600.*

[**8] Point denied.

## B. Adequacy of Notice to Deed of Trust Holder

In its second point, Glasgow argues that the court erred in finding that it had not sent adequate notice before obtaining a deed to the property. It contends that it

satisfied its statutory duty to send notice to the deed of trust holder by sending notice to the parties at the address listed on the deed of trust to receive tax notices. *Section 140.405 RSMo Supp. 2006* [3] requires a purchaser at a tax sale to notify all deed of trust holders of their right to redeem. Notice to a deed of trust holder must be sent by certified mail to the deed of trust beneficiary at the beneficiary's last known address. *M & P Enterprises, Inc. v. Transamerica Financial Services, 944 S.W.2d 154, 157 (Mo. banc 1997).* The notice provisions of *section 140.405* are mandatory and failure to follow them results in the purchaser losing its interest in the property. *Valli v. Glasgow Enterprises, Inc., 204 S.W.3d 273, 276-77 (Mo. App. E.D. 2006).*

> 3   All references to *section 140.405* are to RSMo Supp. 2006.

[**9] Glasgow did not send notice to the deed of trust beneficiary. The third full sentence of the deed of trust document reads that its beneficiary is "FRIEDA KUSHER, Trustee of [the Trust], whose address is 11172 Cricket Hill Drive, St. Louis, Missouri 63146 . . . ." Glasgow sent a letter of notice to that address, but not to Frieda Kusher. Instead, it was addressed to her trustee and the deed of trust's trustee, Philip A. Kaiser. This notice does not satisfy the statutory requirement that notice to a deed of trust holder be sent to the *beneficiary* at the beneficiary's last known address. *See section 140.405.*

Glasgow argues that it alternatively fulfilled *section 140.405's* requirement by sending notice to "Theodore S. & Ann M. Thomas, 12162 Lake Meade Dr., St. Louis, MO 63146." Glasgow contends that this mailing satisfied the statute because it complied with the deed of trust's directive to: "SEND TAX NOTICES TO: Ann Kusher Thomas and Theodore Thomas[;] 12162 Lake Meade Drive[;] St. Louis, MO 63146." We do not agree that this satisfied *section 140.405.* Glasgow does not present and our review does [**10] not reveal any authority supporting the proposition that *section 140.405's* right of re-

demption notice requirements for deed of trust holders [*205] can be fulfilled by sending notice to the party listed on the deed of trust as designated to receive "tax notices." This is particularly true where the same page of the same document provides the name and address of the deed of trust's beneficiary. Point denied.

*Section 140.405* requires notice to be sent to the publicly recorded deed of trust holder and the entity "who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale" at their last known addresses. Because the statute requires notice to both parties, we need not address whether Glasgow adequately notified Ann.

### III. CONCLUSION

The judgment of the trial court is affirmed.

GLENN A. NORTON, Presiding Judge

Lawrence E. Mooney, J., concurs with J. Norton

Kenneth M. Romines, J., dissents in separate opinion

**DISSENT BY:** Kenneth M. Romines

**DISSENT**

**DISSENT**

I dissent. The tax sale statutes are a Code unto themselves. In this case tender was not pled. Such failure is fatal. [**11] *Hawkins v. Heagerty, 348 Mo. 914, 156 S.W.2d 642 (Mo.Sup.1941).*

Additionally, the failure to read what you are sent pursuant to statute is not a defense.

This cause should be reversed for entry of judgment for Glasgow.

Kenneth M. Romines, Judge.

204 S.W.3d 273
**Victoria Saigh VALLI, Appellant,**
v.
**GLASGOW ENTERPRISES, INC., Respondent.**
No. ED 87220.
Missouri Court of Appeals, Eastern District, Division Three.
September 12, 2006.
Motion for Rehearing and/or Transfer to Supreme Court Denied October 24, 2006.
Application for Transfer Denied November 21, 2006.
Page 274

Charles Francis Dufour Jr., Attorney, St. Louis, MO, for appellant.

Thomas A. Connelly, Attorney, St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

Victoria Saigh Valli ("Landowner") appeals from the trial court's judgment granting Glasgow Enterprises, Inc.'s ("Glasgow") motion for summary judgment and denying her motion for summary judgment on her verified petition for declaratory judgment. We reverse and remand for the trial court to enter summary judgment in favor of Landowner.

Facts and Procedural History

On or about August 30, 1999, Landowner and her uncle Fred Saigh purchased real property in St. Louis County known as 6 Beverly Drive, St. Louis, Missouri 63132 (the "Property"), located in the Chevy Chase Subdivision. Title to the Property was vested in Landowner and Fred Saigh as joint tenants with the right of survivorship. Since the purchase of the Property, Landowner and her minor daughter continuously occupied and utilized it as their primary residence. On or about December 29, 1999, Fred Saigh died and Landowner became the sole owner of the Property. The record shows that taxes on the Property were not paid in 1999, 2000 and 2001. On August 26, 2002, Glasgow purchased the Property at the St. Louis County's tax sale. Subsequently, Glasgow paid St. Louis County real estate taxes on the Property for the years 2002, 2003, and 2004.

On May 11, 2004, Glasgow prepared a letter to Amanda A. Yancey ("Yancey Letter"), Trustee for Chevy Chase Subdivision, notifying her of its purchase of the Property pursuant to Section 140.405, RSMo 2000.1 The Yancey Letter consists of a date ("May 11"), an addressee identification ("To: Amanda Yancey, Trustee for Chevy Chase Subdivision"), a sender identification ("From: Glasgow Enterprises, Inc."), a "re" line ("Re: 6 Beverly Dr."), and the following two paragraphs:

This is to inform you that on August 26, 2002, the Collector of Revenue of St. Louis County Missouri offered the above-referenced real estate for sale in a delinquent tax sale. This offering was the third offering of such property by the Collector of Revenue. At the sale, Glasgow Enterprises, Inc. was the successful purchaser.

As per the statute if such publicly recorded deed of trust, mortgage, etc. is not redeemed in a timely manner, such recorded security or claim will be extinguished. Notice is hereby given to any person who holds a publicly recorded deed of trust per Section 140.250 & 140.405 of the revised statutes of Missouri upon real property known as 6 Beverly Dr. Lot 1 in Block 6 of Chevy Chase, a Subdivision in St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 24, Page(s) 10 and 11 of the St. Louis County Records. Locator # 17L310412. Of such person's right to redeem within 90 days of the date of this notice.

(Emphasis added).



On May 11, 2004, Glasgow also prepared a letter addressed to Fred Saigh and Landowner ["Landowner Letter"] pursuant

Page 275

to Section 140.405. The Landowner Letter consists of a date ("May 11"), an addressee identification ("To: Fred Saigh & [Landowner]"), a sender identification ("From: Glasgow Enterprises, Inc."), a "re" line ("Re: 6 Beverly Dr."), and the following two paragraphs:

This is to inform you that on August 26, 2002, the Collector of Revenue of St. Louis County Missouri offered the above-referenced real estate for sale in a delinquent tax sale. This offering was the third offering of such property by the Collector of Revenue. At the sale, Glasgow Enterprises, Inc. was the successful purchaser.

As per the statute if such publicly recorded deed of trust, mortgage, etc. is not redeemed in a timely manner, such recorded security or claim will be extinguished. Notice is hereby given to any person who holds a publicly recorded deed of trust per Section 140.250 & 140.405 of the revised statutes of Missouri upon real property known as 6 Beverly Dr. Lot 1 in Block 6 of Chevy Chase, a Subdivision in St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 24, Page(s) 10 and 11 of the St. Louis County Records. Locator # 17L310412. Of such person's right to redeem within 90 days of the date of this notice.

(Emphasis added).

Although Glasgow sent this letter to Landowner by certified mail to the Property, it appears from the record that Landowner never received it. After June 19, 2004, the Landowner Letter was returned "unclaimed" to Glasgow. On October 7, 2004, Glasgow recorded a "Collector's Deed for Taxes" regarding the Property in the St. Louis County Records.

On November 19, 2004, Landowner filed a Verified Petition for Declaratory Judgment in

the St. Louis County Circuit Court seeking to cancel Glasgow's Collector's Deed and declare Landowner the lawful owner of the Property. On December 9, 2004, Glasgow filed its Answer to Landowner's petition, along with a two-count Counterclaim seeking to "quiet title" to the Property in Glasgow, or, alternatively seeking reimbursement for Property-related expenses incurred by Glasgow.

On January 7, 2005, Landowner filed a "Memorandum of Exercise of Right of Redemption and Deposit of Funds into Registry of Court" and deposited the sum of $50,000.00 with the Clerk of the St. Louis County Circuit Court.

Landowner and Glasgow each filed motions for summary judgment. The trial court denied Landowner's motion for summary judgment and granted Glasgow's motion for summary judgment. Landowner appeals.

Standard of Review

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. Id. The trial court's ruling will be upheld if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Rule 74.04(c).

Analysis

Landowner asserts three points on appeal. We, however, will only address the first and third points because they are dispositive of the appeal. In her first and third points, Landowner argues the trial court erred in granting Glasgow's motion for summary judgment, and denying her

Page 276

motion for summary judgment,2 because Glasgow failed to comply with the requirements of Section 140.405. Specifically, Landowner argues that Glasgow failed to notify Landowner

fastcase

of her "right to redeem" the Property and the notice Glasgow sent to Landowner contained numerous erroneous and/or misleading statements in violation of Section 140.405.

Section 140.405 specifically states, in pertinent part:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following [notice] requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this [notice] provision shall result in such purchaser's loss of all interest in the real estate. . . . Once the purchaser has notified the county collector by affidavit that proper notice has been given, anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property shall have ninety days to redeem said property or be forever barred from redeeming said property. . . .

(Emphasis added).

This Section, as a prerequisite to an application for a Collector's Deed, imposes on purchasers several distinct notice requirements. First, this Section identifies who must be notified, that is, "any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon th[e] real estate" in question, "including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale." Second, this

Section provides for how notice is to be provided, that is, "by certified mail ... at such person's last known available address." Third, this Section provides when notice must be sent, that is, "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed." Finally, this Section identifies what such persons are entitled to be notified of, that is, of their right to "redeem said property" within ninety days from the date the county collector receives an affidavit from the purchaser that "proper notice has been given," or such party will "be forever barred from redeeming said property."

The notice requirements of Section 140.405 use the term "shall." "It is clear that when a statute mandates that something be done by providing that it shall occur, and it also provides what results shall follow a failure to comply with

Page 277

its terms, it is mandatory and must be obeyed." Hutchison v. Cannon, 29 S.W.3d 844, 847 (Mo.App. S.D.2000). The failure of a purchaser to comply with these notice provisions "shall result in [such purchaser's] loss of all interest in the real estate." Id. (internal quotations omitted) (reversing the trial court's judgment in favor of purchaser because purchaser failed to comply with the mandatory notice requirements of Section 140.405, RSMo 1994, and therefore, lost all interest in the property at issue); Campbell v. Siegfried, 823 S.W.2d 156, 157-58 (Mo.App. E.D.1992) (affirming the trial court's judgment setting aside purchaser's deed to the property because purchaser failed to comply with the notice requirements of Section 140.405, RSMo Cum.Supp.1990).

Here, we find the Landowner Letter prepared by Glasgow failed to comply with the mandatory notice requirements of Section 140.405. First, Glasgow's letter to Landowner failed to advise her of her right, as record owner of the Property at the time of the tax sale, to redeem the Property or be forever barred from

doing so. Specifically, in relevant part, the Landowner Letter states:

Notice is hereby given to any person who holds a publicly recorded deed of trust per Section 140.250 & 140.405 of the revised statutes of Missouri upon real property known as 6 Beverly Dr. Lot 1 in Block 6 of Chevy Chase, a Subdivision in St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 24, Page(s) 10 and 11 of the St. Louis County Records. Locator # 17L310412. Of such person's right to redeem within ninety days of the date of this notice.

(Emphasis added). This language in Glasgow's letter to Landowner is identical to the body of the Yancey Letter. As such, it is improperly directed only to deed of trust holders.

Second, the Landowner Letter incorrectly states the length of time in which deed of trust holders may redeem the Property. According to this letter, the redemption period runs ninety days from the date of the letter, May 11, 2004. Pursuant to Section 140.405, however, the redemption period runs ninety days from the date on which Glasgow "notified the County Collector by affidavit that proper notice has been given." (Emphasis added). This date, though not clearly set forth in the record, is certainly after May 11, 2004, which is the date the letter was prepared. In addition, this letter does not notify Landowner that she would be forever barred from redeeming the Property if she fails to redeem it within this ninety-day period.

As a result of Glasgow's failure to comply with the mandatory notice requirements of Section 140.405, Glasgow has lost any interest it obtained in the Property. See Section 140.405 ("Failure of the purchaser to comply with this [notice] provision shall result in such purchaser's loss of all interest in the real estate."); Hutchison, 29 S.W.3d at 847; Campbell, 823 S.W.2d at 157-58.

Conclusion

The trial court erred in granting summary judgment in favor of Glasgow and its judgment is hereby reversed. We remand for the trial court to enter summary judgment in favor of Landowner.

REVERSED AND REMANDED WITH DIRECTIONS.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., Concur.

---------------

Notes:

1. All subsequent statutory references are to RSMo 2000 unless otherwise indicated.

2. Typically, the denial of a summary judgment motion is not a final, appealable judgment. Lopez v. American Family Mut. Ins. Co., 96 S.W.3d 891, 892 (Mo.App. W.D.2002). "When the merits of that motion, however, are inextricably intertwined with the issues in an appealable summary judgment in favor of another party, then that denial may be reviewable." Id. Here, because we find the issues raised in the two summary judgment motions so intertwined, we will review the trial court's denial of Landowner's motion for summary judgment.

