IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI,
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

FILED

DEC 1 8 2007

HOWARD WAGNER
CIRCUIT CLERK

| | | |
|---|---|---|
| ROBERT BELLISTRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06JE-CC00893 |
| | ) | |
| GLEN L. CROUTHER, | ) | Division 4 |
| BNC MORTGAGE, INC., | ) | |
| a Delaware corporation, and | ) | |
| | ) | |
| All unknown and unnamed persons or entities who | ) | |
| are the heirs, grantees or successors of | ) | |
| Glen L. Crouther, BNC Mortgage, Inc., or any | ) | |
| persons or entities who have, or claim to have, or | ) | |
| appear of record as having, an interest, deed of | ) | |
| trust, mortgage, lease, lien, claim, title, or estate in | ) | |
| the real property and the improvements thereon, if | ) | |
| any, located in the County of Jefferson, in the State | ) | |
| of Missouri, commonly known as 1210 Airglades, | ) | |
| Arnold, Missouri 63010, and more particularly | ) | |
| described as: | ) | |
| | ) | |
| All of Lot Fifty-six (56) of BAYSHORE NORTH | ) | |
| PLAT ONE, a Subdivision in U.S. Survey 2020, as | ) | |
| Shown by plat on file in the Recorder's Office of | ) | |
| Jefferson County, Missouri, in Plat Book 40, Pages | ) | |
| 13 and 14, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO RESPONSE OF OCWEN TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through its attorney pursuant to Missouri Supreme Court

74.04, and for his Reply to the Response of Ocwen to Plaintiff's Motion for Summary Judgment,

states:

1.      Plaintiff objects to the purported Undisputed Additional Material Facts stated in paragraphs 1 a. & b. and 2 of OCWEN's Response, in that said purported facts are not supported by affidavit or discovery in this matter.

2.      Plaintiff objects to the purported Disputed Additional Material Facts stated in paragraphs 3, 4, and 5 of OCWEN'S Response, in that OCWEN has no standing to challenge the notices of tax sale redemption rights sent by Plaintiff to other parties, because OCWEN had no publicly recorded interest in the subject property when said notices were sent or during any statutory notice period or prior to the issuance of a collector's deed to Plaintiff.

GEBHARDT REAL ESTATE AND LEGAL SERVICES, L.L.C.,

Phillip K. Gebhardt          29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mail, postage prepaid, this _13th_ day of _December_, 2007, to Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; and Jeffrey T. Weisman, Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1.

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Reply to Response to Motion for Summary Judgment
File No. 06-348-L-5352
Pkg

2

Case: 4:09-cv-00731-CAS   Doc. #:  26   Filed: 03/31/10   Page: 3 of 82 PageID #: 562

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

FILED

NOV 2 7 2007

HOWARD WAGNER
CIRCUIT CLERK

ROBERT BELLISTRI                    )
                                    )
            Plaintiff,              )
                                    )       Cause No. 06JE-CC893J4
v.                                  )
                                    )
GLEN CROUTHER, et.al.               )
                                    )
            Defendants.             )

## DEFENDANT OCWEN'S LEGAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now OCWEN Loan Servicing, L.L.C. as agent and servicer for Deutsche Bank

National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital

Trust 2002-HE1, as successor in interest to Mortgage Electronic Registration Systems, Inc. as

nominee for BNC Mortgage, Inc (hereinafter "Ocwen") and offers its Suggestions in Opposition

to Plaintiff's Motion for Summary Judgment.

**Standard**

"The purpose of summary judgment under Missouri's fact-pleading regime is to identify

cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a

legal right to judgment for the movant." *ITT Commercial Fin. Corp. v. Mid-America Marine

Supply Corp.*, 854 S.W.2d 371, 380 (Mo. 1993) (hereinafter "*ITT*"); Rule 74.04(c)(6).

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where

the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute,

a right to judgment as a matter of law." *Id* at 376. "For purposes of Rule 74.04, a 'genuine

issue' exists where the record contains competent materials that evidence two plausible, but

contradictory, accounts of the essential facts. A 'genuine issue' is a dispute that is real, not

merely argumentative, imaginary or frivolous." *Id.* at 382. "A 'material fact' is a fact of such significance or probative value as to control or determine the outcome of the litigation." *Lewis v. Biegel*, 204 S.W.3d 354, 356 (Mo. Ct. App. 2006) (citations omitted).

**Burdens**

Bellistri bears the burden of making a prima facie case for summary judgment, and only then must Ocwen provide contrary evidence. *Itt* at 381. Ocwen acknowledges that the Collector's Deed is prima facie evidence of title in fee simple. *Stadium West Props., L.L.C. v. Johnson*, 133 S.W.3d 128, 136 (Mo. Ct. App. 2004). However, Ocwen also acknowledges that "this does not prevent an opposing party from attempting to overcome this prima facie evidence of regularity by offering its own evidence at variance with the title…" *Id.* Indeed, Ocwen is able to overcome Bellistri's prima facie case as competent evidence exists that shows Bellistri failed to comply with the law.

**Notice is in Genuine Dispute**

Ocwen disputes the fact of whether all interested parties were given proper notice for the opportunity to redeem as required by statute. The fact of Bellistri's statutory noncompliance directly determines title to the subject property and the outcome of this litigation, and is therefore material. *Lewis*, 204 S.W.3d at 356. Ocwen's contrary position is not merely argumentative, but is supported by credible evidence, and is therefore genuine. *ITT* at 382. Bellistri's Motion for Summary Judgment should therefore be denied as a matter of law.

**The Substance of Bellistri's Notice**

Bellistri purchased the subject property at a first tax sale offering. Section 140.405 R.S.Mo. provides that a purchaser of property at a delinquent land tax auction shall not acquire the deed  to the property pursuant to § 140.420 R.S.Mo. unless it complies with the following:

> At least ninety days prior to the date when a purchaser is *authorized to acquire the deed*, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim. Notice shall be sent by certified mail to any such person, including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale, at such person's last known available address. Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

§ 140.405 R.S.Mo. (2007) (emphasis added). The time when a purchaser "is authorized to acquire the deed" is not a date certain. *See Boston v. Williamson*, 807 S.W.2d 216, 218 (Mo. Ct. App. 1991). However, while the purchaser may elect that date, it must be *no sooner* than provided in section 140.420 R.S.Mo:

> If no person shall redeem the lands sold for taxes *within one year from the sale*, at the expiration thereof, and on production of certificate of purchase, the collector of the county in which the sale of such lands took place shall execute to the purchaser, his heirs or assigns, in the name of the state, a conveyance of the real estate so sold…

§ 140.420 R.S.Mo. (2007) (emphasis added). That is, following the first offering tax sale of August 22, 2005, the lienholder has an absolute statutory right to redeem at any time for one year: "The owner or occupant of any land or lot sold for taxes, or any other persons having an interest therein, may redeem the same at any time during the one year next ensuing…" § 140.340.1 R.S.Mo. (2007). During that year, the purchaser is vested with an inchoate interest, and legal title cannot vest until after that one year period (August 22, 2006) and compliance with the requirements of chapter 140. *See M & P ENTERPRISES v. TRANSAMERICA FIN. SERVS.*,

944 S.W.2d 154, 157 (Mo. 1997); **(See Plaintiff's Summary Judgment Exhibit No. 4).**

Ocwen's right to redeem extinguished no sooner than the expiration of one year, being August 22, 2006. Bellistri's notification letter dated May 12, 2006 was sent to BNC Mortgage, via certified mail, and states in part: "To redeem your security claim, contact, [sic] Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406 with [sic] *90 days from the date of receipt of this letter*." **(Defendant's Exhibit D-1)** (emphasis added). Bellistri's letter was received on May 13, 2006. **(Defendant's Exhibit D-2).** Ninety days from May 13, 2006 was August 11, 2006, a full 11 days prior to the expiration of one year from the sale date. Therefore, while the notice was sent more than 90 days prior to one year from the date of sale, the notice misinformed the lienholder that the absolute redemption period expired sooner than provided by law.

In *Valli v. Glasgow Enters.*, 204 S.W.3d 273 (Mo. Ct. App. 2006), after a third offering tax sale, the purchaser provided notice stating that the lienholder's right to redeem must be exercised "within ninety days of the date of this notice." *Id.* at 277. The court in that case held that the notice was improper because the statute provided that after a third offering sale, the redemption period was ninety days after the purchaser "notified the County Collector by affidavit that proper notice has been given," which time was *after* the actual date of the letter. *Id.* (citations omitted). The mandated result was that the purchaser lost interest in the property:

> [T]he notice requirements of Section 140.405 use the term "shall."
> "It is clear that when a statute mandates that something be done by providing that it shall occur, and it also provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed." The failure of a purchaser to comply with these notice provisions "shall result in [such purchaser's] loss of all interest in the real estate."

*Id.* at 276-277 (citations omitted).