---------------



John   T.   Prindable,   Plaintiff/Appellant
v.
James J. Walsh, et al., Defendants/Respondents.

ED79472

Missouri Court of Appeals Eastern District

03/05/2002

Appeal From: Circuit Court of the City of St. Louis,   Hon.   Julian   Bush

Counsel for Appellant: James J. Sauter

Counsel for Respondent: Thomas P. Berra, Jr.

Opinion                          Summary:

John Prindable appeals from the court's dismissal of his four-count petition against James Walsh, Lillian Walsh and 1709 Building, Inc., for failure to state claims on which relief can be granted. We conclude that all four counts of the petition, liberally construed as our rules require, are sufficient to withstand a motion to dismiss.

Division One holds: (1) Where Prindable can establish facts that Walsh was acting as Prindable's nominee when Prindable transferred $142,000 to the Walshes, fiduciary duty is established inasmuch as Walsh had control over shares equitably belonging to Prindable so as to survive a motion to dismiss; (2) prior action for shareholder dissolution dismissed for lack of standing could not prejudice Prindable from bringing his current action under Rule 55.06(b); (3) where Prindable's claim for fraud alleged Walsh's acknowledgement that he had complied with the transfer of shares agreed to by the parties, this allegation of a false statement leading Prindable to believe his interest was protected is sufficient to withstand motion to dismiss; (4) where Prindable's claim is factually similar to Count 1 except that it prays for damages instead of specific performance, the facts realleged as to Walsh's fiduciary duty are sufficient to withstand motion to dismiss.

Crandall, Jr., P.J. and Dowd, Jr., J., concur.

Charles   B.   Blackmar,   Senior   Judge

Plaintiff John T. Prindable (Prindable) appeals from the trial court's dismissal of all four counts of his petition against defendants James P. Walsh, Lillian M. Walsh, (Walsh) and 1709 Building, Inc. for failure to state claims on which relief can be granted. We conclude that the petition, liberally construed as our rules require, is sufficient to withstand a motion to dismiss, and so reverse and remand for further consistent                         proceedings.

The Walshes complain that Prindable's statement of his points relied on does not comply with Rule 84.04(d). Both parties could profit by careful study of the article by Judge Harry L.C. Weier and W.A. Fairbanks, "Why Write a Defective Brief: Give Your Client a Chance on Appeal," 33 J. Mo. Bar. 79 (Jan./Feb. 1977), but we believe that the points as stated are sufficient to advise us as to the rulings challenged and why they are deemed erroneous. If a timely motion had been directed to the brief, such corrections as might be necessary could undoubtedly have been made. The Walshes, furthermore, are poorly equipped to complain about Prindable's brief because their lengthy, argumentative and demeaning statement of the case flagrantly violates the prescription in Rule 84.04(c) for "a fair and concise statement of the facts relevant to the questions presented for determination, without argument." See also Rule 84.04(f). We have no problem in reaching the merits       of       the       appeal.

Prindable's petition, to which the trial judge directed his ruling, contains four counts. Count one contains 14 numbered paragraphs, the first twelve of which are incorporated into Count two, and all fourteen of which are incorporated into Counts three and four. These include the following                         statements:

3. In 1985, Prindable . . . entered into a sales contract for the purchase of . . . property. Prior to closing on the property, Prindable and [defendant James P.] Walsh agreed to and

𝄢 fastcase

entered into a 50/50 oral partnership . . . in which Prindable and Walsh would invest . . . .

4. The defendants Walsh . . . took said property in their names as nominees for Prindable and Walsh, partners, and thereafter transferred the property into the Defendant Seventeen-o-Nine Building, Inc. . . . .

5. At the time of the transfer of the aforesaid real estate, all of the assets of the partnership were transferred into the corporation . . . Prindable and Walsh agreed each would be fifty percent (50%) stockholders of the corporation. Prindable and Walsh invested in this corporation. Prindable invested in the corporation One Hundred Twenty Two Thousand Dollars . . . and further contributed to the corporation [property] with a value of Twenty Thousand Dollars for a total investment by the Plaintiff of $142,000.00.

6. At all times relevant, Prindable was subject to tax liens and Prindable did not want such liens to attach to or inhibit their interest in the Corporation and, therefore, the parties agreed that one hundred percent . . . of the stock would be issued to Walsh and one-half . . . of said stock in the name of Walsh would be endorsed in blank by Walsh with Walsh acting as Prindable's nominee and for the benefit of Prindable. Prindable was led by Walsh to believe that Walsh had completed these endorsements . . . .

Each of the other counts contained additional allegations in numbered paragraphs. We conclude that the facts set out in or incorporated into each of the four counts of the Petition demonstrate claims sufficient to survive a motion to dismiss.

Prindable objects to the action of the trial court in denying leave to amend following dismissal of his petition. Although the issue has been fully briefed we do not find it necessary to discuss the point, because we conclude that the trial court erred in dismissing the petition as it stood. On remand the trial court may consider any further requests for leave to amend in accordance with Rule 55.33(a). It is good practice to accompany any motion for leave to amend with a copy of

the proposed amended petition as Prindable did. The denial of leave to amend, furthermore, makes it clear that the plaintiff was out of court with no way to get back except through appeal, so that the judgment of dismissal is appealable even though it does not specify that it was "with prejudice." See Chromalloy American Corp. v. Elyria Foundry Co., 955 S.W.2d 1, 3 (Mo. banc 1997); Doe v. Visionaire Corp., 13 S.W.3d 674, 676 (Mo. App. 2000).

The remaining points on appeal relate to the propriety of the dismissal of all four counts of the petition for failure to state claims on which relief can be granted. The law generally favors trial on the merits and the criteria for judging the sufficiency of petitions have been developed to promote this purpose. Collins v. Swope, 605 S.W.2d 538, 540 (Mo. App. 1980). On appeal we must allow the pleadings their broadest intendment, treating the facts alleged as true, and must determine whether the petition invokes substantive principles of law. Hyatt v. Trans World Airlines, Inc., 943 S.W.2d 292, 295 (Mo. App. 1997). A petition cannot be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim that would give a right to relief. McIntosh v. Foulke, 228 S.W.2d 757, 761 (Mo. 1950).

The prayer for relief, furthermore, is not a part of the petition. The character of a cause of action is determined from the facts stated along with the relief sought. Memco, Inc. v. Chronister, 27 S.W.3d 871, 875 (Mo. App. 2000). If sufficient facts are pleaded and proved, the court may give appropriate relief, and is not confined to the relief sought in the petition.

The governing rules read as follows:

Rule 41.01: There shall be one form of action, to be known as "civil action."

Rule 55.04: Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading are required.

Rule 55.05: A pleading that sets forth a claim for

fastcase

relief . . . shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled          .          .          .

Rule 55.15: In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Applying the above prescriptions we conclude that all four counts, liberally construed as required by the rules and authorities, state facts which, if established, entitle Prindable to relief. The court below, then, erred in sustaining Walshes' motion to dismiss for failure to state a claim. See Preferred Physicians Mutual Management Group v. Preferred Physicians Mutual Risk Retention, 918 S.W.2d 805 (Mo. App. 1996); Memco, 27 S.W.3d at 875-76. Count                                    I

Count I alleges, in addition to the paragraphs set out          above,          the          following:

13. Walsh breached his fiduciary duty to Prindable as his nominee by failing to endorse Stock Certificates to Prindable and by failing and refusing to deliver Stock Certificates to Prindable for his fifty percent . . . interest in the corporation.

The prayer is that the Walshes be required to issue fifty percent of the stock of the defendant corporation          to          Prindable.

Prindable alleges that he invested money and property of a value of $142,000 which found its way into the corporation's coffers, that he had agreed with Mr. Walsh that each of them was to have a 50% interest in the corporation, that Walsh agreed to hold Prindable's shares as Prindable's nominee, that Walsh failed to perform his undertaking to endorse the shares of which he was nominee in blank, and that Walsh refused to deliver the certificates to Prindable when requested. Surely, if these facts are established, the law provides a civil remedy. It is stated in the petition that Prindable invested $142,000 and received nothing, with the

Walshes having and keeping complete control of the corporation which was the ultimate recipient of          Prindable's          investment.

Fiduciary duty is clearly established inasmuch as Mr. Walsh had control over shares which equitably belonged to Prindable. See Fix v. Fix, 847 S.W.2d 762, 765 (Mo. banc 1993); Black's Law Dictionary, 7th Ed. 1993, definitions of "fiduciary" and "fiduciary contract." See also Ryan ex rel. Estate of Spiegelhalter v. Spiegelhalter, No. SC 83805, 2002 WL 15930, at *4-5 (Mo. S.Ct. Jan. 8, 2002). It is stated in the petition that the beneficial owner of these shares was not Mr. Walsh but Prindable.

The term "nominee" has an established meaning in the law of securities. See definition in Black's Law Dictionary, 7th Edition 1999, definition of "nominee: . . .2. A person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others. . ." Most corporate shares, indeed, are probably issued in the names of nominees. The typical example is the conventional brokerage account. If a person is a nominee for another, the nominee is not the beneficial owner. Prindable's statement that Mr. Walsh was to be his "nominee" is an explicit statement of fact sufficient to give him a right to a trial determining whether he is entitled to be the stockholder of record, or is entitled to alternative relief          in          equity.

The prayer in Count I is for specific performance, but, as has been previously established, the prayer is not part of the petition, and the court is not limited to the relief prayed for. The pleading, indeed, contains the customary equitable prayer for general relief, and the court may give such relief as it deems equitable and just based on the facts established at          trial.

Prindable's admitted purpose of concealing his ownership of the shares from the taxing authorities may be a circumstance to be considered in the awarding of equitable relief, but          does          not          justify          dismissal.

ʄastcase

. ..ndable v. Walsh, 69 S.W.3d 912 (Mo. Ct. App., 2002,

The Walshes assert that breach of fiduciary duty is "a claim arising in tort." Our rules provide that "[t]here shall be one form of action to be known as civil action." Rule 42.01. Thus, labels are not significant. The claim stated in the petition might be variously described, but still the facts stated, if proved, give a right to some kind of relief. Under prevailing authority, dismissal of Count I was erroneous. Count II

Count II purports to set forth a shareholder's claim for dissolution pursuant to Section 351.494 RSMo (2000), asserting various statutory grounds. A prior action seeking the same relief had been considered by another judge and dismissed for the assigned reason of lack of standing because Prindable was not the shareholder of record. The judge of the court below, in sustaining the motion to dismiss, stated that he would follow this decision.The Walshes allege that Count II is barred by res judicata, or at least by stare decisis. The assigned reason for dismissal in the earlier case was want of standing as a shareholder. Such a dismissal is necessarily without prejudice because, if Prindable lacked standing to sue, the court could go no further with the case and had no power to prejudice him by any judgment entered. Thus the prior dismissal could not preclude a later action, if Prindable were able to correct the problem of record ownership.

In Count I in the present case Prindable sought to establish his status as a shareholder by alleging facts which, if proved, would give him a right to have shares issued to him. The case, then, is squarely within the authorization of Rule 55.06(b), reading as follows:

Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. . . .

If Prindable can establish his rights as a shareholder as prayed in Count I, he may then proceed under Count II. Count II is not barred by the prior action, because relief under Count I

might remove the obstacle found in the prior action. Prindable cannot be faulted for not prosecuting the contingent claim in the earlier action, because the procedure under Rule 55.06(b) is optional rather than mandatory for him. Thus the court below erred in dismissing Count II.Count III

Count III sought damages for fraud and deceit. It is alleged that "Walsh represented to Prindable that he had properly endorsed fifty percent . . . of the outstanding shares of stock in blank as nominee of Prindable." This is a statement of material fact and, if false, may support a recovery for fraud.

The Walshes argue that the petition is insufficient in that it did not plead that Mr. Walsh's representations that he would hold the stock for Prindable were false at the time they were made. This is a misreading of Count III. The allegation is that, after the agreement was made, Mr. Walsh represented that he had complied with its terms by endorsing the shares in blank as required. By liberal construction, this was a false statement made after the parties' agreement. One can easily see that such a false statement might lull Prindable into the belief that his interest was clearly protected and that no additional action on his part was required.

No fault is pointed out as to the other elements of an action for fraud, as set out in the leading case of Sofka v. Thal, 662 S.W.2d 502, 506 (Mo. banc 1983), and often reiterated in other cases.

The court below erred in dismissing Count III for failure to state a claim.Count IV

Count IV is factually similar to Count I, but rather seeks damages and not specific performance. If Walsh held shares in his name and under his control when the shares equitably belonged to Mr. Prindable, then he was a fiduciary, as the discussion of Count I shows, and if he used the shares in his own interest, rather than recognizing Prindable's interest, he breached his fiduciary duty. The court might believe that a damage award, rather than specific

fastcase

Arundable v. Walsh, 69 S.W.3d 912 (Mo. Ct. App., 2002)

performance, was the appropriate remedy. Just as in Count I, the facts realleged and those stated in Count IV, if established, demonstrate a right to an appropriate remedy.

All four counts of the petition state or incorporate facts sufficient to withstand a motion to dismiss for failure to state a claim. A contrary holding would violate the letter and spirit of the Rules of Civil Procedure.

We of course express no opinion as to whether the plaintiff will be able to prove any part of his claim. All we say is that the petition appropriately sets the stage for further proceedings. On remand it would be in order for the parties to direct such non-dispositive motions to the pleadings as they think desirable.