While the present case involves a first offering tax sale, the result is the same. Bellistri failed to ***strictly comply*** with the statutory requirements of chapter 140. Since the notice was improper, Bellistri has lost all interest in the subject property. *Stadium West Props., L.L.C.*, 133 S.W.3d at 134. However, even were the substance of Bellistri's notice adequate, his failure to properly provide notice to the Deed of Trust beneficiary is equally fatal to its claim.

**To Whom Notice Was NOT Given**

Bellistri did not provide notice of the right to redeem to Mortgage Electronic Registration Systems, Inc. ("MERS"), who is the named beneficiary and nominee for the lender on the subject Deed of Trust. **(See Plaintiff's Summary Judgment Exhibit No. 2).** "Section 140.405 RSMo Supp. 2006 requires a purchaser at a tax sale to notify all deed of trust holders of their right to redeem. ***Notice to a deed of trust holder must be sent by certified mail to the deed of trust beneficiary at the beneficiary's last known address.***" *Glasgow Enters. v. Kusher*, 231 S.W.3d 201, 204 (Mo. Ct. App. 2007). Even sending notice to the *trustee* at the beneficiary's last known address is insufficient for strict compliance with section 140.405. *Id.* Bellistri's failure to provide proper notice to MERS is fatal to his claim to the Property and alone sufficient to defeat his motion for summary judgment.

**Conclusion**

Bellistri's reliance on the Collector's Deed to claim right as a matter of law to quiet title in the subject property is insufficient to obtain a judgment for summary judgment. Bellistri's prima facie showing of entitlement to judgment has been rebutted by Ocwen's competent evidence placing the material issue of notice into genuine dispute. Therefore Ocwen has met its burden and Bellistri's motion should be denied as a matter of law.

WHEREFORE, Defendant Ocwen prays this Honorable Court for an Order Denying

Plaintiff's Motion for Summary Judgment and for such other and further relief as this Court

deems just and proper in the circumstances.

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101
314-770-1850
S&W 07-2145

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing entry was mailed postage-prepaid this 26
day of_____ 2007, to Phillip Gebhardt, 1270 North Main Street, Desoto MO
63020; Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.

*Robert T. Bellistri*
*5224 Country Club Drive*
*High Ridge, MO 63049*
*(636) 677-7575*

Certified:  7004 1350 0002 1416 0716

May 12, 2006

BNC Mortgage
1901 Main Street
Irvine, CA 92614

Re:  Sale #:  1016
     Date: 8-22-05
     Property:  Bayshore North Lot 56
     Parcel Number: 018.033.03001036.

Dear BNC Mortgage:

On August 22,  2005,  I was the high bidder at the Jefferson County Tax Land Sale and was issued a Tax Sale Certificate of Purchase on the above referenced property.

According to State law, I am required to notify any person(s) who holds a publicly recorded Deed of Trust, Mortgage, Lease, Lien or Claim upon referenced real estate, of your right to redeem your security of claim.

To redeem your security of claim, contact , Beth Mahn, Collector of Revenue, Jefferson County, Missouri @ 636-797-5406  with 90 days from the date of receipt of this letter.

Failure to redeem said real estate will forfeit your rights to said property and a Collectors Deed will be issued to me.

                        Sincerely,
                        Robert T. Bellistri



DEFENDANT'S
EXHIBIT
D-1



**UNITED STATES**
**POSTAL SERVICE**

Home | Help | Sign In

Track & Confirm                    FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7004 1350 0002 1416 0716
Status: Delivered

Your item was delivered at 12:30 pm on May 13, 2006 in IRVINE, CA
92623. A proof of delivery record may be available through your local Post
Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > )  (?)    ( Return to USPS.com Home > )

Track & Confirm

Enter Label/Receipt Number.

[                    ]

( Go > )

Site Map    Contact Us    Forms    Gov't Services    Jobs    Privacy Policy    Terms of Use    National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA





IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

ROBERT BELLISTRI                    )
                                    )
                                    )
            Plaintiff,              )
                                    )        Cause No. 06JE-CC893J4
v.                                  )
                                    )
GLEN CROUTHER, et.al.               )
                                    )
            Defendants.             )

## AFFIDAVIT OF DEFENDANT OCWEN
## IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

State of FLORIDA                    )
                                    )ss
County of ORANGE                    )

COMES NOW, Jessica Dybas, as authorized agent of separate Defendant OCWEN Loan
Servicing, L.L.C. as agent and servicer for Deutsche Bank National Trust Company, as Trustee
for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as successor in interest
to Mortgage Electronic Registration Systems, Inc. as nominee for BNC Mortgage, Inc
(hereinafter "Ocwen"), and upon his oath states as follows:

1.      Affiant is of legal age and sound mind, capable of making this affidavit and personally
        acquainted with the facts herein stated.

2.      Affiant is the agent of Ocwen duly authorized to make this affidavit.

3.      Glen L. Crouther ("Crouther") obtained, by General Warranty Deed recorded March 8,
        2002, title to the property commonly known as 1210 Airglades, Arnold, Missouri 63010
        ("Property") and more particularly described as:

                    All of Lot Fifty-six (56) of BAYSHORE NOTH PLAT ONE, a
                    Subdivision in U.S. Survey 2020, as shown by plat on file in the
                    Recorder's Office of Jefferson County, Missouri, in Plat Book 40,
                    Pages 13 and 14.

4.      Crouther executed a Deed of Trust on the Property recorded March 8, 2002 in favor of
        Millsap, Singer & Dunn, PC as trustee for Mortgage Electronic Registration Systems
        ("MERS") the beneficiary and as nominee for BNC Mortgage, Inc. ("BNC").



5.    The titles and addresses for Millsap, Singer & Dunn, P.C., MERS and BNC are all listed on the Deed of Trust.

6.    MERS is the named beneficiary and nominee under the Security Agreement in the Deed of Trust.

7.    Pursuant to the April 4, 2007 assignment of the Deed of Trust, Defendant OCWEN Loan Servicing, L.L.C. is the agent and servicer for Deutsche Bank National Trust Company, Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, successor in interest to MERS, nominee for BNC.

8.    To affiant's knowledge, neither Ocwen nor Deutsche Bank National Trust Company or MERS received notice from Plaintiff Bellistri of any right to redeem the Property following the Jefferson County tax sale of the Property on August 22, 2005.

FURTHER, AFFIANT SAYETH NOT.

*Jessica Dybas*

Affiant Jessica Dybas

On this 15th day of November, 2007, before me personally appeared Jessica Dybas to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same as his/her free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office on the day and year first above-written.



Notary Public

My commission expires: 8/28/2010

Notary Public State of Florida
Queen Roberts
My Commission DD566550
Expires 08/28/2010

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

**F I L E D**

NOV 2 7 2007

HOWARD WAGNER
CIRCUIT CLERK

| | |
|---|---|
| ROBERT BELLISTRI | ) |
| | ) |
| Plaintiff, | ) |
| | )   Cause No. 06JE-CC893J4 |
| v. | ) |
| | ) |
| GLEN CROUTHER, et.al. | ) |
| | ) |
| Defendants. | ) |

## SEPARATE DEFENDANT OCWEN'S RESPONSE
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now separate Defendant OCWEN Loan Servicing, L.L.C. as agent and servicer

for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC

Mortgage Capital Trust 2002-HE1, as successor in interest to Mortgage Electronic Registration

Systems, Inc. as nominee for BNC Mortgage, Inc (hereinafter "Ocwen") and for its response to

plaintiff's motion for summary judgment states as follows:

**Response to Plaintiff's Factual Allegations**

1. Ocwen admits that Robert Bellsitri is an individual. Ocwen is without sufficient

   information or belief with which to admit or deny any remaining factual allegations in

   paragraph 1 and therefore denies same. In support of this denial, Ocwen asserts that

   there has been insufficient discovery as to the competence of Robert Bellistri to bring

   this action.

2. Admit.

3. Deny.

4. Defendant Ocwen admits that a Notice of Federal Tax Lien dated March 23, 2005 and

   filed March 29, 2005 as tax lien No.23273 of the Jefferson County Land Records in

the amount of $25,205.74 was filed. ("Plaintiff's Motion for Summary Judgment Exhibit 3"). However, Plaintiff's Motion for Summary Judgment fails to specify to whom notice was given. As the tax lien on its face lists only Defendant Glen L. Crouther, Ocwen is without sufficient information to admit or deny this averment as to any other persons or interests.

5.  Defendant Ocwen admits that a Collector's Deed dated September 19, 2006 and recorded September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records was filed and purported to convey an interest to Bellistri. However, a genuine issue of material fact exists over whether the purchaser Bellsitri gave proper notice to those entitled to redeem, and whether the substance of the notice to redeem was properly stated. Therefore a material and genuine issue exists as to whether Plaintiff followed all required procedures to obtain the Collector's Deed.