The judgment of dismissal is reversed and the case is remanded for further proceedings.



## Office of Circuit Clerk

# HOWARD WAGNER

Robert Bellistri
                              Div. No. _____4_____
                        VS
                                          In the
Glen Crowther et. al.
Docket No. _____
                                    CIRCUIT COURT
                                JEFFERSON COUNTY, MISSOURI

Case No. 06JE – CC89354
                                April 1                    , 20 08

# MEMORANDUM

Plaintiff's First Amended MOTION FOR SUMMARY JUDGMENT
and Defendant Ocwen Loan Servicing's MOTION FOR SUMMARY
JUDGMENT CALLED AND HEARD. BOTH OCWEN and BELLISTRI
appear by counsel.

DEFENDANT OCWEN SUBMITS PROPOSED JUDGMENT & SERVES
SAME UPON COUNSEL FOR BELLISTRI. PLAINTIFF GRANTED
LEAVE TO SUBMIT PROPOSED JUDGMENT BY APRIL 7, 2008.

CAUSE TAKEN UNDER SUBMISSION.

SO ORDERED:

                                    SHAPIRO & WEISMAN, LC
                                    _____ 11 58926
Phillip K. Gebhardt    24564        502 Earth City Expy Ste 31
Gebhardt Real Estate & Legal Services, LLC   Earth City MO 63045
1720 N. Main Street                 (314) 770 2120 TEL   ext 102
Desoto, MO 63020                    (314) 770 1850 FAX
636-337-0651
Attorney & Plaintiff

                  SO ORDERED:

_____          _____
PLF. ATTORNEY                                    DEF. ATTORNEY

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF
MISSOURI, AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

ROBERT BELLISTRI,                                    )
                                                     )
            Plaintiff,                               )
                                                     )
v.                                                   )      Case No. 06JE-CC00893
                                                     )
GLEN L. CROUTHER, and                                )      Division 4
                                                     )
OCWEN LOAN SERVICING, LLC, as agent and              )
servicer for DEUTSCHE BANK NATIONAL                  )
TRUST COMPANY, as Trustee for the registered         )
holders of the CDC MORTGAGE CAPITAL                  )
TRUST 2002-HE1, and                                  )
                                                     )
All unknown and unnamed persons or entities who      )
are the heirs, grantees or successors of             )
Glen L. Crouther, BNC Mortgage, Inc., or any         )
persons or entities who have, or claim to have, or   )
appear of record as having, an interest, deed of     )
trust, mortgage, lease, lien, claim, title, or estate in )
the real property and the improvements thereon, if   )
any, located in the County of Jefferson, in the State )
of Missouri, commonly known as 1210 Airglades,       )
Arnold, Missouri 63010, and more particularly        )
described as:                                        )
                                                     )
All of Lot Fifty-six (56) of BAYSHORE NORTH          )
PLAT ONE, a Subdivision in U.S. Survey 2020, as      )
Shown by plat on file in the Recorder's Office of    )
Jefferson County, Missouri, in Plat Book 40, Pages   )
13 and 14,                                           )
                                                     )
            Defendants.                              )

**FILED**

MAR 2 6 2008

HOWARD WAGNER
CIRCUIT CLERK

## NOTICE OF HEARING

TO:   All Interested Parties

        PLEASE TAKE NOTICE that Plaintiff will call up his FIRST AMENDED

MOTION FOR SUMMARY JUDGMENT for hearing on April 1, 2008, at 9:00 AM, in

Division 4 of this Court, or as soon thereafter as counsel and/or the parties may be heard.

Respectfully submitted,

GEBHARDT REAL ESTATE AND
LEGAL SERVICES, L.L.C.

_____
Phillip K. Gebhardt          29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mailed, via first class U.S. mail, postage prepaid, this _14th_ day of _March_, 2008, to:  Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as assignee of BNC Mortgage, Inc.


Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Notice of Hearing
File No. 06-348-L-5352
pkg

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

FILED

MAR 1 4 2008

HOWARD WAGNER
CIRCUIT CLERK

ROBERT BELLISTRI      )
                      )
         Plaintiff,   )
                      )      Cause No. 06JE-CC893J4
v.                    )
                      )
GLEN CROUTHER, et.al. )      Division 4
                      )
         Defendants.  )

## AMENDED NOTICE OF HEARING

Please take notice that separate Defendant OCWEN Loan Servicing, L.L.C. will

cause to be heard its **Motion for Summary Judgment** in Division 4 of the Circuit Court

of Jefferson County on **Tuesday, April 1, 2008 at 9:00am** or as soon thereafter as the

parties may be heard.

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101; 314-770-1850 fax
S&W 07-2145

## Certificate Of Service

A true and accurate copy of the foregoing was mailed postage-prepaid this 13th
day of March, 2008 to Phillip Gebhardt, 1270 North Main Street, Desoto MO  63020;
Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

FILED

MAR 1 3 2008

HOWARD WAGNER
CIRCUIT CLERK

ROBERT BELLISTRI                )
                                )
              Plaintiff,         )
                                )        Cause No. 06JE-CC893J4
v.                              )
                                )        Division 4
GLEN CROUTHER, et.al.           )
                                )
              Defendants.        )

## NOTICE OF HEARING

Please take notice that separate Defendant OCWEN Loan Servicing, L.L.C. will

cause to be heard its **Motion for Summary Judgment** in Division 4 of the Circuit Court

of Jefferson County on **Friday, March 28, 2008 at 9:00am** or as soon thereafter as the

parties may be heard.

_____
JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101; 314-770-1850 fax
S&W 07-2145

## Certificate Of Service

A true and accurate copy of the foregoing was mailed postage-prepaid this 12th
day of March, 2008 to Phillip Gebhardt, 1270 North Main Street, Desoto MO  63020;
Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

ROBERT BELLISTRI                    )
                                    )
                                    )
          Plaintiff,                )
                                    )          Cause No. 06JE-CC893J4
v.                                  )
                                    )
GLEN CROUTHER, et.al.               )          Division 4
                                    )
          Defendants.               )

## JUDGMENT

On the 1st day of April 2008, this cause came before this Court upon Plaintiff's motion for summary judgment, as well as separate Defendant Ocwen Loan Servicing LLC's motion for summary judgment. Plaintiff Robert Bellistri appeared by counsel, Phillip Gebhardt and Defendant Ocwen Loan Servicing, LLC appeared by counsel, Blake Hill.

Plaintiff filed this action for quiet title pursuant to a Collector's Deed he acquired following a tax sale. Plaintiff Bellistri filed his first amended motion for summary judgment on December 19, 2007. Defendant Ocwen filed its motion for summary judgment on or about February 6, 2008. Both parties have filed their responses and legal memoranda in support of their respective motions, and the Court is satisfied that no material facts remain for trial.

This Court, having considered the law and pleadings, finds the issues for the defendant and against the plaintiff, and hereby grants Ocwen Loan Servicing LLC's motion for summary judgment. Plaintiff's motion for summary judgment is accordingly denied.

The Court finds that the following material facts are undisputed:

1.   The document whereby defendant Ocwen claims an interest in the real estate that is the subject of this litigation is a March 4, 2002 Deed of Trust ("Deed of Trust") recorded on March 8, 2002 as document # 020012853 securing principal amount of $93,595.00.

2.   Mortgage Electronic Registration Systems, Inc. was the named beneficiary on the face aforementioned Deed of Trust and nominee for BNC Mortgage, Inc. with an address of P.O. Box 2026, Flint, MI 48501-2026.

3.   At all times relevant to this action, MERS had a legal title to the beneficial interest in the

trust created by the Deed of Trust.

4.　　Defendant Ocwen is now last assignee and holder of the Deed of Trust.

5.　　The August 22, 2005 tax sale pursuant to which plaintiff obtained a Collector's Deed, dated September 19, 2006 and recorded September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records, was a first offering sale by the Jefferson County Collector.

6.　　The Plaintiff, Robert Bellistri did not mail by certified mail any notice of the right to redeem, or any other correspondence, to Mortgage Electronic Registration Systems, Inc. ("MERS"), who is the named beneficiary on the subject Deed of Trust.

7.　　Bellistri's letter of May 12, 2006 addressed to BNC Mortgage is the only purported notice of the right to redeem to any person or entity listed on the Deed of Trust, and states in part: "To redeem your security claim, contact, [sic] Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406 with [sic] 90 days from the date of receipt of this letter."

8.　　§ 140.405 R.S.Mo. (2007) provides:  At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

Upon the uncontroverted material facts found by this Court and set forth above, it is the Court's holding that plaintiff Robert Bellistri did not fully comply with the notice requirements of Section 140.405 R.S.Mo. in obtaining his Collector's Deed following the August 22, 2005 tax sale.  Bellistri did not comply with the statute because he failed to provide proper notice by certified mail to all persons who held a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate of their right to redeem such publicly recorded security or claim, to-wit: Bellistri failed to notify MERS, the beneficiary of a recorded deed of trust.  Furthermore, the

**196 S.W.3d 625**
**GLASGOW ENTERPRISES, INC., Plaintiff/Respondent,**
**v.**
**Robert K. BOWERS, Kimberly M. Bowers, Contimortgage Corporation, and John Doe(s),**
**Defendants,**
**Teresita Parks and Novastar Mortgage, Inc., Defendants/Appellants.**
**No. ED 87131.**
**Missouri Court of Appeals, Eastern District, Division Three.**
**May 30, 2006.**
**Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2006.**
**Application for Transfer Denied August 22, 2006.**
Page 626
**COPYRIGHT MATERIAL OMITTED**
Page 627

Thomas A. Connelly, Thomas A. Connelly, PC, St. Louis, MO, for respondent.

Steven M. Cohen, Berger, Cohen & Brandt, L.C., Clayton, MO, for appellants.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, a purchaser of real property at a delinquent tax sale pursuant to Chapter 140, filed a lawsuit to quiet title pursuant to section 140.330 RSMo (2000).1 The petition named as defendants the record owners at the time of the tax sale and their mortgagee, along with an individual who purchased the property after the ninety-day redemption notices had been mailed and that individual's mortgagee. The trial court entered summary judgment in plaintiff's favor, and the individual purchaser and her mortgagee appeal. They claim that the trial court erred in granting summary judgment because 1) there were genuine issues of material fact about whether they knew of the prior tax sale, 2) the county collector failed to comply with section 140.290 by not maintaining a permanent record book, and 3) plaintiff failed to comply with section 140.405 by not giving them a redemption notice. We affirm.

The following facts, relevant to the issues on appeal, were undisputed in the summary judgment record. Robert K. Bowers and Kimberly M. Bowers, husband and wife, were record owners/grantees of a parcel of real property located in St. Louis County at 1810 Millshire Drive (the property). On March 16, 1999, Mr. and Mrs. Bowers executed a deed of trust to Contimortgage Corporation (Contimortgage), which was subsequently recorded in the Office of Recorder of Deeds for St. Louis County (Recorder's Office).

On August 26, 2002, plaintiff, Glasgow Enterprises, Inc., purchased the property at a sale for delinquent taxes conducted by the Collector of Revenue of St. Louis County (the Collector) for $4,479.00, which amount represented unpaid taxes, costs and charges for the years 1999, 2000, and 2001. The Collector gave plaintiff a certificate of purchase for the property. The certificate of purchase informed plaintiff that it would be eligible to receive a deed to the property after the close of business on August 26, 2004, and further informed plaintiff of the requirements of section 140.405.

On or about March 22, 2004, plaintiff obtained a title company letter report on the property's title status. The title company reported that it had made a search of the deed, mortgage, judgment, and tax records relating to the property, that Mr. and Mrs. Bowers were the grantees in the last recorded deed, and that Contimortgage had an unsatisfied mortgage of record.

On or about May 12, 2004, plaintiff sent letters by certified mail to Mr. and Mrs. Bowers and Contimortgage at their respective

Page 628

addresses, notifying them of their ninety-day right to redeem the property. Thereafter, plaintiff filed an affidavit with the Collector, averring that it sent a letter of notification to all parties and lien holders. Neither Mr. and Mrs. Bowers nor Contimortgage redeemed the property during the ninety-day redemption period.

On July 23, 2004, Mr. and Mrs. Bowers executed a general warranty deed to Teresita Parks, which was subsequently recorded in the Recorder's Office. That same day, a deed of trust from Ms. Parks to Novastar Mortgage, Inc. (Novastar) was also recorded in the Recorder's Office.

On August 31, 2004, plaintiff was issued a Collector's deed for taxes (Collector's deed) to the property, which it subsequently recorded in the Recorder's Office.

On November 19, 2004, plaintiff filed a petition seeking an order declaring and quieting title to the property in plaintiff or, alternatively, a judgment in quantum meruit in the amount of its costs incurred in purchasing the property. The petition named Mr. and Mrs. Bowers, Contimortgage, Ms. Parks, Novastar, and John Doe(s) as defendants. Plaintiff alleged that it purchased the property at a third sale for delinquent taxes conducted by the Collector on August 26, 2002, and that it had received and recorded the Collector's deed. Plaintiff further alleged that it paid the amount bid in full; that on May 12, 2004, pursuant to section 140.405 et seq., it caused proper notice to be sent by certified mail, return receipt requested, to all interested parties and those then having a beneficial interest, informing them of their right to redeem; and that on the same date, it notified the Collector by affidavit that it had given proper notice to anyone with a publicly recorded interest in the property. It also alleged that the ninety-day period of redemption under section 140.405 and the two-year period of redemption

under section 140.340 had both passed, and that it was entitled under section 140.240, as grantee of a Collector's deed, to an absolute estate and fee simple, free and clear of all prior liens on the property.