6.  Deny.

**Additional Material Facts**

**Undisputed**

1.  March 4, 2002 Deed of Trust recorded on March 8, 2002 as document # 020012853 securing principal amount of $93,595.00.

    a.  Millsap, Singer & Dunn P.C. was the named trustee with an address of 777 Bonhomme, Suite 2300 St. Louis MO 63105.

    b.  Mortgage Electronic Registration Systems, Inc. was the named beneficiary on the Deed of Trust and nominee for BNC Mortgage, Inc. with an address of P.O. Box 2026, Flint, MI 48501-2026.

2.     The August 22, 2005 tax sale was the first such offering by the Jefferson County

Collector.

**Disputed**

3.     Plaintiff Bellistri failed to gave Defendant Ocwen or its applicable predecessor(s) in

interest adequate notice to redeem its interest in the property by failing to mail notice

to all named interested parties stated in the deed of trust.

4.     Plaintiff Bellistri failed to gave Defendant Ocwen or its applicable predecessor(s) in

interest proper notice to redeem its interest in the property by failing to correctly state

the amount of time for redemption.

5.     Ocwen has submitted to this Court its Legal Memorandum in Opposition to Plaintiff's

Motion for Summary Judgment, and incorporates same by reference as though fully

set forth herein.

WHEREFORE, Defendant Ocwen prays this Honorable Court for an Order Denying

Plaintiff's Motion for Summary Judgment and for such other and further relief as this Court

deems just and proper in the circumstances.

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Ocwen
502 Earth City Expressway, Ste. 317
Earth City MO 63045
314-770-2120 ext, 101
314-770-1850
S&W 07-2145

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing entry was mailed postage-prepaid this _____
day of November, 2007, to Phillip Gebhardt, 1270 North Main Street, Desoto MO 63020;
Richard Gartner, 220 Salt Lick Road, St. Peters MO 63376.

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

FILED
NOV 19 2007

HOWARD WAGNER
CIRCUIT CLERK

| | | |
|---|---|---|
| ROBERT BELLISTRI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 06JE-CC893J4 |
| v. | ) | |
| | ) | |
| GLEN CROUTHER, et.al. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing **Separate Defendant Ocwen's First
Set Of Requests For Admissions Directed To Plaintiff Robert Bellistri** was mailed
postage pre-paid this 16th day of November, 2007, to:

1.  Richard Gartner, Attorney for Defendant Crouther, 220 Salt Lick Road, St. Peters
    MO  63376; and

2.  Phillip Gebhardt, Attorney for Plaintiff Bellistri, 1270 North Main Street, Desoto
    MO  63020; further an electronic copy in PDF format was served via e-mail with
    exhibit A-1 attached to Phillip K. Gebhardt at pkgmag@swbell.net.

JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Defendant
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101/ 314-770-1850 fax
bhill@logs.com
S&W 07-2145

<u>CERTIFICATE OF SERVICE</u>

    This is to certify that a true copy of the foregoing Answer was mailed postage prepaid this 7th day of November, 2007, to: Mr. Jeffrey T. Weisman and Mr. Blake D. Hill, 502 Earth City Expressway, Suite 317, Earth City, MO 63045.

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

**F I L E D**

NOV 0 5 2007

HOWARD WAGNER
CIRCUIT CLERK

ROBERT BELLISTRI                         )
                                         )
              Plaintiff,                 )
                                         )   Cause No. 06JE-CC893J4
v.                                       )
                                         )
GLEN CROUTHER, et.al.                    )
                                         )
              Defendants.                )

## SEPARATE DEFENDANT OCWEN'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now separate Defendant OCWEN Loan Servicing, L.L.C. as agent and servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as successor in interest to BNC Mortgage, Inc (hereinafter "Ocwen") and requests until November 26, 2007 to respond to Plaintiff's Motion for Summary Judgment and in support thereof states:

1.    Defendant Ocwen did not timely receive a copy of Plaintiff's motion.

2.    Plaintiff provided Ocwen a copy of the motion via facsimile on October 26, 2007.

3.    Defendant Ocwen has contacted Plaintiff, who will consent to such order without objection.

WHEREFORE, Defendant Ocwen prays this Honorable Court for an Order granting Ocwen until November 26, 2007 to respond to Plaintiff's Motion for Summary Judgment and for such other and further relief as this Court deems just and proper in the circumstances.

**So Ordered:** _____

11/6/07

_____
JEFFREY T. WEISMAN, #34075
BLAKE D. HILL, #58926
Attorneys for Defendant Ocwen

502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101
314-770-1850
S&W 07-2145

<u>CERTIFICATE OF SERVICE</u>

A true and accurate copy of the foregoing entry was mailed postage-prepaid this
_____ day of _November_ 2007, to Phillip Gebhardt, 1270 North Main Street,
Desoto MO  63020; Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.

IN THE TWENTY-THIRD JUDICIAL CIRCUIT COURT OF THE STATE OF MISSOURI,
AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

ROBERT BELLISTRI,                                    )
                                                     )
                    Plaintiff,                       )
                                                     )
v.                                                   )     Case No. 06JE-CC00893
                                                     )
GLEN L. CROUTHER,                                    )     Division 4
BNC MORTGAGE, INC.,                                  )
a Delaware corporation,                              )
INTERNAL REVENUE SERVICE, and                        )
                                                     )
All unknown and unnamed persons or entities who      )
are the heirs, grantees or successors of             )
Glen L. Crouther, BNC Mortgage, Inc., or any         )
persons or entities who have, or claim to have, or   )
appear of record as having, an interest, deed of     )
trust, mortgage, lease, lien, claim, title, or estate in )
the real property and the improvements thereon, if   )
any, located in the County of Jefferson, in the State )
of Missouri, commonly known as 1210 Airglades,       )
Arnold, Missouri 63010, and more particularly        )
described as:                                        )
                                                     )
All of Lot Fifty-six (56) of BAYSHORE NORTH          )
PLAT ONE, a Subdivision in U.S. Survey 2020, as      )
Shown by plat on file in the Recorder's Office of    )
Jefferson County, Missouri, in Plat Book 40, Pages   )
13 and 14,                                           )
                                                     )
                    Defendants.                      )

**FILED**

OCT 0 4 2007

HOWARD WAGNER
CIRCUIT CLERK

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Robert Bellistri do state the following under oath:

1.     That I am more than eighteen (18) years of age, and that I am competent to make

this Affidavit.

2.     Attached hereto, marked "Plaintiff's Motion for SJ Exhibit 1", and incorporated

herein is a certified copy of the General Warranty Deed dated on or about March 5, 2002 and

*1*

recorded on or about March 8, 2002 as Document No. 020012852 of the Jefferson County Land Records (certified copy).

3.      Attached hereto, marked "Plaintiff's Motion for SJ Exhibit 2", and incorporated herein is a certified copy of the Deed of Trust dated on or about March 5, 2002 and recorded on or about March 8, 2002 as Document No. 020012853 of the Jefferson County Land Records (certified copy).

4.      Attached hereto, marked "Plaintiff's Motion for SJ Exhibit 3", and incorporated herein is a certified copy of the Notice of Federal Tax Lien dated on or about March 23, 2005 and recorded on or about March 29, 2005, as Tax Lien No. 23273 of the Jefferson County Land Records (certified copy).

5.      Attached hereto, marked "Plaintiff's Motion for SJ Exhibit 4", and incorporated herein is a certified copy of the Collector's Deed dated on or about September 19, 2006 and recorded on or about September 19, 2006 as Document No. 2006R-046167 of the Jefferson County Land Records (certified copy).

6.      Attached hereto, marked "Plaintiff's Motion for SJ Exhibit 5", and incorporated herein is a certified copy of the Assignment of Deed of Trust dated on or about April 4, 2007, and recorded on or about April 23, 2007, as Document No. 2007R-018586 of the Jefferson County Land Records (certified copy).

7.      Further, Affiant sayeth naught.

Executed this 27th day of September, 2007.

_____
Robert Bellistri

**STATE OF MISSOURI**          )
                              )    SS
**COUNTY OF JEFFERSON**        )

On this 27th day of September, 2007, before me, a Notary Public in and for said state, personally appeared Robert Bellistri, known to me to be the person who executed the within Affidavit in Support of Plaintiff's Motion for Summary Judgment, and acknowledged to me that he executed the same for the purposes therein stated.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year last above written.

" NOTARY SEAL "
Shirley Ann Motyka, Notary Public
Jefferson County, State of Missouri
My Commission Expires 12/13/2010
Commission Number 06509498

_____
Notary Public

" NOTARY SEAL "
Shirley Ann Motyka, Notary Public
Jefferson County, State of Missouri
My Commission Expires 12/13/2010
Commission Number 06509498

My commission expires: _____.