Plaintiff thereafter filed a motion for summary judgment. Ms. Parks and Novastar filed an amended answer and a counterclaim seeking an order declaring and quieting title to the property in themselves.

After the hearing on plaintiff's summary judgment motion, the trial court entered summary judgment in plaintiff's favor against Ms. Parks and Novastar on the quiet title count. The court also dismissed the John Doe(s) without prejudice. In a separate order and judgment, the trial court denied Ms. Parks and Novastar's counterclaim as moot and further denied plaintiff's alternative quantum meruit count as moot.[2] Ms. Parks and Novastar (hereinafter, defendants) appeal.

DISCUSSION

Standard of Review

Summary judgment is designed to permit the trial court to enter judgment, without delay, when the moving party has demonstrated, on the basis of facts on which there is no genuine dispute, a right to judgment as a matter of law. ITT Commercial Finance v. Mid-Am. Marine, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule

Page 629

74.04. Our review is essentially de novo. ITT, 854 S.W.2d at 376. We take as true every fact set forth in the moving party's motion, unless the non-movant has denied it in its response to the motion. Id. The non-moving party's response must show the existence of some genuine dispute about one of the material facts necessary to the plaintiff's right to recover. Id. at 381. We may affirm a summary judgment under any theory that is supported by the record. Id. at 387-88.

I. Issues Raised in First Point

For their first point, defendants assert that the trial court erred in entering summary judgment because there was a genuine issue of material fact about whether they knew of the prior tax sale of the property and because the Collector failed to comply with section 140.290. This point does not comply with Rule 84.04(d)(1) because it contains two separate claims of error that should have been set out in two separate points. In re Marriage of Cohen, 884 S.W.2d 35, 37 n. 1 (Mo.App.1994). In addition, the point fails to set out any legal reasons that support either claim of error. Rule 84.04(d)(1)(B) specifically requires a point to "state concisely the legal reasons for the appellant's claim of reversible error[.]" "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978). The purpose of this rule is to notify the opposing party of "the precise matters that must be contended with and to inform the court of the issues presented for review." In re Marriage of Weinshenker, 177 S.W.3d 859, 863 (Mo.App.2005). Although we do not condone these violations of Rule 84.04(d)(1), we will exercise our discretion to review in more detail the two claims made in this point.

## A. Disputed Issue of Material Fact

Defendants first argue that a disputed issue of material fact existed over whether they had actual or constructive notice of the tax sale. They claim that there are facts in their response to the summary judgment motion that show that they did not have notice, whereas there are facts in the summary judgment motion and sur-reply that show they did have notice. Defendants specifically argue that plaintiff's title expert and their title experts did not agree on essential facts.

The experts' affidavits do not dispute the facts. All of the experts relied on data from the St. Louis County Department of Revenue website. Defendants' experts looked at data on the website page entitled "Real Estate Tax Amounts Due" for the property. They averred

that this page stated that no taxes were due on the property, and that there was no information on the page indicating or stating that the property had ever been sold at a tax sale. One of defendants' experts further opined that "[t]o the best of [his] knowledge," the website did not state information in June 2004, that would have indicated whether the Collector had issued a certificate of purchase. On the other hand, plaintiff's expert looked at data on the website page entitled "Real Estate Tax History" for the property. He explained why the information on that page would indicate to a title examiner that the property had been involved in a tax sale.

These affidavits do not contradict each other on any fact. Defendants' experts basically recite that the website page that they consulted does not patently contain particular information and one expert opines that, to the best of his knowledge, no pages on the website indicate whether a certificate of purchase had been issued; whereas plaintiff's expert points to a page

Page 630

that he opines contains information which would put a title examiner on notice that a tax sale may have taken place.

The affidavits do not dispute the contents of the website; they only disagree over whether a conclusion that defendants had actual or constructive notice can be drawn from the undisputed facts. At most, these are contrary legal conclusions that are not sufficient to raise a question of fact in a summary judgment proceeding. See Missouri Ins. Guar. Ass'n v. Wal-Mart, 811 S.W.2d 28, 34 (Mo.App.1991). See also Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc., 905 S.W.2d 529, 532-33 (Mo.App.1995).

## B. Compliance with Section 140.290

In their remaining argument under this point, defendants contend that the trial court erred in entering summary judgment because section 140.290.2 required the Collector to record the certificate of purchase in a permanent



record book in his office, and the Collector failed to do so. We do not reach the merits of this claim because defendants did not plead the Collector's alleged noncompliance with section 140.290.2 as an affirmative defense.

"An affirmative defense seeks to defeat or avoid the plaintiff's cause of action, and avers that even if the allegations of the plaintiff's petition are taken as true, he or she cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged." Rodgers v. Threlkeld, 22 S.W.3d 706, 710 (Mo.App.1999). See also ITT, 854 S.W.2d at 383. Rule 55.08 requires a party to set forth all applicable affirmative defenses in an answer. Id. A defendant must properly plead an affirmative defense in the answer in order for the defense to be considered in a motion for summary judgment. Ashland Oil, Inc. v. Warmann, 869 S.W.2d 910, 911-12 (Mo.App.1994). See also ITT, 854 S.W.2d at 383-84.

In this case, defendants' claim that the Collector failed to record the certificate of purchase in compliance with section 140.290.2 is an assertion of an additional fact that, under defendants' theory of defense, would prevent plaintiff from prevailing in its quiet title action even if all of the allegations in the petition are true.3 Because defendants failed to plead this claim as an affirmative defense, plaintiff was not required to set forth facts in the summary judgment motion negating it. Rule 74.04 only requires the moving party to negate affirmative defenses that were properly pleaded by the non-moving party. Rodgers, 22 S.W.3d at 710 (citing ITT, 854 S.W.2d at 381); Ashland Oil, 869 S.W.2d at 912.

The fact that defendants raised the Collector's failure to comply with the statute in the "Additional Facts" section of their amended response to the motion for summary judgment does not inject this issue into the summary judgment proceeding. A party's attempt to raise an affirmative defense for the first time in a response to a motion for summary judgment, without seeking leave to amend the pleadings, is

not sufficient to plead the defense. Chouteau Auto Mart v. First Bank of Mo., 148 S.W.3d 17, 26 (Mo.App.2004); State ex rel. Nixon v. Consumer Auto. Res., 882 S.W.2d 717, 721 (Mo.App.1994).

For all of the above reasons, point one is denied.

II. Plaintiff's Compliance with Section 140.405

For their second point, defendants assert that the trial court erred in granting

Page 631

plaintiff's motion for summary judgment because plaintiff failed to comply with section 140.405, and therefore had no right to receive the Collector's deed. This point likewise does not comply with Rule 84.04(d)(1) because it fails to set out any legal or factual reasons for the claim of error. Weinshenker, 177 S.W.3d at 863. Although we do not condone this violation, we will exercise our discretion to review the argument under this point on the merits.

In that argument, defendants assert that plaintiff violated section 140.405 because it did not give defendants notice of a right of redemption. This argument requires us to interpret section 140.405.

Statutory interpretation is purely a question of law, which we determine de novo. Pavlica v. Dir. of Revenue, 71 S.W.3d 186, 189 (Mo.App.2002). When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. State ex rel. Riordan v. Dierker, 956 S.W.2d 258, 260 (Mo. banc 1997). If the intent of the legislature is clear and unambiguous, giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. Baxley v. Jarred, 91 S.W.3d 192, 196 (Mo.App.2002).

Cline v. Teasdale, 142 S.W.3d 215, 222 (Mo.App.2004). Section 140.405 provides, in relevant part:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate . . . until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, . . . at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

(Emphasis added).

This statute specifically requires a purchaser to meet one "requirement" with respect to real estate that is subject to a publicly recorded interest, that is, to give notice to the described category of persons "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed[.]" The statute does not contain any other requirements, and it specifically does not require any notice to be given after the ninety-day notice is given. If the legislature had intended to require a purchaser to provide additional notices to persons who obtained interests in the property after the mandated notice is given, it could have done so. Its decision not to include this requirement indicates a contrary intent. Cline, 142 S.W.3d at 223. The wisdom of not requiring subsequent notices is a matter for the legislature and not for the courts. See Newlin v. Cordray Ford Tractor, 799 S.W.2d 205, 208 (Mo.App.1990).

Under section 140.420, plaintiff was authorized to acquire the deed after August 26, 2004, two years after the sale. On May 12, 2004,

a little over ninety days prior to the August date, plaintiff notified all persons who held a publicly recorded

Page 632

deed of trust, mortgage, lease, lien or claim, pursuant to the statute. On May 18, 2004, plaintiff filed an affidavit with the Collector that stated that it had sent a letter of notification to all parties and lienholders of sale of the property. Neither defendant had a publicly recorded interest when the statutorily required notices were sent. Plaintiff did not violate section 140.405 in not sending defendants a notice when they had no interest in the property at the time notice was required.

Defendants argue that Campbell v. Siegfried, 823 S.W.2d 156, 158 (Mo.App.1992), holds that section 140.405 requires notice of the right to redeem be given to those who purchase after the ninety-day notices have been given. We disagree. In Campbell, we held that the statute required that notice be given to a person who purchased real property and recorded her general warranty deed after defendants received a certificate of purchase at a delinquent tax sale but before defendants conducted their title search (which revealed the deed) and before defendants filed an affidavit with the Collector that the title search revealed no publicly recorded interest. The opinion addressed whether a warranty deed was a "claim on the real estate" that would trigger the notice provisions of the statute. It did not address the situation of a party who purchased real property after the date that notice was required by statute. Point two is denied.

Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and BOOKER T. SHAW, JJ., concur.

---------------

Notes:



1. All further references to the Revised Statutes of Missouri will be to the 2000 edition.

2. Prior to entering these orders, the court had entered a default judgment against Mr. Bowers and a partial judgment in plaintiff's favor, quieting title against Mr. Bowers. After entering these orders, the court entered an order dismissing Mrs. Bowers without prejudice. In a separate order, the court also entered a default judgment against Contimortgage and a partial judgment in plaintiff's favor, quieting title against Contimortgage.

3. Plaintiff further argues that even if it had been pleaded, this claim is not a defense to a quiet title suit under Chapter 140 as a matter of law. Since the Collector's failure to comply was not pleaded, we do not need to reach this question.

----------------



## NOTICE OF ENTRY
(SUPREME COURT RULE 74.03)

### In The 23rd Judicial Circuit Court, Jefferson County, Missouri

**ROBERT BELLISTRI V GLEN L CROUTHER ET AL**                    **CASE NO : 06JE-CC00893**

To:     File

YOU ARE HEREBY NOTIFIED that the court duly entered the following:

**Filing Date**          **Description**

19-Feb-2008       Motion for Extension of Time
                  SO ORDERED:  MARK STOLL, CIRCUIT JUDGE DIV. FOUR 02-27-08
                  Filed By:PHILLIP KENT GEBHARDT

*Stacy Gannon*
_____
                                        Clerk of Court

CC:      File
         JEFFREY T WEISMAN
         PHILLIP KENT GEBHARDT
         RICHARD ANTHONY GARTNER
Date Printed : 28-Feb-2008

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI
ASSOCIATE CIRCUIT DIVISION

**FILED**

FEB 1 9 2008

HOWARD WAGNER
CIRCUIT CLERK

| | | |
|---|---|---|
| ROBERT BELLISTRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06JE-CC00893 |
| | ) | |
| GLEN L. CROUTHER, | ) | Division 4 |
| | ) | |
| and | ) | |
| | ) | |
| All unknown and unnamed persons or entities who | ) | |
| Are the heirs, grantees or successors of | ) | |
| Glen L. Crouther, BNC Mortgage, Inc., or any | ) | |
| persons or entities who have, or claim to have, or | ) | |
| appear of record as having an interest, deed of trust, | ) | |
| mortgage, lease, lien, claim, title, or estate in the | ) | |
| real property and the improvements thereon, if any, | ) | |
| located in the County of Jefferson, in the State of | ) | |
| Missouri, commonly known as 1210 Airglades, | ) | |
| Arnold, Missouri 63010, and more particularly | ) | |
| described as: | ) | |
| | ) | |
| All of Lot Fifty-six (56) of BAYSHORE NORTH | ) | |
| PLAT ONE, a Subdivision in U.S. Survey 2020, as | ) | |
| shown by plat on file in the Recorder's Office of | ) | |
| Jefferson County, Missouri, in Plat Book 40, Pages | ) | |
| 13 and 14, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF'S REQUEST FOR ADDITIONAL TIME IN WHICH TO FILE A REPLY</u>

## <u>TO SEPARATE DEFENDANT OCWEN'S RESPONSE TO PLAINTIFF'S AMENDED</u>

## <u>MOTION FOR SUMMARY JUDGMENT</u>

SO ORDERED  *[signature]* 2/27/08

MARK T. STOLL
JUDGE, DIV. 4

1

trust created by the Deed of Trust.

4.    Defendant Ocwen is now last assignee and holder of the Deed of Trust.

5.    The August 22, 2005 tax sale pursuant to which plaintiff obtained a Collector's Deed, dated September 19, 2006 and recorded September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records, was a first offering sale by the Jefferson County Collector.

6.    The Plaintiff, Robert Bellistri did not mail by certified mail any notice of the right to redeem, or any other correspondence, to Mortgage Electronic Registration Systems, Inc. ("MERS"), who is the named beneficiary on the subject Deed of Trust.