Respectfully submitted,

GEBHARDT   REAL   ESTATE   AND
LEGAL SERVICES, L.L.C.,

_____
Phillip K. Gebhardt          29569
1720 North Main Street
Desoto, Missouri 63020
(636) 586-4545
St. Louis Telephone (636) 337-0615
Fax (636) 586-3504
Attorney for Plaintiff

CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was mail, postage prepaid, this 3rd day of October , 2007, to Richard A. Gartner, 220 Salt Lick Road, St. Peters, Missouri 63376, Attorney for Defendant Glen L. Crouther; Jeffrey T. Weisman, Jeffrey T. Wist, 502 Earth City Expressway, Suite 317, Earth City, Missouri 63045, Attorneys for OCWEN Loan Servicing, L.L.C., as agent for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as assignee of BNC Mortgage, Inc.; and Nicholas P. Llewellyn, Assistant United States Attorney, 111 South 10th Street, Room 20.333, St. Louis, Missouri 63101, Attorney for Defendant Internal Revenue Service.

Attachments:

Plaintiff's Motion for SJ Exhibit 1:   General Warranty Deed
Plaintiff's Motion for SJ Exhibit 2:   Deed of Trust
Plaintiff's Motion for SJ Exhibit 3:   Notice of Federal Tax Lien
Plaintiff's Motion for SJ Exhibit 4:   Collector's Deed
Plaintiff's Motion for SJ Exhibit 5:   Assignment of Deed of Trust

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\Affidavit in Support of Motion for Summary Judgment
File No. 06-348-L-5352
Pkg

4

020012852

FILED AND RECORDED
IN OFFICIAL RECORD OF
JEFFERSON COUNTY, MO

2002 MAR -8 PM 3: 24

MARLENE CASTLE
RECORDER OF DEEDS
#PAGES 2 FEES $26 00

## General Warranty Deed

81847

*This Deed,* Made and entered into this  5TH  day of  MARCH  , 20 02, by and between
Grantor(s):  STEVEN GAITHER AND JULIE GAITHER, HUSBAND AND WIFE

of the COUNTY  of JEFFERSON  State of  MISSOURI  , and
**Grantee(s):** GLEN L. CROUTHER, A SINGLE PERSON

of the COUNTY  of  JEFFERSON  State of  MISSOURI
**Grantee's mailing address:** 1210 AIRGLADES DR, ARNOLD, MO 63010

*WITNESSETH,* that the Grantor(s), for and in consideration of the sum of ONE DOLLAR AND OTHER VALUABLE
CONSIDERATIONS  paid by the Grantee(s), the receipt of which is hereby acknowledged, does or do
by these presents *GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM* unto the Grantee(s), the following
described Real Estate, situated in the  COUNTY  of  JEFFERSON  and State of Missouri, to-wit:

ALL OF LOT 56 OF BAYSHORE NORTH PLAT ONE, A SUBDIVISION IN U. S. SURVEY  202, AS
SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI IN
PLAT BOOK 40 PAGES 13 AND 14.

SUBJECT TO EASEMENTS, BUILDING LINES, RESTRICTIONS, RIGHT OF WAY OF ZONING
REGULATIONS, OF RECORD, IF ANY.

LOCATOR NO. 01-8.0-33.0-001-036

# Summary Judgment No. 1

**TO HAVE AND TO HOLD** the same, together with all rights and appurtenances to the same belonging, unto the Grantee(s) and to the heirs and assigns of such party or parties forever.

The Grantor(s) hereby covenanting that said party or parties and the heirs, executors, administrators and assigns of such party or parties, shall and will *WARRANT AND DEFEND* the title to the premises unto the Grantee(s), and to the heirs and assigns of such party or parties forever, against the lawful claims of all persons whomsoever, excepting, however, the general taxes for the calendar year 20 _02_ and thereafter, and special taxes becoming a lien after the date of this deed.

*In Witness Whereof,* the Grantor(s) has or have hereunto set their hand or hands the day and year first above written.

.................................................................          .................................................................
STEVEN GAITHER

.................................................................          .................................................................
JULIE GAITHER

STATE OF MISSOURI ）
                 ） ss.
COUNTY of JEFFERSON ）   On this  5TH   day of _MARCH_          , 20 02 , before me personally appeared
                                      STEVEN GAITHER AND JULIE GAITHER, HUSBAND AND WIFE

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that THEY executed the same as  THEIR       free act and deed, as the Grantor(s).

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the COUNTY      and State aforesaid, the day and year first above written.

My term expires:

| DEANNA L. SKILES |
| Notary Public - Notary Seal |
| STATE OF MISSOURI |
| Jefferson County |
| My Commission Expires: Dec. 3, 2004 |

                                        *Deanna Skiles*
                                        Notary Public  DEANNA L. SKILES

STATE OF MISSOURI ）
                 ） ss.
        of       ）   On this      day of          , 20    , before me appeared

to me personally known, who, being by me duly sworn, did say that

is the                     of
a Corporation of the State of                          , and that the SEAL AFFIXED to the forgoing instrument
is the corporate seal of said corporation, by authority of its Board of Directors; and said
acknowledged said instrument to be the free act and deed of said corporation.

        **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the       and State aforesaid, the day and year first above written.

My term expires:

                        .................................................................
                        Notary Public

Page 2 of 2

2

**020012853**

FILED AND RECORDED
IN OFFICIAL RECORD OF
JEFFERSON COUNTY, MO

2002 MAR -8  PM 3: 24

MARLENE CASTLE
RECORDER OF DEEDS

PAGES 17 FEES 71 00

Return To:

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

Lender address located on page 2
Trustee address located on page 2
Full Legal Description located on page 3

─────────[Space Above This Line For Recording Data]─────────

#81847

# DEED OF TRUST

MIN 100122200000065299

Loan No.: STO5547CROU

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated March 4, 2002
together with all Riders to this document.       GRANTOR

(B) "**Borrower**" is GLEN L. CROUTHER, A SINGLE PERSON

whose address is 8641 MORAN
SAINT LOUIS, MO 63114
Borrower is the trustor under this Security Instrument.

GRANTEE: BNC MORTGAGE INC, A DELAWARE CORPORATION

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3026   1/01

-6A(MO) (0107).01

Page 1 of 15                  Initials: [signature]

VMP MORTGAGE FORMS - (800)521-7291

# Summary Judgment No. 2

(C) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(D) "Trustee" is MILLSAP, SINGER & DUNN, P.C.

Trustee's address is 7777 BONHOMME, SUITE 2300, ST. LOUIS, MO 63105

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 4, 2002 .
The Note states that Borrower owes Lender **ninety-three thousand five hundred ninety-five and 00/100**                                                    Dollars
(U.S. $ 93,595.00             ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2032 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Initials: _____

VMP -6A(MO) (0107).01                    Page 2 of 15                    Form 3026   1/01

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the
          COUNTY                    of          JEFFERSON, MISSOURI          :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
ALL OF LOT 56 OF BAYSHORE NORTH PLAT ONE, A SUBDIVISION IN U.S. SURVEY 202, AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI IN PLAT BOOK 40 PAGES 13 AND 14.

Parcel ID Number: 01-8.0-33.0-3-001-036          which currently has the address of
                                                                                 [Street]
1210 AIRGLADES DRIVE
ARNOLD                                         [City]  , Missouri 63010          [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interest granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: ___

-6A(MO) (0107).01                    Page 3 of 15                    Form 3026  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

Initials: _____

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Initials: _____

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(MO) (0107).01          Page 7 of 15          Initials: [signature]          Form 3026  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for **Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _[initials]_

⬭-6A(MO) (0107).01                Page 8 of 15                Form 3026  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: [signature]

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _[signature]_

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Lease of the Property. Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

26. Homestead Exemption. Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

Initials: ___

**27. Notice.** Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           GLEN L. CROUTHER                -Borrower


_____          _____ (Seal)
                                                                           -Borrower


_____ (Seal)      _____ (Seal)
                   -Borrower                                               -Borrower


_____ (Seal)      _____ (Seal)
                   -Borrower                                               -Borrower


_____ (Seal)      _____ (Seal)
                   -Borrower                                               -Borrower


VMP®-6A(MO) (0107).01                Page 14 of 15                Form 3026   1/01

**STATE OF MISSOURI,**                                                County ss: Jefferson

    On this 5th      day of    March,   2002       , before me personally appeared
**GLEN L. CROUTHER,** a single person

to me known to be the person(s) described in and who executed the foregoing instrument, and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the
    County            and State aforesaid, the day and year first above written.

My Term Expires:               _Deanna L. Skiles_
                              Notary Public

> **DEANNA L. SKILES**
> Notary Public - Notary Seal
> **STATE OF MISSOURI**
> Jefferson County
> My Commission Expires: Dec. 3, 2004

Initials: _JC_

-6A(MO) (0107).01            Page 15 of 15            Form 3026  1/01

Loan No.: STO5547CROU

**ADJUSTABLE RATE RIDER**
**(LIBOR 6-Month Index - Rate Caps)**

 **THIS ADJUSTABLE RATE RIDER** is made this    **4th day of  March, 2002** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to  **BNC MORTGAGE, INC., A DELAWARE**
**CORPORATION**    (the "Lender") of the same date and covering the property described in the
Security Instrument and located at:

 **1210 AIRGLADES DRIVE, ARNOLD, MO 63010**
[Property Address]

 **THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE**
**INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE**
**AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME**
**AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

 **ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

 **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
 The Note provides for an initial interest rate of    **9.600 %**.  The Note provides for changes in
the interest rate and the monthly payments, as follows:

**"4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
 **(A) Change Dates**
 The interest rate I will pay may change on the first day of  **April,    2004**    , and on that
day every    **6th**    month thereafter. Each date on which my interest rate could change is called a
"Change Date."
 **(B) The Index**
 Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is
the average of interbank offered rates for 6-month U.S. dollar-denominated deposits in the London market
based on quotations of major banks, as published in the "Money Rates" section of The Wall Street Journal.
The most recent Index figure available as of the date 45 days before each Change Date is called the
"Current Index."
 If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information. The Note Holder will give me notice of this choice.