7.    Bellistri's letter of May 12, 2006 addressed to BNC Mortgage is the only purported notice of the right to redeem to any person or entity listed on the Deed of Trust, and states in part: "To redeem your security claim, contact, [sic] Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406 with [sic] 90 days from the date of receipt of this letter."

8.    § 140.405 R.S.Mo. (2007) provides:  At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

Upon the uncontroverted material facts found by this Court and set forth above, it is the Court's holding that plaintiff Robert Bellistri did not fully comply with the notice requirements of Section 140.405 R.S.Mo. in obtaining his Collector's Deed following the August 22, 2005 tax sale.  Bellistri did not comply with the statute because he failed to provide proper notice by certified mail to all persons who held a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate of their right to redeem such publicly recorded security or claim, to-wit: Bellistri failed to notify MERS, the beneficiary of a recorded deed of trust.  Furthermore, the

196 S.W.3d 625

**GLASGOW ENTERPRISES, INC., Plaintiff/Respondent,**

v.

**Robert K. BOWERS, Kimberly M. Bowers, Contimortgage Corporation, and John Doe(s),
Defendants,**

**Teresita Parks and Novastar Mortgage, Inc., Defendants/Appellants.**

No. ED 87131.

**Missouri Court of Appeals, Eastern District, Division Three.**

May 30, 2006.

**Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2006.**

**Application for Transfer Denied August 22, 2006.**

Page 626

COPYRIGHT MATERIAL OMITTED

Page 627

Thomas A. Connelly, Thomas A. Connelly, PC, St. Louis, MO, for respondent.

Steven M. Cohen, Berger, Cohen & Brandt, L.C., Clayton, MO, for appellants.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, a purchaser of real property at a delinquent tax sale pursuant to Chapter 140, filed a lawsuit to quiet title pursuant to section 140.330 RSMo (2000).1 The petition named as defendants the record owners at the time of the tax sale and their mortgagee, along with an individual who purchased the property after the ninety-day redemption notices had been mailed and that individual's mortgagee. The trial court entered summary judgment in plaintiff's favor, and the individual purchaser and her mortgagee appeal. They claim that the trial court erred in granting summary judgment because 1) there were genuine issues of material fact about whether they knew of the prior tax sale, 2) the county collector failed to comply with section 140.290 by not maintaining a permanent record book, and 3) plaintiff failed to comply with section 140.405 by not giving them a redemption notice. We affirm.

The following facts, relevant to the issues on appeal, were undisputed in the summary judgment record. Robert K. Bowers and Kimberly M. Bowers, husband and wife, were record owners/grantees of a parcel of real property located in St. Louis County at 1810 Millshire Drive (the property). On March 16, 1999, Mr. and Mrs. Bowers executed a deed of trust to Contimortgage Corporation (Contimortgage), which was subsequently recorded in the Office of Recorder of Deeds for St. Louis County (Recorder's Office).

On August 26, 2002, plaintiff, Glasgow Enterprises, Inc., purchased the property at a sale for delinquent taxes conducted by the Collector of Revenue of St. Louis County (the Collector) for $4,479.00, which amount represented unpaid taxes, costs and charges for the years 1999, 2000, and 2001. The Collector gave plaintiff a certificate of purchase for the property. The certificate of purchase informed plaintiff that it would be eligible to receive a deed to the property after the close of business on August 26, 2004, and further informed plaintiff of the requirements of section 140.405.

On or about March 22, 2004, plaintiff obtained a title company letter report on the property's title status. The title company reported that it had made a search of the deed, mortgage, judgment, and tax records relating to the property, that Mr. and Mrs. Bowers were the grantees in the last recorded deed, and that Contimortgage had an unsatisfied mortgage of record.

fastcase

On or about May 12, 2004, plaintiff sent letters by certified mail to Mr. and Mrs. Bowers and Contimortgage at their respective

Page 628

addresses, notifying them of their ninety-day right to redeem the property. Thereafter, plaintiff filed an affidavit with the Collector, averring that it sent a letter of notification to all parties and lien holders. Neither Mr. and Mrs. Bowers nor Contimortgage redeemed the property during the ninety-day redemption period.

On July 23, 2004, Mr. and Mrs. Bowers executed a general warranty deed to Teresita Parks, which was subsequently recorded in the Recorder's Office. That same day, a deed of trust from Ms. Parks to Novastar Mortgage, Inc. (Novastar) was also recorded in the Recorder's Office.

On August 31, 2004, plaintiff was issued a Collector's deed for taxes (Collector's deed) to the property, which it subsequently recorded in the Recorder's Office.

On November 19, 2004, plaintiff filed a petition seeking an order declaring and quieting title to the property in plaintiff or, alternatively, a judgment in quantum meruit in the amount of its costs incurred in purchasing the property. The petition named Mr. and Mrs. Bowers, Contimortgage, Ms. Parks, Novastar, and John Doe(s) as defendants. Plaintiff alleged that it purchased the property at a third sale for delinquent taxes conducted by the Collector on August 26, 2002, and that it had received and recorded the Collector's deed. Plaintiff further alleged that it paid the amount bid in full; that on May 12, 2004, pursuant to section 140.405 et seq., it caused proper notice to be sent by certified mail, return receipt requested, to all interested parties and those then having a beneficial interest, informing them of their right to redeem; and that on the same date, it notified the Collector by affidavit that it had given proper notice to anyone with a publicly recorded interest in the property. It also alleged that the ninety-day period of redemption under section 140.405 and the two-year period of redemption

under section 140.340 had both passed, and that it was entitled under section 140.240, as grantee of a Collector's deed, to an absolute estate and fee simple, free and clear of all prior liens on the property.

Plaintiff thereafter filed a motion for summary judgment. Ms. Parks and Novastar filed an amended answer and a counterclaim seeking an order declaring and quieting title to the property in themselves.

After the hearing on plaintiff's summary judgment motion, the trial court entered summary judgment in plaintiff's favor against Ms. Parks and Novastar on the quiet title count. The court also dismissed the John Doe(s) without prejudice. In a separate order and judgment, the trial court denied Ms. Parks and Novastar's counterclaim as moot and further denied plaintiff's alternative quantum meruit count as moot.2 Ms. Parks and Novastar (hereinafter, defendants) appeal.

DISCUSSION

Standard of Review

Summary judgment is designed to permit the trial court to enter judgment, without delay, when the moving party has demonstrated, on the basis of facts on which there is no genuine dispute, a right to judgment as a matter of law. ITT Commercial Finance v. Mid-Am. Marine, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule

Page 629

74.04. Our review is essentially de novo. ITT, 854 S.W.2d at 376. We take as true every fact set forth in the moving party's motion, unless the non-movant has denied it in its response to the motion. Id. The non-moving party's response must show the existence of some genuine dispute about one of the material facts necessary to the plaintiff's right to recover. Id. at 381. We may affirm a summary judgment under any theory that is supported by the record. Id. at 387-88.

I. Issues Raised in First Point

For their first point, defendants assert that the trial court erred in entering summary judgment because there was a genuine issue of material fact about whether they knew of the prior tax sale of the property and because the Collector failed to comply with section 140.290. This point does not comply with Rule 84.04(d)(1) because it contains two separate claims of error that should have been set out in two separate points. In re Marriage of Cohen, 884 S.W.2d 35, 37 n. 1 (Mo.App.1994). In addition, the point fails to set out any legal reasons that support either claim of error. Rule 84.04(d)(1)(B) specifically requires a point to "state concisely the legal reasons for the appellant's claim of reversible error[.]" "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." Thummel v. King, 570 S.W.2d 679, 686 (Mo. banc 1978). The purpose of this rule is to notify the opposing party of "the precise matters that must be contended with and to inform the court of the issues presented for review." In re Marriage of Weinshenker, 177 S.W.3d 859, 863 (Mo.App.2005). Although we do not condone these violations of Rule 84.04(d)(1), we will exercise our discretion to review in more detail the two claims made in this point.

### A. Disputed Issue of Material Fact

Defendants first argue that a disputed issue of material fact existed over whether they had actual or constructive notice of the tax sale. They claim that there are facts in their response to the summary judgment motion that show that they did not have notice, whereas there are facts in the summary judgment motion and sur-reply that show they did have notice. Defendants specifically argue that plaintiff's title expert and their title experts did not agree on essential facts.

The experts' affidavits do not dispute the facts. All of the experts relied on data from the St. Louis County Department of Revenue website. Defendants' experts looked at data on the website page entitled "Real Estate Tax Amounts Due" for the property. They averred

that this page stated that no taxes were due on the property, and that there was no information on the page indicating or stating that the property had ever been sold at a tax sale. One of defendants' experts further opined that "[t]o the best of [his] knowledge," the website did not state information in June 2004, that would have indicated whether the Collector had issued a certificate of purchase. On the other hand, plaintiff's expert looked at data on the website page entitled "Real Estate Tax History" for the property. He explained why the information on that page would indicate to a title examiner that the property had been involved in a tax sale.

These affidavits do not contradict each other on any fact. Defendants' experts basically recite that the website page that they consulted does not patently contain particular information and one expert opines that, to the best of his knowledge, no pages on the website indicate whether a certificate of purchase had been issued; whereas plaintiff's expert points to a page

Page 630

that he opines contains information which would put a title examiner on notice that a tax sale may have taken place.

The affidavits do not dispute the contents of the website; they only disagree over whether a conclusion that defendants had actual or constructive notice can be drawn from the undisputed facts. At most, these are contrary legal conclusions that are not sufficient to raise a question of fact in a summary judgment proceeding. See Missouri Ins. Guar. Ass'n v. Wal-Mart, 811 S.W.2d 28, 34 (Mo.App.1991). See also Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc., 905 S.W.2d 529, 532-33 (Mo.App.1995).

### B. Compliance with Section 140.290

In their remaining argument under this point, defendants contend that the trial court erred in entering summary judgment because section 140.290.2 required the Collector to record the certificate of purchase in a permanent



record book in his office, and the Collector failed to do so. We do not reach the merits of this claim because defendants did not plead the Collector's alleged noncompliance with section 140.290.2 as an affirmative defense.

"An affirmative defense seeks to defeat or avoid the plaintiff's cause of action, and avers that even if the allegations of the plaintiff's petition are taken as true, he or she cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged." Rodgers v. Threlkeld, 22 S.W.3d 706, 710 (Mo.App.1999). See also ITT, 854 S.W.2d at 383. Rule 55.08 requires a party to set forth all applicable affirmative defenses in an answer. Id. A defendant must properly plead an affirmative defense in the answer in order for the defense to be considered in a motion for summary judgment. Ashland Oil, Inc. v. Warmann, 869 S.W.2d 910, 911-12 (Mo.App.1994). See also ITT, 854 S.W.2d at 383-84.

In this case, defendants' claim that the Collector failed to record the certificate of purchase in compliance with section 140.290.2 is an assertion of an additional fact that, under defendants' theory of defense, would prevent plaintiff from prevailing in its quiet title action even if all of the allegations in the petition are true.3 Because defendants failed to plead this claim as an affirmative defense, plaintiff was not required to set forth facts in the summary judgment motion negating it. Rule 74.04 only requires the moving party to negate affirmative defenses that were properly pleaded by the non-moving party. Rodgers, 22 S.W.3d at 710 (citing ITT, 854 S.W.2d at 381); Ashland Oil, 869 S.W.2d at 912).

The fact that defendants raised the Collector's failure to comply with the statute in the "Additional Facts" section of their amended response to the motion for summary judgment does not inject this issue into the summary judgment proceeding. A party's attempt to raise an affirmative defense for the first time in a response to a motion for summary judgment, without seeking leave to amend the pleadings, is

not sufficient to plead the defense. Chouteau Auto Mart v. First Bank of Mo., 148 S.W.3d 17, 26 (Mo.App.2004); State ex rel. Nixon v. Consumer Auto. Res., 882 S.W.2d 717, 721 (Mo.App.1994).

For all of the above reasons, point one is denied.

II. Plaintiff's Compliance with Section 140.405

For their second point, defendants assert that the trial court erred in granting

Page 631

plaintiff's motion for summary judgment because plaintiff failed to comply with section 140.405, and therefore had no right to receive the Collector's deed. This point likewise does not comply with Rule 84.04(d)(1) because it fails to set out any legal or factual reasons for the claim of error. Weinshenker, 177 S.W.3d at 863. Although we do not condone this violation, we will exercise our discretion to review the argument under this point on the merits.

In that argument, defendants assert that plaintiff violated section 140.405 because it did not give defendants notice of a right of redemption. This argument requires us to interpret section 140.405.

Statutory interpretation is purely a question of law, which we determine de novo. Pavlica v. Dir. of Revenue, 71 S.W.3d 186, 189 (Mo.App.2002). When interpreting a statute, we are to determine the intent of the legislature, giving the language used its plain and ordinary meaning, and give effect to that intent, if possible. State ex rel. Riordan v. Dierker, 956 S.W.2d 258, 260 (Mo. banc 1997). If the intent of the legislature is clear and unambiguous, giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute. Baxley v. Jarred, 91 S.W.3d 192, 196 (Mo.App.2002).

fastcase

- 4 -

Cline v. Teasdale, 142 S.W.3d 215, 222 (Mo.App.2004). Section 140.405 provides, in relevant part:

Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate . . . until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, . . . at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

(Emphasis added).