---

ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX-Single Family-                              Rev. 10/95
 Page 1 of 2

 Borrower Initials

MOADJRR.1

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And 700/1000** percentage points ( **6.700** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.600** % or less than **9.600** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND 00/100** percentage point(s) ( **1.00** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **16.600** % or less than **9.600** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ (Seal)                                    _____ (Seal)
GLEN L. CROUTHER            - Borrower                                                    - Borrower

_____ (Seal)                                    _____ (Seal)
                           - Borrower                                                    - Borrower

_____ (Seal)                                    _____ (Seal)
                           - Borrower                                                    - Borrower

Borrower Initials : _____  _____  _____  _____

MOADJRR2

9329

| Form 668 (Y)(c) | Department of the Treasury - Internal Revenue Service |
| (Rev. February 2004) | **Notice of Federal Tax Lien** |

| Area: <br> SMALL BUSINESS/SELF EMPLOYED AREA #9 <br> Lien Unit Phone: (651) 312-8080 | Serial Number <br><br> 220056805 | For Optional Use by Recording Office |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**FILED FOR RECORD**
AT 8 O'CLOCK 23 MIN. M.
MAR — MAR 29 2005
MARLENE CASTLE, RECORDER
JEFFERSON COUNTY, MO

Name of Taxpayer  GLEN L CROUTHER

Residence       1210 AIRGLADES
                ARNOLD, MO 63010

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6672 | 03/31/2001 | 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 | 03/29/2004 | 04/28/2014 | 2937.45 |
| 6672 | 06/30/2001 | 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 | 03/29/2004 | 04/28/2014 | 4212.78 |
| 6672 | 09/30/2001 | 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 | 03/29/2004 | 04/28/2014 | 3627.46 |
| 6672 | 12/31/2001 | 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 | 03/29/2004 | 04/28/2014 | 3937.21 |
| 6672 | 03/31/2002 | 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 | 03/29/2004 | 04/28/2014 | 3369.92 |
| 6672 | 06/30/2002 | 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 | 03/29/2004 | 04/28/2014 | 3789.44 |
| 6672 | 09/30/2002 | 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 | 03/29/2004 | 04/28/2014 | 3331.48 |

## Summary Judgment No. 3

| Place of Filing | | |
|---|---|---|
| Recorder of Deeds <br> Jefferson County <br> Hillsboro, MO 63050 | Total $ | 25205.74 |

This notice was prepared and signed at _____ ST PAUL, MN _____ , on this,

the ___23rd___ day of ___March___ , ___2005___ .

| Signature <br> *Sherwood* <br> for MELODY A ROEBUCK | Title <br> REVENUE OFFICER <br> (314) 513-3308 | 29-09-2642 |

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 2 - Internal Revenue Service TDA Copy

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X





**2006R-046167**

FILED AND RECORDED
IN OFFICIAL RECORD
09/19/2006    02:21:23PM
MARLENE CASTLE, RECORDER
PAGES    2
REC FEE:  27 00
NS FEE:



*(Space above reserved for Recorder of Deeds certification)*

# COLLECTOR'S DEED
## (To Purchaser of Tax Sale Certificate)

Whereas on this **19th** day of **September** , 20 **06**    **Beth Mahn**
the undersigned collector of the county of **Jefferson** , State of Missouri, (known as "Grantor"), did receive
from    **Robert  Bellistri, 5224 Country Club Dr, High Ridge MO  63049**
, of the county of **Jefferson** , State of Missouri, (known as
"Grantee(s), a certificate of purchase, in writing, bearing date the **22nd** day of **August** , 20 **05** , signed
by    **Beth Mahn**
who at the last mentioned date was Collector of said county
from which it appears that the said **Robert Bellistri**

did, on the **22nd** day of **August** , 20 **05** , purchase at public auction at the door of
the **administration center** in said county, the tract, parcel or lot of land lastly in this indenture described, and which lot or tract was sold
to    **Robert Bellistri**
for the sum    **Six Thousand** dollars and **Seventy Five** cents, being
the amount due on the following tracts or lots of land, returned delinquent in the name of
**Glen L. Crouther**

for non-payment of taxes, costs and charges for the years  **2002, 2003, 2004**

WITNESSETH  That the said Grantor, for and in consideration of the premises  has granted, bargained and sold unto the
said Grantee, his successors and assigns, forever, the tract or parcel of land mentioned in said certificate, situate in the
County of **Jefferson** and State of Missouri, and described as follows
Legal description

**Lot 56 Bayshore North**
**Section 33 Township 43 Range 6**
**Parcel #:  01-8.0-33.0-3-001-036.**

## Summary Judgment No. 4

Said lands have been recorded,  among other tracts,  in the office of said Collector, as delinquent for the non-payment of
taxes, costs, and charges due for the year last aforesaid,  and legal publication made of the sale of said lands, and it
appearing that the said    **Robert Bellistri**
is the legal owner of said certificate of purchase and the time fixed by law for redeeming the land therein described having
now expired, the said    **Glen L. Crouther**
nor any person in his behalf having paid or tendered the amount due the said    **Robert Bellistri**

Form 989                                    © 2001 ELKINS-SWYERS CO  SPRINGFIELD MO — Y-4504                                    Class B

on account of the aforesaid purchase, and for the taxes since paid, and the said

**Robert Bellistri**

having demanded a deed for the tract of land mentioned in said certificate, and which was the least quantity of the tract above described that would sell for the amount due thereon for taxes, costs and charges, as above specified and it appearing from the records of said County Collector's office that the aforesaid lands were legally liable for taxation, and has been duly assessed and properly charged on the tax books with the taxes for the years    2002, 2003, 2004  .

THEREFORE, this indenture made this        19th        day of        September            , 2006 , between the State of Missouri, by            **Beth Mahn**                                    Collector of said county, Grantor, and the said            **Robert Bellistri**                                    Grantee,

To Have and to Hold the said last mentioned tract or parcel of land, with the appurtenances thereto belonging, to the said Grantee, successors and assigns forever, in as full and ample a manner as the collector of said county is empowered by law to sell the same

IN TESTIMONY WHEREOF, the said            **Beth Mahn**
county of        **Jefferson**            has hereunto signed and affixed the official seal, the day and year last above written

_(signature)_ McMillian _by_ _(signature)_        _(signature)_ Beth Mahn        (Seal)
County Clerk of    **Jefferson**    County        Collector of        **Jefferson**        County

STATE OF MISSOURI,
County of    **Jefferson**    } ss

Before me, the undersigned            **Vera C. Bingham**                            , in and for said county, this day, personally came the above-named            **Beth Mahn**
Collector of said county, and acknowledged that he/she executed the foregoing deed for the uses and purposes therein mentioned

IN WITNESS WHEREOF, I have hereunto set my hand and seal this  19th    day    September            , 2006

**VERA C. BINGHAM**
Notary Public - Notary Seal
(SEAL) **STATE OF MISSOURI**
Jefferson County
My Commission Expires: June 13, 2008

_(signature)_ Vera C. Bingham
Notary Public
**Vera C. Bingham**

My commission expires ___June 13, 2008___

AFTER RECORDING RETURN TO

**Robert Bellistri**
**5224 Country Club Drive**
**High Ridge MO   63049**

Form 989                                        © 2001 ELKINS-SWYERS CO  SPRINGFIELD MO — Y-4504                    Class B

*2 0 0 7 R - 0 1 8 5 8 6   2*

**2007R-018586**

FILED AND RECORDED
IN OFFICIAL RECORD
04/23/2007    09:35:39AM
MARLENE CASTLE, RECORDER
PAGES   2
REC FEE:  27.00
NS FEE:



276°

Shapiro & Weisman
602 Earth City Expwy
Ste 817
Earth City Mo 63045

Title of Document:  Assignment of Deed of Trust

Date of Document:  April 4, 2007

Grantor(s):  Mortgage Electronic Registration Systems, Inc., its successors and assigns, as
nominee for BNC Mortgage Inc., its successors and assigns

Mailing Address(s):  3300 SW 34 Avenue, Suite 101, Ocala, FL 34474

Grantee(s):  cwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company,
as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage
Pass-Through Certificates, Series 2002-HE1, c/o Ocwen Loan Servicing, LLC

Mailing Address(s):  1661 Worthington Road, Suite 100, West Palm Beach, FL 33409

Legal Description:  All of Lot 56 of Bayshore North Plat One, a subdivision in U.S. Survey 203,
as shown by plat on file in the Recorder's Office of Jefferson County, Missouri in Plat Book 40
Pages 13 and 14.