This statute specifically requires a purchaser to meet one "requirement" with respect to real estate that is subject to a publicly recorded interest, that is, to give notice to the described category of persons "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed[.]" The statute does not contain any other requirements, and it specifically does not require any notice to be given after the ninety-day notice is given. If the legislature had intended to require a purchaser to provide additional notices to persons who obtained interests in the property after the mandated notice is given, it could have done so. Its decision not to include this requirement indicates a contrary intent. Cline, 142 S.W.3d at 223. The wisdom of not requiring subsequent notices is a matter for the legislature and not for the courts. See Newlin v. Cordray Ford Tractor, 799 S.W.2d 205, 208 (Mo.App.1990).

Under section 140.420, plaintiff was authorized to acquire the deed after August 26, 2004, two years after the sale. On May 12, 2004,

a little over ninety days prior to the August date, plaintiff notified all persons who held a publicly recorded

Page 632

deed of trust, mortgage, lease, lien or claim, pursuant to the statute. On May 18, 2004, plaintiff filed an affidavit with the Collector that stated that it had sent a letter of notification to all parties and lienholders of sale of the property. Neither defendant had a publicly recorded interest when the statutorily required notices were sent. Plaintiff did not violate section 140.405 in not sending defendants a notice when they had no interest in the property at the time notice was required.

Defendants argue that Campbell v. Siegfried, 823 S.W.2d 156, 158 (Mo.App.1992), holds that section 140.405 requires notice of the right to redeem be given to those who purchase after the ninety-day notices have been given. We disagree. In Campbell, we held that the statute required that notice be given to a person who purchased real property and recorded her general warranty deed after defendants received a certificate of purchase at a delinquent tax sale but before defendants conducted their title search (which revealed the deed) and before defendants filed an affidavit with the Collector that the title search revealed no publicly recorded interest. The opinion addressed whether a warranty deed was a "claim on the real estate" that would trigger the notice provisions of the statute. It did not address the situation of a party who purchased real property after the date that notice was required by statute. Point two is denied.

Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and BOOKER T. SHAW, JJ., concur.

---------------

Notes:

1. All further references to the Revised Statutes of Missouri will be to the 2000 edition.

2. Prior to entering these orders, the court had entered a default judgment against Mr. Bowers and a partial judgment in plaintiff's favor, quieting title against Mr. Bowers. After entering these orders, the court entered an order dismissing Mrs. Bowers without prejudice. In a separate order, the court also entered a default judgment against Contimortgage and a partial judgment in plaintiff's favor, quieting title against Contimortgage.

3. Plaintiff further argues that even if it had been pleaded, this claim is not a defense to a quiet title suit under Chapter 140 as a matter of law. Since the Collector's failure to comply was not pleaded, we do not need to reach this question.

---------------



## NOTICE OF ENTRY
(SUPREME COURT RULE 74.03)

### In The 23rd Judicial Circuit Court, Jefferson County, Missouri

**ROBERT BELLISTRI V GLEN L CROUTHER ET AL**                    **CASE NO : 06JE-CC00893**

To:    File

YOU ARE HEREBY NOTIFIED that the court duly entered the following:

| **Filing Date** | **Description** |
| --- | --- |
| 19-Feb-2008 | Motion for Extension of Time |
| | SO ORDERED:  MARK STOLL, CIRCUIT JUDGE DIV. FOUR 02-27-08 |
| | Filed By:PHILLIP KENT GEBHARDT |

*Stacy Gannon*

_____

Clerk of Court

CC:      File
         JEFFREY T WEISMAN
         PHILLIP KENT GEBHARDT
         RICHARD ANTHONY GARTNER
Date Printed : 28-Feb-2008

COMES NOW Plaintiff, by and through his attorney, and hereby requests and additional fourteen (14) days, up to and including March 4, 2008, in which to reply to Separate Defendant Ocwen's Response to Plaintiff's Amended Motion for Summary Judgment.

Respectfully submitted,

GEBHARDT REAL ESTATE AND LEGAL SERVICES, L.L.C., a Missouri limited liability company

By: _____

Phillip K. Gebhardt        29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mailed, postage prepaid, this 19th day of February , 2008, to Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1.

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Request for Extension of Time
File No. 06-348-L-5352
Pkg

2

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI,
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

ROBERT BELLISTRI,                              )
                                               )
                 Plaintiff,                    )
                                               )
v.                                             )    Case No. 06JE-CC00893
                                               )
GLEN L. CROUTHER,                              )    Division 4
OCWEN Loan Servicing, LLC, as agent and        )
servicer for Deutsche Bank National Trust      )    **FILED**
Company, as Trustee for the registered holders of )
the CDC Mortgage Capital Trust 2002-HE1, and   )    MAR 0 5 2008
                                               )
All unknown and unnamed persons or entities who )   HOWARD WAGNER
are the heirs, grantees or successors of        )   CIRCUIT CLERK
Glen L. Crouther, BNC Mortgage, Inc., or any    )
persons or entities who have, or claim to have, or )
appear of record as having, an interest, deed of )
trust, mortgage, lease, lien, claim, title, or estate in )
the real property and the improvements thereon, if )
any, located in the County of Jefferson, in the State )
of Missouri, commonly known as 1210 Airglades, )
Arnold, Missouri 63010, and more particularly )
described as:                                   )
                                               )
All of Lot Fifty-six (56) of BAYSHORE NORTH    )
PLAT ONE, a Subdivision in U.S. Survey 2020, as )
Shown by plat on file in the Recorder's Office of )
Jefferson County, Missouri, in Plat Book 40, Pages )
13 and 14,                                      )
                                               )
                 Defendants.                    )

## RESPONSE TO SEPARATE DEFENDANT OCWEN'S MOTION FOR SUMMARY JUDGMENT AND LEGAL MEMORANDUM IN OPPOSITION TO SAID MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through his attorney pursuant to Missouri Supreme Court

74.04, and for his Response to Separate Defendant Ocwen's Motion for Summary Judgment and

Legal Memorandum in Opposition to said Motion for Summary Judgment, states:

*1*

# I.

## RESPONSE TO STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.     Plaintiff admits paragraphs 1, 3, 4, 5, 6, 7, and 8 of OCWEN'S Statement of Uncontroverted Material Facts for purposes of this Motion for Summary Judgment.

2.     Plaintiff denies paragraph 2 of OCWEN'S Statement of Uncontroverted Material Facts for purposes of this Motion for Summary Judgment, and in support of said denial, states that it is legally inconsistent and contradictory to describe Mortgage Electronic Registration Systems, Inc., as both a beneficiary and nominee under the subject deed of trust for the reasons described herein.

# II.

## LEGAL MEMORANDUM IN OPPOSITION TO OCWEN'S MOTION FOR SUMMARY JUDGMENT

### POINT I:

## MERS ACTS SOLELY AS A NOMINEE AND CANNOT BE A BENEFICIARY UNDER THE RELEVANT DEED OF TRUST

Defendant Ocwen alleges that MERS was entitled to notice of tax sale redemption rights under Section 140.405, RSMo.

By Deed of Trust dated on or about March 2, 2002, and recorded on or about March 8, 2002, as Document No. 020012853 of the Jefferson County Land Records, Defendant Glen L. Crouther (a single person), as Grantor, conveyed a security interest in the Property to Millsap & Singer, P.C., as Trustee for Mortgage Electronic Registration Systems, Inc., acting solely as nominee for BNC Mortgage, Inc., and its successors and assigns, to secure indebtedness in the amount of $93,595.00

and other charges specified therein (hereinafter sometimes referred to as the "Deed of Trust").  See

paragraph 3 of the Affidavit in Support of Plaintiff's Motion for Summary Judgment and the exhibits

marked Summary Judgment No. 2 and Defendant's Exhibit RSJ-1 and B-SJ1.

Said Deed of Trust states, in part:

DEFINITIONS

....

(A)   "Borrower" is Glen L. Crouther, a single person, ....
Borrower is the trustor under this Security Instrument.

GRANTEE:   BNC  MORTGAGE,   INC.,   A
DELAWARE CORPORATION

(C)   "Lender" is BNC MORTGAGE, INC. ...

(D)   "Trustee" is Millsap, Singer & Dunn, P.C. ...

(E)   "MERS" is Mortgage Electronic Registration
Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's
successors and assigns.   MERS is the beneficiary
under this Security Instrument. ...

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as
nominee for Lender and Lender's successors and assigns) and the
successors and assigns of MERS.  This Security Instrument secures to
Lender:  (i) the repayment of the Loan, and all renewals, extensions
and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the
Note.  For this purpose, Borrower irrevocably grants, bargains, sells,
conveys and confirms to Trustee, in trust, with power of sale, the
following described property ....

The Lender is granted all substantive rights under the Deed of Trust, and MERS is

named therein solely as a nominee of the Lender and Lender's successors and assigns.

In an action to set aside a collector's deed, the well-established common law rule is that a claimant must prevail on the strength of his or her own title and not upon any weakness in the title of the other claimants.  Where each party to a quiet title action is claiming title against the other, the burden of proof is upon the respective parties to prove better title than the other.  The parties are not required to show a title good against the whole world, but only a title superior to the other party.  The question is which party has better title, and a claimant must prevail on the strength of his own title and not upon any weakness in the title of the other claimant.  In these proceedings, the Court must ascertain and determine the rights of the parties under the pleadings and evidence, grant such relief as may be proper and determine the better title, as between the parties to the proceeding, even though a title superior to the rights of any party may be held by a stranger. *Johnson v. McAboy*, 169 S.W.2d 932, 934-935 (Mo. 1943); *Mazurkiewicz v. Kemper*, 227 S.W.3d 535, 539 (Mo. App., E.D. 2007); and *Moise v. Robinson*, 533 S.W.2d 234, 240 (Mo. App., St. L. 1975).  Defendant Ocwen must prevail on the strength of its own title.

The Deed of Trust in question identifies MERS as the beneficiary of the Deed of Trust, and *Glasgow Enterprises, Inc. v. Kusher*, 231 S.W.3d 201, 204-205 (Mo. App., E.D. 2007), holds that tax sale redemption notices must be sent to the deed of trust beneficiary.

In *Prindable v. Walsh*, 69 S.W.3d 912, 913 (Mo. App., E.D. 2002), the Court stated:

> The term "nominee" has an established meaning in the law of securities. See definition in Black's Law Dictionary, 7th Edition 1999, definition of "nominee: . . .2. A person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others. . ." Most corporate shares, indeed, are probably issued in the names of nominees. The typical example is the conventional brokerage account. *If a person is a nominee for another, the nominee is not the beneficial owner.*

(Emphasis added.)

4

In this case, the Deed of Trust identifies MERS as a beneficiary of the Deed of Trust ad also states that MERS is acting solely as a nominee for Lender and Lender's successors and assigns. These are inconsistent statements under Missouri law, as MERS cannot be both the beneficiary of the Deed of Trust and the nominee of another who is holding bare legal title to beneficial interest under the Deed of Trust for another.

Under Missouri law, the Deed of Trust's designation of MERS as both a beneficiary of the Deed of Trust and as a nominee holding bare legal title to the beneficial interest under the Deed of Trust is ambiguous, if not contradictory.

Looking to the *Kusher* case for guidance, it was held that sending tax sale redemption notices to the trustee of a deed of trust was not in compliance with Section 140.405, RSMo, as the trustee of a deed of trust holds bare legal title to the security interest for the benefit of the beneficiary, but the trustee is not the holder of the deed of trust for purposes of Section 140.405, RSMo. *Compare Lohr v. Cobur Corporation,* 654 S.W.2d 883, 887 (Mo. banc 1983) (Blackmar, J., concurring) (asking the question answered by *Kusher* as to whether the trustee under a deed of trust is entitled to tax sale redemption notices).

By analogy, this Court can conclude that a nominee holding bare legal title for the benefit of others is the holder of a deed of trust entitled to tax sale redemption notices. If a trustee serving under the Deed of Trust and to whom legal title has been transferred is not a party to whom notice of tax sale redemption rights must be given under Section 140.405, RSMo, as was held in *Kusher,* a nominee holding bare legal title to the beneficial interest under the deed of trust is not the holder of the deed of trust for purposes of Section 140.405, RSMo.

The Court concludes that MERS is acting solely as nominee for the Lender, BNC Mortgage, Inc., and its successors and assigns, and that the designation of MERS as beneficiary in the Deed of Trust means that MERS holds bare legal title of the beneficial interest of the Deed of Trust for the benefit of BNC Mortgage, Inc.

Based upon the foregoing, the Court should conclude that MERS did not hold a publicly recorded deed of trust encumbering the Property within the meaning of the word "holds" as used in Section 140.405, RSMo, and that Section 140.405, RSMo, did not require that notice be sent to MERS.

## POINT II:

### OCWEN DOES NOT HAVE STANDING TO OBJECT TO THE NOTICE PROVIDED UNDER SECTION 140.405, RSMO, BECAUSE OCWEN OBTAINED A RECORDED INTEREST IN THE SUBJECT PROPERTY AFTER THE 90-DAY NOTICE PERIOD DESCRIBED IN SECTION 140.405, RSMO, AND OCWEN HAS NO STANDING TO CONTEST THE NOTICE GIVEN UNDER SECTION 140.405, RSMO, AS OCWEN WAS NOT ENTITLED TO SUCH NOTICE

OCWEN argues that the substance of Plaintiff's notice does not comply with Section 140.405, RSMo. Plaintiff believes that OCWEN was not entitled to notice under Section 140.405, RSMo, as OCWEN had no recorded interest in the subject property until after the collector's deed was issued to Plaintiff.

Under the Jones-Munger Act, prior notice of the sale of property for delinquent taxes was historically conducted solely by publication. The Jones-Munger Act did not require that prior mailed notice be sent to lien holders or owners of record. Section 140.010, 140.150, and 140.170, RSMo.