# Summary Judgment No. 5

Reference Instrument No.:  020012853

(IF THERE IS NOT SUFFICIENT SPACE ON THIS PAGE FOR THE INFORMATION REQUIRED, STATE THE PAGE REFERENCE WHERE IT IS
CONTAINED WITHIN THE DOCUMENT.)
07-2143

Prepared By: ANN PINTO
Ocwen Loan Servicing,LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
LOAN NUMBER: 31177090
ATTORNEY CODE: 14004

## ASSIGNMENT OF DEED OF TRUST
## MISSOURI

This **ASSIGNMENT OF DEED OF TRUST** is made and entered into as of this 4th day of APRIL, 2007, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose address is 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, as nominee for BNC MORTGAGE INC. its successors and assigns, ("Assignor) to **OCWEN LOAN SERVICING, LLC, AS SERVICER FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF THE CDC MORTGAGE CAPITAL TRUST 2002-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-HE1** whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of JEFFERSON County, State of MISSOURI, as follows:

Trustor: GLEN L. CROUTHER
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC.
Trustee: MILLSAP, SINGER & DUNN P.C.
Document Date: MARCH 4, 2002
Date Recorded: 3/8/62
Instrument Number: 020012853
Book/Volume/Docket/Liber:
Page/Folio:
Property Address: 1210AIRGLADES DRIVE , ARNOLD , MO, 63010
LEGAL DESCRIPTION:
ALL OF LOT 56 OF BAYSHORE NORTH PLAT ONE, A SUBDIVISION IN U.S. SURVEY 202, AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI IN PLAT BOOK 40 PAGES 13 AND 14.

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.

This Assignment is made without recourse, representation or warranty.
DATED: APRIL 04, 2007.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC.

BY:
NAME: Scott Anderson
TITLE: Vice President
STATE OF FLORIDA          }
                          }ss.
COUNTY OF PALM BEACH .    }
This instrument was acknowledged before me on APRIL 04, 2007, by Scott Anderson, with whom I am personally acquainted with to be the Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC., executed the foregoing instrument for the purposes contained therein, by signing the name of the Bank by himself as the Vice President. Witness my Hand and Seal of Office, the day and year above written.

Notary Public

MIN: 100122200000065299                              MERS Ph.#:  (888) 679 - 6377

NOTARY PUBLIC-STATE OF FLORIDA
Doris Chapman
Commission # DD518204
Expires:  FEB. 14, 2010
Bonded Thru Atlantic Bonding Co., Inc.



**SHAPIRO & WEISMAN, L.C.**

ATTORNEYS AT LAW

Gerald M. Shapiro
Admitted in Illinois and
Florida only
David S Kreisman
Admitted in Illinois
Jeffrey T. Weisman



HOWARD WAGNER
CIRCUIT CLERK

September 4, 2007

Clerk of Jefferson County
Division 4
P.O. Box 100
Courthouse, 300 2nd St.
Hillsboro, MO  63050

Style of Case:      Robert Bellistri v. Glen Crouther, et al.
                    06JE-CC893J4

Property Address:   1210 Airglades Drive, Arnold, MO 63010
                    Imperial, MO 63052

S&W File No.:       07-0096

Dear Clerk:

Enclosed please find Defendant Ocwen Loan Servicing, LLC's Cross-Claim Against Defendant
Glen Crouther.   Please return a file stamped copy of the Cross-Claim to our office in the
envelope provided.  Thank you for your kind assistance.
Please let us know if you need anything further.

Very truly yours,

Jeffrey T. Wist
Associate Attorney

Enclosure(s)

---

502 Earth City Expressway, Suite 317• Earth City, Missouri  63045  •  voice: (314) 770-2120  •  fax: (314) 770-1850

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI

**FILED**

SEP - 6 2007

HOWARD WAGNER
CIRCUIT CLERK

ROBERT BELLISTRI )
)
Plaintiff, )
) Cause No. 06JE-CC893J4
v. )
)
GLEN CROUTHER, et.al. )
)
Defendants. )

## CROSS-CLAIM AGAINST DEFENDANT GLEN CROUTHER

Comes now Jeffrey T. Weisman of Shapiro & Weisman, L.C., on behalf of OCWEN

Loan Servicing, L.L.C. as agent and servicer for Deutsche Bank National Trust Company, as

Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as successor in

interest to BNC Mortgage, Inc. and states for its Cross-claim against Glen Crouther as follows:

1.  Cross-Claim Plaintiff, Ocwen Loan Servicing LLC, agent, is a duly authorized and

    existing and organized entity under the laws of the United States and claims an interest in

    land.

2.  Cross-Claim Defendant Crouther is an individual who has an interest in the subject

    property located in the County of Jefferson, State of Missouri.

3.  Cross-Claim Defendant Crouther executed a promissory note and deed of trust dated

    March 4, 2002 and recorded on March 8, 2002 in favor of Millsap, Singer & Dunn, P.C.

    as Trustee for Mortgage Electronic Registration Systems acting solely as nominee for

    BNC Mortgage which was recorded as Document #020012852 of the Jefferson County

    Recorder of Deeds Office. (A copy of the note and deed of trust are attached hereto and

    incorporated herein as **Exhibit A and Exhibit B**).

4. On April 4, 2007 the deed of trust was assigned to Ocwen Loan Servicing, L.L.C. as agent and servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as successor in interest to BNC Mortgage, Inc. (A copy of the assignment is attached hereto and incorporated herein as **Exhibit C).**

5. Said promissory note provides that in the event that Plaintiff requires the assistance of an attorney to collect amounts due under it, Plaintiff may recover all collection costs including reasonable attorney's fees.

6. The legal description for the subject property is:

> All of Lot 56 of Bayshore North Plat One, a subdivision in U.S. Survey 203, as shown by plat on file in the Recorder's Office of Jefferson County Missouri in Plat Book 40 Pages 13 and 14.

7. Said promissory note is in default to Plaintiff.

8. On March 8, 2007 and March 14, 2007 letters were sent to Cross-Claim Defendant stating that the amount due and owing as of March 7, 2007 was $94,753.52 excluding attorney fees and any foreclose costs. (Copies of the letters are attached and incorporated by reference herein **as Exhibit #D and Exhibit E).**

9. Cross Claim Plaintiff has performed all of its duties and obligations under the note and deed of trust.

10. The deed of trust remains a lien on the subject property.

11. Pursuant to the terms of the note and deed of trust Cross-Claim Plaintiff has the right to recover the debt and damages found to be due which shall be levied on the mortgaged property.

12. Cross-Claim Plaintiff is asserting its right to commence foreclosure proceedings and the amount found due Plaintiff should be decreed a first and prior lien on all of the real property.

13. Cross-Claim Plaintiff as holder of the note and deed of trust has declared and hereby declares the entire balance due together with interest, late charges, attorney fees and other expenses incurred to date herein.

WHEREFORE, Plaintiff requests the court award judgment in favor of Plaintiff against Cross Claim Defendant Crouther and on the property located at 1210 Airglades Drive, Arnold MO for the sum of $94,753.52 through March 7, 2007 plus interest, late charges plus interest at the rate stated on the note; attorney fees for collecting and costs; Declaring, decreeing and adjudging the judgment and the deed of trust to be a first and prior lien on the real property; Declaring and decreeing that the deed of trust be foreclosed; Declaring, decreeing and adjudging that if Plaintiff is not paid the principal, interest, attorney fees and other charges found due Plaintiff within ten days after the date of the judgment that S&W Foreclosure Corp. be appointed Successor Trustee and instructed to execute and foreclose on the subject property for the purpose of satisfying the loan obligation and that the appointee issue a Trustee's Deed to the successful purchaser or in the alternative that the Sheriff of Jefferson County be instructed to execute on the subject property for the purpose of satisfying the loan obligation and that the Sheriff issue a Sheriff's Deed; that a certified copy of the Judgment and Decree be recorded in the Office of the Recorder of Deeds of Jefferson County, Missouri, pursuant to Section 511.320 RSMo.