Prior to the decision of the United States Supreme Court in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), constructive notice by publication alone was held to comport with the constitutional requirements of due process under the theory "that those with an interest in property were under an obligation to act reasonably in keeping themselves informed of proceedings that affected that property." *Id.* at 804 (O'Connor, J., dissenting).

*Mennonite Board of Missions* brought about a significant change in the notice procedures required to enforce state tax liens. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at 798. Accordingly, the Supreme Court of Missouri in *Lohr v. Cobur Corp.*, 654 S.W.2d 833 (Mo. banc 1983), citing *Mennonite Board of Missions*, held that the notice-by-publication procedure of the Jones-Munger Act was insufficient to satisfy the due process rights of a publicly recorded deed of trust holder: "We conclude that where a deed of trust naming the deed of trust beneficiary is publicly recorded, notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known available address or by personal service." *Id.* at 886.

In apparent response to the *Mennonite Board of Missions* and *Lohr* decisions, the General Assembly of Missouri attempted to cure the constitutional defect in the Jones-Munger Act by amending Section 140.250 and by enacting a new Section 140.405, RSMo, in 1984. 1984 *Mo. Laws* 431-32. Rather than requiring county collectors to provide prior mailed notice to owners, lien holders or other interested parties of record, the General Assembly required the purchaser of the tax sale certificate or of property sold at a third offering delinquent tax sale to conduct a title examination and mail post-sale notice to inform interested parties, including lien holders, of their tax

7

sale redemption rights prior to the expiration of the redemption rights in the property.  Apparently, the General Assembly chose not to impose on the collectors of revenue the cost of providing notice, which would include the cost of conducting a title examination on each property to be sold and the cost of mailing notice to all lien holders identified.

Section 140.405, RSMo, currently states:

> Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate. If any real estate is purchased at a third-offering tax auction and has a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate, the purchaser of said property at a third-offering tax auction shall notify anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate pursuant to this section. Once the purchaser has notified the county collector by affidavit that proper notice has been given, anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property shall have ninety days to redeem said property or be forever barred from redeeming said property. If the county collector chooses to have the title search done then the county collector must comply with all provisions of this section, and may charge the purchaser the cost of the title search before giving the purchaser a deed pursuant to section 140.420.

In *Glasgow Enterprises, Inc. v. Bowers*, 196 S.W.3d 625 (Mo. App., E.D. 2006), a party seeking to set aside a collector's deed acquired a publicly recorded interest in the property during the

90-day notice period prescribed by the statute. The Court refused to set aside the collector's deed, stating:

> This statute [Section 140.405, RSMo] specifically requires a purchaser to meet one "requirement" with respect to real estate that is subject to a publicly recorded interest, that is, to give notice to the described category of persons "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed[.] The statute does not contain any other requirements, and it specifically does not require any notice to be given after the ninety-day notice is given. If the legislature had intended to require a purchaser to provide additional notices to persons who obtained interests in the property after the mandated notice is given, it could have done so. Its decision not to include this requirement indicates a contrary intent. ... [Citation omitted.] The wisdom of not requiring subsequent notices is a matter for the legislature and not for the courts. ... [Citation omitted.]

196 S.W.3d at 631; *see also Glasgow Enterprises, Inc. v. Rossel,* 209 S.W.3d 498 (Mo. App., E.D. 2006) (holding that parties who had a publicly recorded interest in the subject property prior to the commencement of the 90-day notice period described in Section 140.405, RSMo, have standing to object to notice under that statute).

In this case, the Collector's Deed was issued on or about September 19, 2006. Plaintiff's Summary Judgment Exhibit No. 4. OCWEN did not acquire a publicly recorded interest in the subject property until April 23, 2007. Plaintiff's Summary Judgment Exhibit No. 5. OCWEN did not have a publicly recorded interest in the subject property during the relevant 90-day period described in Section 140.405, RSMo. OCWEN was not entitled to notice under Section 140.405, RSMo. OCWEN is not within the class of persons entitled to notice under Section 140.405, RSMo, and OCWEN has no standing to challenge the notice given under Section 140.405, RSMo. *United Companies Lending Corporation v. Triumph Properties, LLC,* 984 S.W.2d 112, 113 (Mo. App., E.D. 1998) (party to assignment of deed of trust who had no recorded interest at the time notices of tax

sale redemption were sent under Section 140.405, RSMo, was not entitled to notice under that statute).

### POINT III:

### THE SUBSTANCE OF THE TAX SALE REDEMPTION NOTICES SENT BY BELLISTRI CANNOT AFFECT OCWEN'S RIGHTS, AS OCWEN HAD NO RIGHT OT NOTICE UNDER SECTION 140.405, RSMO.

OCWEN argues that the substance of the notices of tax sale redemption sent by Plaintiff were not in compliance with Section 140.405, RSMo. However, as previously stated, OCWEN had no right to notice under Section 140.405, RSMo, and its rights could not be prejudiced by any non-compliance with Section 140.405, RSMo, of the type described by OCWEN.

### CONCLUSION

From the foregoing, Plaintiff concludes that neither MERS nor Separate Defendant Ocwen were entitled to notice under Section 140.405, RSMo, and Separate Defendant Ocwen does not have standing to assert any rights of MERS or other parties to such notice as was given. The Collector's Deed in favor of Plaintiff is valid.

GEBHARDT REAL ESTATE AND LEGAL
SERVICES, L.L.C.,

Phillip K. Gebhardt                29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mail, postage prepaid, this 3rd day of __March__, 2008, to Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1.

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Response to Motion for Summary Judgment
File No. 06-348-L-5352
Pkg

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI,
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

| | | |
|---|---|---|
| ROBERT BELLISTRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06JE-CC00893 |
| | ) | |
| GLEN L. CROUTHER, | ) | Division 4 |
| BNC MORTGAGE, INC., | ) | |
| a Delaware corporation, and | ) | |
| | ) | |
| All unknown and unnamed persons or entities who | ) | |
| are the heirs, grantees or successors of | ) | |
| Glen L. Crouther, BNC Mortgage, Inc., or any | ) | |
| persons or entities who have, or claim to have, or | ) | |
| appear of record as having, an interest, deed of | ) | |
| trust, mortgage, lease, lien, claim, title, or estate in | ) | |
| the real property and the improvements thereon, if | ) | |
| any, located in the County of Jefferson, in the State | ) | |
| of Missouri, commonly known as 1210 Airglades, | ) | |
| Arnold, Missouri 63010, and more particularly | ) | |
| described as: | ) | |
| | ) | |
| All of Lot Fifty-six (56) of BAYSHORE NORTH | ) | |
| PLAT ONE, a Subdivision in U.S. Survey 2020, as | ) | |
| Shown by plat on file in the Recorder's Office of | ) | |
| Jefferson County, Missouri, in Plat Book 40, Pages | ) | |
| 13 and 14, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO SEPARATE DEFENDANT OCWEN'S RESPONSE TO PLAINTIFF'S
AMENDED MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, by and through his attorney pursuant to Missouri Supreme Court

74.04, and for his Reply to Separate Defendant Ocwen's Response to Plaintiff's Amended Motion

for Summary Judgment, states:

## REPLY

1.      Plaintiff admits paragraphs 1, including subparagraphs a. and b., 2, 3, 4, 5, and 7 of

OCWEN'S Additional Material Facts for purposes of this Motion for Summary Judgment.

## POINT I:  MERS ACTS SOLELY AS A NOMINEE AND CANNOT BE A

## BENEFICIARY UNDER THE RELEVANT DEED OF TRUST

Defendant Ocwen alleges that MERS was entitled to notice of tax sale redemption rights

under Section 140.405, RSMo.

By Deed of Trust dated on or about March 2, 2002, and recorded on or about March 8, 2002,

as Document No. 020012853 of the Jefferson County Land Records, Defendant Glen L. Crouther (a

single person), as Grantor, conveyed a security interest in the Property to Millsap & Singer, P.C., as

Trustee for Mortgage Electronic Registration Systems, Inc., acting solely as nominee for BNC

Mortgage, Inc., and its successors and assigns, to secure indebtedness in the amount of $93,595.00

and other charges specified therein (hereinafter sometimes referred to as the "Deed of Trust").  See

paragraph 3 of the Affidavit in Support of Plaintiff's Motion for Summary Judgment and the exhibits

marked Summary Judgment No. 2 and Defendant's Exhibit RSJ-1.

Said Deed of Trust states, in part:

DEFINITIONS

....

(A)     "Borrower" is Glen L. Crouther, a single person, ....
Borrower is the trustor under this Security Instrument.

GRANTEE:   BNC MORTGAGE, INC., A
DELAWARE CORPORATION

(C)     "Lender" is BNC MORTGAGE, INC. ...

(D)     "Trustee" is Millsap, Singer & Dunn, P.C. ...

(E)     "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.   MERS is the beneficiary under this Security Instrument. ...

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property ....

The Lender is granted all substantive rights under the Deed of Trust, and MERS is named therein solely as a nominee of the Lender and Lender's successors and assigns.

Defendant Ocwen must prevail on the strength of its own title, and Defendant Ocwen has not deemed it necessary to seek to join MERS as a necessary or indispensable party to these proceedings.

The Deed of Trust in question identifies MERS as the beneficiary of the Deed of Trust, and *Glasgow Enterprises, Inc. v. Kusher,* 231 S.W.3d 201, 204-205 (Mo. App., E.D. 2007), holds that tax sale redemption notices must be sent to the deed of trust beneficiary.

In *Prindable v. Walsh,* 69 S.W.3d 912, 913 (Mo. App., E.D. 2002), the Court stated:

The term "nominee" has an established meaning in the law of securities. See definition in Black's Law Dictionary, 7th Edition 1999, definition of "nominee: . . .2. A person who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others. . ." Most corporate shares, indeed, are probably issued in the names of nominees. The typical example is the conventional brokerage account. *If a person is a nominee for another, the nominee is not the beneficial owner.*

3

(Emphasis added.)

In this case, the Deed of Trust identifies MERS as a beneficiary of the Deed of Trust ad also states that MERS is acting solely as a nominee for Lender and Lender's successors and assigns. These are inconsistent statements under Missouri law, as MERS cannot be both the beneficiary of the Deed of Trust and the nominee of another who is holding bare legal title to beneficial interest under the Deed of Trust for another.

Under Missouri law, the Deed of Trust's designation of MERS as both a beneficiary of the Deed of Trust and as a nominee holding bare legal title to the beneficial interest under the Deed of Trust is ambiguous, if not contradictory.

Looking to the *Kusher* case for guidance, it was held that sending tax sale redemption notices to the trustee of a deed of trust was not in compliance with Section 140.405, RSMo, as the trustee of a deed of trust holds bare legal title to the security interest for the benefit of the beneficiary, but the trustee is not the holder of the deed of trust for purposes of Section 140.405, RSMo. *Compare Lohr v. Cobur Corporation,* 654 S.W.2d 883, 887 (Mo. banc 1983) (Blackmar, J., concurring) (asking the question answered by *Kusher* as to whether the trustee under a deed of trust is entitled to tax sale redemption notices).

By analogy, this Court can conclude that a nominee holding bare legal title for the benefit of others is the holder of a deed of trust entitled to tax sale redemption notices. If a trustee serving under the Deed of Trust and to whom legal title has been transferred is not a party to whom notice of tax sale redemption rights must be given under Section 140.405, RSMo, as was held in *Kusher,* a nominee holding bare legal title to the beneficial interest under the deed of trust is not the holder of the deed of trust for purposes of Section 140.405, RSMo.

4

The Court concludes that MERS is acting solely as nominee for the Lender, BNC Mortgage, Inc., and its successors and assigns, and that the designation of MERS as beneficiary in the Deed of Trust means that MERS holds bare legal title of the beneficial interest of the Deed of Trust for the benefit of BNC Mortgage, Inc.

Based upon the foregoing, the Court should conclude that MERS did not hold a publicly recorded deed of trust encumbering the Property within the meaning of the word "holds" as used in Section 140.405, RSMo, and that Section 140.405, RSMo, did not require that notice be sent to MERS.

## POINT II:  OCWEN DOES NOT HAVE STANDING TO OBJECT TO THE NOTICE PROVIDED UNDER SECTION 140.405, RSMO, BECAUSE OCWEN OBTAINED A RECORDED INTEREST IN THE SUBJECT PROPERTY AFTER THE 90-DAY NOTICE PERIOD DESCRIBED IN SECTION 140.405, RSMO, AND OCWEN HAS NO STANDING TO CONTEST THE NOTICE GIVEN UNDER SECTION 140.405, RSMO, AS OCWEN WAS NOT ENTITLED TO SUCH NOTICE

OCWEN argues that the substance of Plaintiff's notice does not comply with Section 140.405, RSMo.  OCWEN'S Legal Memorandum in Opposition, at unnumbered page 4.  Plaintiff believes that OCWEN was not entitled to notice under Section 140.405, RSMo, as OCWEN had no recorded interest in the subject property until after the collector's deed was issued to Plaintiff.

Under the Jones-Munger Act, prior notice of the sale of property for delinquent taxes was historically conducted solely by publication.  The Jones-Munger Act did not require that prior mailed notice be sent to lien holders or owners of record.  Section 140.010, 140.150, and140.170, RSMo.  Prior to the decision of the United States Supreme Court in *Mennonite Board of Missions v. Adams*,

462 U.S. 791 (1983), constructive notice by publication alone was held to comport with the constitutional requirements of due process under the theory "that those with an interest in property were under an obligation to act reasonably in keeping themselves informed of proceedings that affected that property." *Id.* at 804 (O'Connor, J., dissenting).