JEFFREY T. WEISMAN, #34075
JEFFREY T. WIST, #58679
Attorney for Defendant
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext, 101
314-770-1850
S&W 07-2145

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing cross claim was mailed postage-prepaid this ___ day of June, 2007, to Phillip Gebhardt, 1270 North Main Street, Desoto MO  63020; Richard Gartner, 220 Salt Lick Road, St. Peters MO  63376.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If within   twenty-four      (  24    ) months after the date of execution of the Security Instrument (as defined below) I make a full Prepayment, I will at the same time pay to the Note Holder a Prepayment charge equal to two percent (2%) of the outstanding Principal balance of this Note at the time of the full Prepayment.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment without imposition of a Prepayment charge.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     6   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
GLEN L. CROUTHER                 Borrower                                          Borrower

_____ (Seal)          _____ (Seal)
                                 Borrower                                          Borrower

_____ (Seal)          _____ (Seal)
                                 Borrower                                          Borrower

*[SIGN ORIGINAL ONLY]*



03/15/2007 10:52

020012853

FILED AND RECORDED
IN OFFICIAL RECORD OF

2002 MAR -8 PM 3: 24

HARLEN'S CASTLE
RECORDER OF DEEDS

Return To:

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

Lender address located on page 2
Trustee address located on page 2
Full Legal Description located on page 3

[Space Above This Line For Recording Data]

#81847

## DEED OF TRUST

MIN 100122200000068299

Loan No.: 8T06547CMOU

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated March 4, 2002,
together with all Riders to this document.   GRANTOR
(B) "Borrower" is GLEN L. CROUTHER, A SINGLE PERSON

whose address is 8441 MORIAN
HAZEL ZOOZE,MO 63114
Borrower is the trustor under this Security Instrument.
GRANTEE: BNC MORTGAGE INC, A DELAWARE CORPORATION

MISSOURI-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3025   1/01

DEFENDANT'S
EXHIBIT
B



(C) "Lender" is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware.
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(D) "Trustee" is MILLSAP, SINGER & DUNN, P.C.

Trustee's address is 7777 BONHOMME, SUITE 2300, ST. LOUIS, MO 63105

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026; tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 6, 2003 .
The Note states that Borrower owes Lender ninety-three thousand five hundred
and no/100 .................................................................................................................. Dollars
(U.S. $ 93,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2018 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
- [ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
- [ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

-6A(MO) (0107).01        Page 2 of 16        Form 3026   1/01



(J) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(K) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                          of                          JEFFERSON, MISSOURI
       [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
ALL OF LOT 36 OF RAYMORE NORTH PLAT ONE, A SUBDIVISION IN U.S. SURVEY 802, AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI IN PLAT BOOK 40 PAGES 13 AND 14.

Parcel ID Number: 01-8.0-33.0-3-001-034                    which currently has the address of
1210 RINGLAKE DRIVE                                                              [Street]
HEMROD                                   [City] , Missouri 63010                 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(MO) (0407).01                    Page 3 of 16            Initials _____            Form 3026  1/01



Case: 4:09-cv-00731-CAS   Doc. #:  26   Filed: 03/31/10   Page: 60 of 82 PageID #: 619







the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan Application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable









16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: [illegible] ... shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. [illegible] ... There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: [illegible]

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(MO) (0107).01                    Page 12 of 16           Initials: ____           Form 3426  1/01



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrower would otherwise be entitled under Applicable Law.



**STATE OF MISSOURI,** County ss: Jefferson

On this 5th day of March, 2002, before me personally appeared [illegible] L. [illegible], a single person

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My Term Expires:

Notary Public

DEANNA L. [illegible]
Notary Public - Notary Seal
STATE OF MISSOURI
Jefferson County
My Commission Expires: Dec. 3, 2004

SA(MO) [illegible] Page 14 of 14 Initials Form 3026 1/01

Loan No.: STO8447CROU

**ADJUSTABLE RATE RIDER**
**(LIBOR 6-Month Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 4th day of March, 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to BNC MORTGAGE, INC., A DELAWARE CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1310 AIRGLADES DRIVE, ARNOLD, MO 63010
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 9.600 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

"4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of April, 2004, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6-month U.S. dollar-denominated deposits in the London market based on quotations of major banks, as published in the "Money Rates" section of The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Borrower Initials ____ ____ ____ ____ ____

03/16/2007 10:52                                                          PAGE 17/17

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And 7087/1000 percentage points ( 6.960 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.960 % or less than 5.600 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 00/100 percentage point(s) ( 1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.960 % or less than 5.600 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
GLEN L. CROUTHER          - Borrower                                   - Borrower

_____ (Seal)          _____ (Seal)
                          - Borrower                                   - Borrower

_____ (Seal)          _____ (Seal)
                          - Borrower                                   - Borrower

ADJUSTABLE RATE RIDER - LIBOR  6 MONTH INDEX-Single Family         Rev. 10/02
                        Page 2 of 2

Borrower Initials _____  _____  _____  _____

9329

Form 668 (Y)(c)
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

**Notice of Federal Tax Lien**

23273

| Area: | Serial Number | For Optional Use by Recording Office |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #9 Lien Unit Phone: (651) 312-8080 | 220056905 | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

FILED FOR RECORD
AT 2 O'CLOCK 22 MIN 4 . M.
H.R — MAR 2 9 2005

Name of Taxpayer  GLEN L CROUTHER

MARLENE CASTLE, RECORDER
JEFFERSON COUNTY, MO

Residence      1210 AIRGLADES
               ARNOLD, MO 63010

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6672 | 03/31/2001 | 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 | 03/29/2004 | 04/28/2014 | 2937.45 |
| 6672 | 06/30/2001 | 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 | 03/29/2004 | 04/28/2014 | 4212.78 |
| 6672 | 09/30/2001 | 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 | 03/29/2004 | 04/28/2014 | 3627.46 |
| 6672 | 12/31/2001 | 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 | 03/29/2004 | 04/28/2014 | 3937.21 |
| 6672 | 03/31/2002 | 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 | 03/29/2004 | 04/28/2014 | 3369.92 |
| 6672 | 06/30/2002 | 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 | 03/29/2004 | 04/28/2014 | 3789.44 |
| 6672 | 09/30/2002 | 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 | 03/29/2004 | 04/28/2014 | 3331.48 |

Place of Filing

Recorder of Deeds
Jefferson County
Hillsboro, MO 63050

Total  $      25205.74

This notice was prepared and signed at      ST PAUL, MN      , on this,

the    23rd  day of    March      2005.

Signature    Sherwood
for MELODY A ROEBUCK

Title    REVENUE OFFICER
         (314) 513-3308

29-09-2642

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 2 - Internal Revenue Service TDA Copy

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X

*2007R-018586 2*

**2007R-018586**

FILED AND RECORDED
IN OFFICIAL RECORD
04/23/2007   09:35:39AM
MARLENE CASTLE, RECORDER
PAGES   2
REC FEE:  27.00
NS FEE:



276

X  Shapiro & Weisman
802 Earth City Expwy
Ste 817
Earth City Mo 63045

Title of Document:  Assignment of Deed of Trust

Date of Document:  April 4, 2007

Grantor(s):  Mortgage Electronic Registration Systems, Inc., its successors and assigns, as nominee for BNC Mortgage Inc., its successors and assigns

Mailing Address(s):  3300 SW 34 Avenue, Suite 101, Ocala, FL 34474

Grantee(s):  cwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, c/o Ocwen Loan Servicing, LLC

Mailing Address(s):  1661 Worthington Road, Suite 100, West Palm Beach, FL 33409

Legal Description:  All of Lot 56 of Bayshore North Plat One, a subdivision in U.S. Survey 203, as shown by plat on file in the Recorder's Office of Jefferson County, Missouri in Plat Book 40 Pages 13 and 14.

Reference Instrument No.:  020012853

(IF THERE IS NOT SUFFICIENT SPACE ON THIS PAGE FOR THE INFORMATION REQUIRED, STATE THE PAGE REFERENCE WHERE IT IS CONTAINED WITHIN THE DOCUMENT.)
07-2145

DEFENDANT'S
EXHIBIT
C

Prepared By: ANN PINTO
Ocwen Loan Servicing,LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
LOAN NUMBER: 31177090
ATTORNEY CODE: 14004

## ASSIGNMENT OF DEED OF TRUST
### MISSOURI

This **ASSIGNMENT OF DEED OF TRUST** is made and entered into as of this 4th day of APRIL, 2007 , from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, whose address is 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, as nominee for BNC MORTGAGE INC. its successors and assigns, ("Assignor) to OCWEN LOAN SERVICING, LLC, AS SERVICER FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF THE CDC MORTGAGE CAPITAL TRUST 2002-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-HE1  whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of JEFFERSON County, State of MISSOURI, as follows:

Trustor: GLEN L. CROUTHER
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC.
Trustee: MILLSAP, SINGER & DUNN P.C.
Document Date: MARCH 4, 2002
Date Recorded: 3/8/02
Instrument Number: 020012853
Book/Volume/Docket/Liber: _____
Page/Folio: _____
Property Address: 1210 AIRGLADES DRIVE , ARNOLD , MO, 63010
LEGAL DESCRIPTION:
ALL OF LOT 56 OF BAYSHORE NORTH PLAT ONE, A SUBDIVISION IN J.S. SURVEY 202, AS SHOWN BY PLAT ON FILE IN THE RECORDER'S  OFFICE OF JEFFERSON COUNTY, MISSOURI IN PLAT BOOK 40 PAGES 13 AND 14.

Together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due thereon, with interest thereon, and attorney's fees and all other charges.

This Assignment is made without recourse, representation or warranty.
DATED: APRIL 04, 2007.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC.