*Mennonite Board of Missions* brought about a significant change in the notice procedures required to enforce state tax liens. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at 798. Accordingly, the Supreme Court of Missouri in *Lohr v. Cobur Corp.*, 654 S.W.2d 833 (Mo. banc 1983), citing *Mennonite Board of Missions*, held that the notice-by-publication procedure of the Jones-Munger Act was insufficient to satisfy the due process rights of a publicly recorded deed of trust holder: "We conclude that where a deed of trust naming the deed of trust beneficiary is publicly recorded, notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known available address or by personal service." *Id.* at 886.

In apparent response to the *Mennonite Board of Missions* and *Lohr* decisions, the General Assembly of Missouri attempted to cure the constitutional defect in the Jones-Munger Act by amending Section 140.250 and by enacting a new Section 140.405, RSMo, in 1984. 1984 *Mo. Laws* 431-32. Rather than requiring county collectors to provide prior mailed notice to owners, lien holders or other interested parties of record, the General Assembly required the purchaser of the tax sale certificate or of property sold at a third offering delinquent tax sale to conduct a title examination and mail post-sale notice to inform interested parties, including lien holders, of their tax sale redemption rights prior to the expiration of the redemption rights in the property. Apparently,

the General Assembly chose not to impose on the collectors of revenue the cost of providing notice, which would include the cost of conducting a title examination on each property to be sold and the cost of mailing notice to all lien holders identified.

Section 140.405, RSMo, currently states:

> Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement or until such person makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate. If any real estate is purchased at a third-offering tax auction and has a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate, the purchaser of said property at a third-offering tax auction shall notify anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate pursuant to this section. Once the purchaser has notified the county collector by affidavit that proper notice has been given, anyone with a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property shall have ninety days to redeem said property or be forever barred from redeeming said property. If the county collector chooses to have the title search done then the county collector must comply with all provisions of this section, and may charge the purchaser the cost of the title search before giving the purchaser a deed pursuant to section 140.420.

In *Glasgow Enterprises, Inc. v. Bowers,* 196 S.W.3d 625 (Mo. App., E.D. 2006), a party seeking to set aside a collector's deed acquired a publicly recorded interest in the property during the 90-day notice period prescribed by the statute.  The Court refused to set aside the collector's deed, stating:

> This statute [Section 140.405, RSMo] specifically requires a purchaser to meet one "requirement" with respect to real estate that is subject to a publicly recorded interest, that is, to give notice to the described category of persons "[a]t least ninety days prior to the date when a purchaser is authorized to acquire the deed[.]  The statute does not contain any other requirements, and it specifically does not require any notice to be given after the ninety-day notice is given.  If the legislature had intended to require a purchaser to provide additional notices to persons who obtained interests in the property after the mandated notice is given, it could have done so.  Its decision not to include this requirement indicates a contrary intent.  ... [Citation omitted.]  The wisdom of not requiring subsequent notices is a matter for the legislature and not for the courts. ... [Citation omitted.]

196 S.W.3d at 631; *see also Glasgow Enterprises, Inc. v. Rossel,* 209 S.W.3d 498 (Mo. App., E.D. 2006) (holding that parties who had a publicly recorded interest in the subject property prior to the commencement of the 90-day notice period described in Section 140.405, RSMo, have standing to object to notice under that statute).

In this case, the Collector's Deed was issued on or about September 19, 2006.  Plaintiff's Summary Judgment Exhibit No. 4.  OCWEN did not acquire a publicly recorded interest in the subject property until April 23, 2007.  Plaintiff's Summary Judgment Exhibit No. 5.  OCWEN did not have a publicly recorded interest in the subject property during the relevant 90-day period described in Section 140.405, RSMo.  OCWEN was not entitled to notice under Section 140.405, RSMo.  OCWEN is not within the class of persons entitled to notice under Section 140.405, RSMo, and OCWEN has no standing to challenge the notice given under Section 140.405, RSMo.  *United Companies Lending Corporation v. Triumph Properties, LLC,* 984 S.W.2d 112, 113 (Mo. App., E.D. 1998) (party to assignment of deed of trust who had no recorded interest at the time notices of tax sale redemption were sent under Section 140.405, RSMo, was not entitled to notice under that statute).

## POINT III:  THE SUBSTANCE OF THE TAX SALE REDEMPTION NOTICES SENT BY BELLISTRI CANNOT AFFECT OCWEN'S RIGHTS, AS OCWEN HAD NO RIGHT OT NOTICE UNDER SECTION 140.405, RSMO.

OCWEN argues that the substance of the notices of tax sale redemption sent by Plaintiff were not in compliance with Section 140.405, RSMo.  However, as previously stated, OCWEN had no right to notice under Section 140.405, RSMo, and its rights could not be prejudiced by any non-compliance with Section 140.405, RSMo, of the type described by OCWEN.

GEBHARDT REAL ESTATE AND LEGAL SERVICES, L.L.C.,

Phillip K. Gebhardt          29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mail, postage prepaid, this 27ᵗʰ day of February, 2008, to Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1.

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Reply to Response to Motion for Summary Judgment2
File No. 06-348-L-5352
Pkg

FILED

FEB 0 7 2008

HOWARD WAGNER
CIRCUIT CLERK

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

ROBERT BELLISTRI          )
                          )
          Plaintiff,      )
                          )          Cause No. 06JE-CC893J4
v.                        )
                          )
GLEN CROUTHER, et.al.     )
                          )
          Defendants.     )

### DEFENDANT OCWEN'S
### STATEMENT OF UNCONTROVERTED MATERIAL FACTS

COMES NOW defendant Ocwen, and in support of its motion for summary judgment

asserts that the following facts are uncontroverted:

1.   The document whereby defendant Ocwen claims an interest in the real estate that is the

     subject of this litigation is a March 4, 2002 Deed of Trust ("Deed of Trust") recorded on

     March 8, 2002 as document # 020012853 securing principal amount of $93,595.00.  **(See**

     **Defendant's Exhibit B-SJ1, Deed of Trust; See also Plaintiff's Statement of**

     **Uncontroverted Facts 3, First Amended Motion for Summary Judgment; Affidavit**

     **of Ocwen, Exhibit SJ-3).**

2.   Mortgage Electronic Registration Systems, Inc. was the named beneficiary on the Deed

     of Trust and nominee for BNC Mortgage, Inc. with an address of P.O. Box 2026, Flint,

     MI 48501-2026. **(See Exhibits B-SJ1, SJ-3).**

3.   MERS has a "legal title to the beneficial interest in the trust created by the Deed of

     Trust..." **(See Plaintiff's Legal Memorandum in Support of Reply to Response To**

     **Plaintiff's Motion for Summary Judgment, p. 10).**

4.   Defendant Ocwen is now last assignee and holder of the Deed of Trust. **(See Plaintiff's**

**Statement of Uncontroverted Facts 6, First Amended Motion for Summary Judgment; Exhibit SJ-3;  Assignment of Deed of Trust, Exhibit SJ-5).**

5.     The August 22, 2005 tax sale pursuant to which plaintiff obtained a Collector's Deed, dated September 19, 2006 and recorded September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records, was not the third such offering by the Jefferson County Collector.  **(See Plaintiff's Response to Ocwen's Request for Admissions No. 1, which admissions are affixed hereto as Exhibit SJ-2).**

6.     Bellistri did not mail by certified mail any notice of the right to redeem, or any other correspondence, to Mortgage Electronic Registration Systems, Inc. ("MERS"), who is the named beneficiary on the subject Deed of Trust. **(See Exhibit B-SJ1; Admissions 5, 6, 8, 13, 14, Exhibit SJ-2; Exhibit SJ-3).**

7.     Bellistri's letter of May 12, 2006 addressed to BNC Mortgage is the only purported notice of the right to redeem to any person or entity listed on the Deed of Trust, and states in part: "To redeem your security claim, contact, [sic] Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406 with [sic] 90 days from the date of receipt of this letter." **(See Defendant's Exhibit SJ-4; Admission 14, Exhibit SJ-2).**

8.     § 140.405 R.S.Mo. (2007) provides:  At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to

comply with this provision shall result in such purchaser's loss of all interest in the real

estate.  **(A copy of the statute is affixed hereto as Exhibit SJ-6).**

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101; 314-770-1850 fax
S&W 07-2145

### Certificate Of Service

A true and accurate copy of the foregoing was mailed postage-prepaid this 6th day of February, ~~January~~, 2008 to Phillip Gebhardt, 1270 North Main Street, Desoto MO  63020; Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.



03/16/2007 16:52

PAGE 1/17

020012853

FILED AND RECORDED
IN OFFICIAL RECORDS OF
JEFFERSON COUNTY
2002 MAR -8 PM 3:24
MICHAEL'S CASTLE
RECORDER OF DEEDS

Return To:
BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

Lender address located on page 2
Trustee address located on page 7
Full Legal Description located on page 3

#81847                    DEED OF TRUST          MIN 100122100000043899

Loan No.: #006547CNCU

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated March 4, 2002 together with all Riders to this document.  GRANTOR
(B) "Borrower" is GLEN L. CROUTHER, A SINGLE PERSON

whose address is 8641 MCKNEW
SAINT LOUIS,MO 63114
Borrower is the trustor under this Security Instrument.
GRANTEE: BNC MORTAGE INC, A DELAWARE CORPORATION

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3026  1/01


DEFENDANT'S EXHIBIT
B-SJ1
Blumberg No. 5114


DEFENDANT'S EXHIBIT
B
exhibit



(C) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware.
Lender's address is P.O. BOX 19854, IRVINE, CA 92623-9656

(D) "Trustee" is MILLARD, SINGER & DOAN, P.C.

Trustee's address is 7777 BONHOMME, SUITE 2300, ST. LOUIS, MO 63105

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 4, 2003 .
The Note states that Borrower owes Lender Ninety-Three Thousand five hundred
and 00/100                    Dollars
(U.S. $ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2033 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider      ☐ Second Home Rider
☐ Balloon Rider          ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider              ☐ Biweekly Payment Rider      ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

-6A(MO) (0106).01             Page 2 of 16      Initials ___      Form 3026 1/01



(F) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(G) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(H) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the
            COUNTY                      of           JEFFERSON, MISSOURI
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
ALL OF LOT 56 OF BAYSHORE NORTH PLAT ONE, A SUBDIVISION IN U.S. SURVEY 203, AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI IN PLAT BOOK 40 PAGES 13 AND 14.

Parcel ID Number: 01-8.0-33.0-3-001-034          which currently has the address of
1210 RIVERDALE DRIVE                                                        [Street]
ARNOLD                                  [City]  , Missouri 63010  [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

@-6A(MO) (0410).01            Page 8 of 16          Init. ___          Form 3026  1/01













BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. [illegible]

2. Application of Payments or Proceeds. [illegible]

[illegible]

3. Funds for Escrow Items. [illegible] premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and Assessments, if any, be escrowed by Borrower.

Initials: [signature]

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially [illegible] ... Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: [signature]

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain [illegible] ... unless Lender agrees to such release in writing. [illegible] ... (except as provided in Section 20) [illegible]

14. [illegible]

15. Notices. [illegible] ... Lender [illegible] ... in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: [signature]

required in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrower would otherwise be entitled under Applicable Law.

-6A(MO) (0107)01                                      Page 14 of 16                  Initials: _____                Form 3025  1/01



27. Notice. Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________ (Seal) -Borrower
[illegible] L. [illegible]

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

STATE OF MISSOURI, County ss: Jefferson

On this 5th day of March, 2002, before me personally appeared [illegible], a single person

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My Term Expires:

Deanna L. [illegible] (signature)
Notary Public

[illegible]
Notary Public - Notary Seal
STATE OF MISSOURI
Jefferson County
My Commission Expires: Dec. 3, 2004

Loan No.: ST02647CBOU

**ADJUSTABLE RATE RIDER**
**(LIBOR 6-Month Index - Rate Cap)**

THIS ADJUSTABLE RATE RIDER is made this    6th day of  March, 2001  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to  RNC MORTGAGE, INC., A DELAWARE
CORPORATION     (the "Lender") of the same date and covering the property described in the
Security Instrument and located at:

1719 AIRGLADES DRIVE, ARNOLD, MO 63010
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of    8.690 %. The Note provides for changes in
the interest rate and the monthly payments, as follows:

"4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The interest rate I will pay may change on the first day of  April,  2004  , and on that
day every    6th    month thereafter. Each date on which my interest rate could change is called a
"Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is
the average of interbank offered rates for 6-month U.S. dollar-denominated deposits in the London market
based on quotations of major banks, as published in the "Money Rates" section of The Wall Street Journal.
The most recent Index figure available as of the date 45 days before each Change Date is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon
comparable information. The Note Holder will give me notice of this choice.

ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX-Single Family-                         Rev. 10/96
Page 1 of 2

Borrower Initials _____  _____

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And 760/1000 percentage points ( 6.760 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.960 % or less than 9.960 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 00/100 percentage point(s) ( 1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.960 % or less than 9.960 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
GLEN L CROUTHER   - Borrower                          - Borrower

_____ (Seal)        _____ (Seal)
                  - Borrower                          - Borrower

_____ (Seal)        _____ (Seal)
                  - Borrower                          - Borrower

ADJUSTABLE RATE RIDER LIBOR 6 MONTH INDEX-Single Family                  Rev. 1975
Page 2 of 2

Borrower Initials : _____

NDA40BU