BY:
NAME:  Scott Anderson
TITLE:  Vice President
STATE OF FLORIDA  )
                                      )ss.
COUNTY OF PALM BEACH  )
This instrument was acknowledged before me on APRIL 04, 2007, by Scott Anderson, with whom I am personally acquainted with to be the Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR BNC MORTGAGE INC., executed the foregoing instrument for the purposes contained therein, by signing the name of the Bank by himself as the Vice President. Witness my Hand and Seal of Office, the day and year above written.

_____
*Notary Public *

MERS Ph.#:  (888) 679 - 6377

MIN: 100122200000065299

NOTARY PUBLIC-STATE OF FLORIDA
Doris Chapman
Commission # DD518204
Expires:  FEB. 14, 2010
Bonded Thru Atlantic Bonding Co., Inc.



# SHAPIRO & WEISMAN, L.C.

Gerald M. Shapiro
Admitted in Illinois and
Florida only
David S Kreisman
Admitted in Illinois
Jeffrey T. Weisman
Jeffrey T. Wist

ATTORNEYS AT LAW

March 8, 2007                    (SENT VIA FIRST CLASS MAIL; POSTAGE PRE-PAID)

Glen L. Crouther
1210 Airglades Drive
Arnold, MO 63010

Re:  Owner(s):               **Glen L. Crouther**
     BFB Loan No.:           **31177090**
     Property Address:       **1210 Airglades Drive, Arnold, MO 63010**
     S&W File No.:           **07-2145**

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS
## PRACTICES ACT, 15 U.S.C. SECTIONS 1692, et seq.

The law firm of Shapiro & Weisman, L.C., has been retained to initiate proceedings to foreclose the Deed of Trust on the above-referenced loan number.  The following information is provided to you as required by the Federal Fair Debt Collections Practices Act:

1.  As of March 7, 2007 our client has advised that the amount of the debt is $94,753.52.

2   The creditor to whom the debt is owed is Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1.

3.  The Fair Debt Collections Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of the date of this letter.  If you do not dispute the debt within that period, it will be assumed to be valid.  The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1.  If you choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date of this letter.

4.  If you notify us within thirty (30) days of the date of this letter that you are disputing the debt or any portion thereof, or if you notify us within thirty (30) days of the date of this letter that you want to know the name of the original creditor, if that creditor is different from our client, Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

502 Earth City Expressway, Suite 317 • Earth City, Missouri  63045 • voice: (314) 770-2120 • fax:



Page Two
March 8, 2007
07-2145

5.   The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date of this letter before initiating foreclosure proceedings to foreclose the Deed of Trust.  In the event we do initiate proceedings to foreclose your Deed of Trust, within thirty (30) days from the date of this letter, you still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1.

6.   If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date of this letter, we will mail you information validating the debt and/or we will provide you with the name of the original creditor.  If we have already initiated foreclosure proceedings, we may choose to suspend our efforts to foreclose the Deed of Trust on your property.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  **For further information, call (314)770-2120**.

Any written requests should be addressed to:

       Fair Debt Attorney
       Shapiro & Weisman, L.C.
       502 Earth City Expressway, Suite 317
       Earth City, MO  63045

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  ALSO, THIS NOTICE DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

Very truly yours,

SHAPIRO & WEISMAN, L.C.


Foreclosure Department



## SHAPIRO & WEISMAN, L.C.

Gerald M. Shapiro
Admitted in Illinois and
Florida only
David S Kreisman
Admitted in Illinois
Jeffrey T. Weisman
Jeffrey T. Wisl

ATTORNEYS AT LAW

March 14, 2007

(SENT VIA FIRST CLASS MAIL; POSTAGE PRE-PAID)

Glen L. Crouther
8907 Natural Bridge
Saint Louis, MO 63121

Re:   Owner(s):            **Glen L. Crouther**
       BFB Loan No.:       **31177090**
       Property Address:  **1210 Airglades Drive, Arnold, MO 63010**
       S&W File No.:      **07-2145**

### NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS
### PRACTICES ACT, 15 U.S.C. SECTIONS 1692, et seq.

The law firm of Shapiro & Weisman, L.C., has been retained to initiate proceedings to foreclose the Deed of Trust on the above-referenced loan number. The following information is provided to you as required by the Federal Fair Debt Collections Practices Act:

1.    As of March 7, 2007 our client has advised that the amount of the debt is $94,753.52.

2    The creditor to whom the debt is owed is Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1.

3.    The Fair Debt Collections Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of the date of this letter. If you do not dispute the debt within that period, it will be assumed to be valid. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1. If you choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date of this letter.

4.    If you notify us within thirty (30) days of the date of this letter that you are disputing the debt or any portion thereof, or if you notify us within thirty (30) days of the date of this letter that you want to know the name of the original creditor, if that creditor is different from our client, Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

DEFENDANT'S
EXHIBIT

Page Two
March 14, 2007
07-2145

5.   The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date of this letter before initiating foreclosure proceedings to foreclose the Deed of Trust.  In the event we do initiate proceedings to foreclose your Deed of Trust, within thirty (30) days from the date of this letter, you still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, Mortgage Pass-Through Certificates, Series 2002-HE1.

6.   If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date of this letter, we will mail you information validating the debt and/or we will provide you with the name of the original creditor.  If we have already initiated foreclosure proceedings, we may choose to suspend our efforts to foreclose the Deed of Trust on your property.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  **For further information, call (314)770-2120** .

Any written requests should be addressed to:

Fair Debt Attorney
Shapiro & Weisman, L.C.
502 Earth City Expressway, Suite 317
Earth City, MO  63045

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  ALSO, THIS NOTICE DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

Very truly yours,

SHAPIRO & WEISMAN, L.C.

Foreclosure Department

## NOTICE OF ENTRY
(SUPREME COURT RULE 74.03)

### In The 23rd Judicial Circuit Court, Jefferson County, Missouri

**ROBERT BELLISTRI V GLEN L CROUTHER ET AL**

**CASE NO : 06JE-CC00893**

To:     File

YOU ARE HEREBY NOTIFIED that the court duly entered the following:

**Filing Date**          **Description**

31-Aug-2007     Motion Hearing Held
Cause called, parties appear by counsel.  Leave granted to file cross claim against defendant Glen Crouther is sustained.
SO ORDERED:  MARK STOLL, CIRCUIT JUDGE DIV. FOUR

_____

                                    Clerk of Court

CC:     File
        JEFFREY T WEISMAN
        PHILLIP KENT GEBHARDT
        RICHARD ANTHONY GARTNER
Date Printed : 31-Aug-2007

**Office of Circuit Clerk**

**HOWARD WAGNER**

_Howard Wagner_

CIRCUIT CLERK
FILED IN COURT

Robert Bellistri
         VS

Glen Crouther, et al.

Div. No. ____ 4

DATE 8/31/07 DIV. 4
In the     bld

**CIRCUIT COURT**
**JEFFERSON COUNTY, MISSOURI**

Docket No. _____

Case No. O6JE-CC 89354

August 31 _____, 20 07

## MEMORANDUM

Motion for Leave to file Cross-Claim against Defendant Glen Crouther is sustained.

Copy to Pltf Atty 8/31/07

SO ORDERED:
_R. Stott_

_signature_ 58679
(314) 770-2120

**PLF. ATTORNEY**                          **DEF. ATTORNEY**

IN THE CIRCUIT COURT OF THE COUNTY OF JEFFERSON
STATE OF MISSOURI



| | | |
|---|---|---|
| ROBERT BELLISTRI | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 06JE-CC89914 |
| | ) | |
| v. | ) | |
| | ) | |
| GLEN CROUTHER, et.al. | ) | Div. 4 |
| | ) | |
| Defendants. | ) | |

### NOTICE OF HEARING MOTION OF DEFENDANT FOR LEAVE TO FILE CROSS-CLAIM AGAINST DEFENDANT GLEN CROUTHER

COMES NOW Jeffrey T. Weisman of Shapiro & Weisman, L.C., on behalf of OCWEN Loan Servicing, L.L.C. as agent and servicer for Deutsche Bank National Trust Company, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HE1, as successor in interest to BNC Mortgage, Inc. and serves notice to all interested parties that Defendant will call for hearing its Motion for Leave to File Cross-Claim against Defendant Glen Crouther on *August 31st* at *1:00 P* .m. in the Circuit Court of Jefferson County, Missouri, Division 4, 300 Main Street, Hillsboro, Missouri 63050.

_____
JEFFREY T. WEISMAN, #34075
JEFFREY T. WIST, #58679
Attorneys for Cross Claim Plaintiff
502 Earth City Expressway, Ste. 317
Earth City MO  63045
314-770-2120 ext. 101
314-770-1850
S&W 07-2145

### CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing Motion was mailed this 27th day of July 2007, to the following:  Phillip Gebhardt, 1720 N. Main Street, Desoto MO  63020; Richard Gartner, 220 Salt Lick Road, St. Peters, MO 63376.

_____