IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., MERSCORP, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:09-CV-00731-CAS ) ) |
| ROBERT BELLISTRI, | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Mortgage Electronic Registration Systems, Inc. and Merscorp, Inc. (collectively MERS) respectfully submit this memorandum in opposition to the motion for summary judgment filed by defendant Robert Bellistri (Bellistri).

**Introduction**

Bellistri states that "the entire MERS system is designed to inoculate mortgages and deeds of trust from the necessity of recording transfers or assignments" of those interests. Br. at 10.  When MERS is the mortgagee, there are no transfers or assignments to record. MERS' entire business model is designed to bring 19th century, paper-centric laws in line with 21st century electronic business practices.  In its statement of facts in support of its own motion for summary judgment, MERS explained why this model is a tremendous boon to consumers and Bellistri does not argue otherwise.

It is precisely because Bellistri has launched a full, frontal attack on the validity of MERS' business model that MERS has standing to file this lawsuit.  As a matter of law, the loss

SLC-6053609-2

of future business opportunities constitutes an Article III injury.  MERS' customers have expressed concern about the viability of its business model, due in no small part to Bellistri's success in claiming the subject property.  If MERS cannot provide notice to its customers of tax sales, it will lose business, and the requested declaratory relief requiring Bellistri to provide such notice to MERS will redress that injury.

For that matter, MERS' record status as a nominee of the lender and the lender's assigns gives it standing to prosecute this case.  The Supreme Court of the United States has squarely held that an assignee with bare legal title, and no beneficial interest in the proceeds, nonetheless has standing to sue for the benefit of the assignor.

Throughout his papers, Bellistri appears to assume that the primary focus of this lawsuit is setting aside the judgment that Bellistri got against the original borrower.  That is not correct.  MERS seeks only to set aside the collector's deed that was given to Bellistri or subject it to the Deutsche Bank lien.  The injury to MERS and to MERS' member was complete when that deed, which purported to convey the property to Bellistri free and clear of any lien, was recorded.

On the merits, MERS has a statutory right to notice of its redemption rights pursuant to § 140.405 R.S.Mo.  That statute requires notice to all who **claim** of record an interest in the subject property.  It does not require that the claim be valid or successful.  It is undisputed that MERS claimed an interest in the property as nominee for its lenders and that MERS' claim was recorded.

The due process clause of both the United States and Missouri Constitutions also required Bellistri to give notice.  In § 140.405, the Missouri legislature gave MERS the right to such notice, and it violates due process to arbitrarily deprive MERS of that statutory right.

The Supreme Court of the United States has squarely held that rights of an assignee, who has bare legal title and absolutely no beneficial interest in the res, are property rights. Here, MERS holds legal title to the deed of trust, as nominee or agent for the beneficial owner, and this is a property right entitled to due process protection. MERS' rights include the opportunity to enforce the lien, either via suit or via private foreclosure, and those are also property rights according to the Supreme Court.

For all of these reasons, MERS is entitled to summary judgment in this case and Bellistri is not.

### Factual Background

MERS fully set forth the factual background of this case in its statement of facts in support of its motion for summary judgment. In the interest of judicial economy, MERS incorporates that statement of facts and all supporting exhibits by reference.

MERS would reiterate, however, that its business model accomplishes what its founders, including agencies of the federal government, expected it to do. The ability to sell and resell home mortgage loans on the secondary market is absolutely vital to home sales. The entire country learned that lesson in the fall of 2008, when the country's credit markets froze. MERS' business model is essential to the free flow of credit in home mortgage markets.

The reason is simple: by having MERS hold the lien as mortgagee of record, as nominee, the lenders do not need to go through the expensive, time-consuming and error-prone process of recording a paper assignment every time the loan is sold, because MERS remains the mortgagee. Since MERS' creation, it has saved the mortgage industry at least $1 billion, savings that have been passed on to the consumer.

The system works only if others must honor MERS' claim of record and notify it of events, like tax sales, that might affect the validity of the lien.  In insisting that he need not provide statutorily required notice to MERS, Bellistri is challenging MERS' basic business model, and all of the benefits it brings to consumers.

## Argument

I. **MERS Has Standing To Prosecute This Action Challenging Bellistri's Failure To Provide Notice, Because:**

   A. **Bellistri's Continuing Refusal To Provide Notice To MERS As Nominee Damages MERS' Business Model And The Requested Declaratory Relief Will Redress That Injury; and**

   B. **MERS' Status As The Nominee Of The Lender Alone Gives It Standing To Sue.**

Bellistri's first argument for summary judgment is that MERS lacks standing to challenge his failure to provide notice, and hence there is no Article III case or controversy.  Constitutional standing has three elements.  The plaintiff must plead and prove:

   (1)   An "injury in fact" – i.e., a "concrete and particularized" injury that is "actual" rather than "hypothetical";

   (2)   A "causal connection between the injury and the conduct complained of"; and that

   (3)   A favorable decision will "likely" redress the injury.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

MERS satisfies these requirements in two ways.  First, Bellistri's continuing assertion that he has no obligation to notify MERS when he attempts to confirm a collector's deed damages MERS' ability to conduct its business and costs MERS customers.  Second, MERS' status as a nominee alone gives it standing to prosecute this case.  The requested declaratory relief will redress both injuries.

A.    **Bellistri's Continuing Refusal To Provide Notice To MERS As Nominee Damages MERS' Business Model And The Requested Declaratory Relief Will Redress That Injury.**

Bellistri is in the business, inter alia, of bidding on properties at tax foreclosure sales. In just the last year, he has been the subject of two opinions by the Missouri court of appeals in cases involving tax foreclosures. Bellistri v. Ocwen Loan Servicing LLC, 284 S.W.3d 619 (Mo. App. 2009); Hames v. Bellistri, 300 S.W.3d 235 (Mo. App. 2009).

In both his answer and his motion for summary judgment, Bellistri has explicitly argued that MERS has no legal right to notice of the existence or confirmation of a collector's deed. Answer ¶ 61; Br. at 9-14. Obviously, in future tax foreclosure sales, he has no intention to provide any such notice. If MERS does not receive such notice, it cannot protect its lien position and in turn its members' security interests. So Bellistri's position directly threatens MERS' business model, and the requested declaratory relief will put an end to that threat.

As explained at length at pp. 30-35 of MERS' memorandum in support of its own motion for summary judgment, there is no question that a realistic danger of prospective business loss satisfies the injury requirement of standing. E.g., Adams v. Watson, 10 F.3d 915, 922 (1st Cir. 1993); CoxCom, Inc. v. Chaffee, 536 F.3d 101, 108 (1st Cir. 2008).

There is no question that MERS' members have expressed concern about the viability of their security interests "in direct response to Deutsche Bank's loss of its security interest" in the Crouther property and similar cases in other states. PSOF 57. It is both a matter of common sense and of undisputed fact that Bellistri's claimed ability to confirm a collector's deed without notice to MERS "will inevitably result in loss of business for MERS." PSOF 59. Finally, there is no question that MERS' members have demanded that MERS compensate them for the loss of security interests in property and likely will in the future when those claiming property, such as

Bellistri, fail to provide MERS notice of events that can extinguish security interests.  PSOF 60-61.

So MERS has proven a concrete injury to itself caused, at least in Missouri, by Bellistri's words and actions.  The requested declaratory relief that the absence of notice violates both the Jones-Munger Act and due process will effectively require Bellistri to give notice in future transactions, and thus cures the injury that MERS has sustained.

In ¶¶ 47-48 of its complaint, MERS specifically pleaded these facts.  Bellistri has but two responses.  First, he claims that Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009), holds that MERS has no property interest in a mortgage or deed of trust in which it is only a nominee.  Br. at 6.  While that argument is wrong as a matter of both federal and Missouri law, it is also irrelevant.  MERS does have a property interest in maintaining and growing its business and Bellistri's failure to give the required notice damages that interest.

Second, Bellistri claims that setting aside the collector's deed will not redress MERS' injury, because it has assigned its rights in the deed of trust to Ocwen.  Br. at 6-7.  That is equally irrelevant.  The cause of the injury to MERS' business is Bellistri's failure to give the required notice.  A declaratory judgment that he must do so, or forfeit his interest in the property, is highly likely to cause him to give notice in the future.

Bellistri's suggestion that there is no case or controversy between the parties, Br. at 7, is absurd. Bellistri claims that neither the Jones-Munger Act nor due process requires him to give notice to MERS, when it claims a record interest in a deed of trust as nominee for the lender.  And he argues that position at length.  Br. at 9-14.  Any such holding would seriously and irreparably damage MERS' business.  So there is clearly a concrete case in which the parties' legal positions and economic interests are directly adverse.

The ongoing injury that Bellistri is doing to MERS' business model alone gives MERS Article III standing to prosecute this action.

**B.** **MERS' Status As The Nominee Of The Lender Alone Gives It Standing To Sue.**

MERS claimed an interest in the property as nominee for the original lender, BNC, and BNC's successor and assigns, which included the lender holding the beneficial interest in the property in September of 2006, Deutsche Bank. A "nominee" is one who "holds bare legal title for the benefit of others." Prindable v. Walsh, 69 S.W.3d 912, 915 (Mo. App. 2002). As explained in more detail at pp. 28-30 of MERS' memorandum in support of its motion for summary judgment, the Supreme Court of the United States has squarely held that the holder of bare legal title has Article III standing to assert claims on behalf of the beneficial owner.

In Sprint Communications Co. v. APCC Services, Inc., 128 S. Ct. 2531 (2008), the Court addressed Lujan's standing requirements in the context of the assignee of bare legal title:

- An "assignee can sue based on his assignor's injuries." 128 S. Ct. at 2542. The current owner of the beneficial interest in the note secured by the deed of trust is Deutsche Bank, and the putative elimination of its security interest certainly constitutes injury.

- The unquestioned cause of that injury was the recording on September 19, 2006, of a collector's deed purporting to vest title in Bellistri free and clear of Deutsche Bank's security interest. P.Ex. 4.

- An "assignee for collection may properly bring suit to redress the injury originally suffered by his assignor." 129 S. Ct. at 2543. Here, the relief sought is either divesting Bellistri of title (thereby restoring the property to Crouther subject to

Deutsche Bank's lien), or holding that Bellistri takes subject to the lien.  Either outcome redresses Deutsche Bank's injury.

Bellistri's principal response is that MERS assigned its rights under the deed of trust to Ocwen before the entry of the judgment in his quiet title case.  For three independent reasons, that assignment is completely irrelevant:

- The damage to Deutsche Bank, and hence to MERS, was complete in September 2006, when Bellistri recorded the collector's deed.  Under the plain terms of § 140.420, R.S.Mo., that deed purported to give him title to the property free and clear of Deutsche Bank's lien.  MERS did not assign its interest until April 2007.

- The relief MERS has requested will redress the injury that Deutsche Bank has sustained.

- As explained more fully in the memorandum supporting MERS' motion for summary judgment, Bellistri is estopped from invoking the assignment as a defense.  Had Bellistri given the notice that the law requires, MERS would have notified Deutsche Bank in time for Deutsche Bank to redeem the property.

Bellistri argues that ¶ 15 of the deed of trust requires notice only to the lender, but not to MERS.  Br. at 3.  That paragraph refers to notices between the lender and the borrower.  It has absolutely no relevance to the notice that a buyer at a tax sale must provide under Missouri statutes.

Bellistri discusses the Missouri court of appeals' opinion in <u>Ocwen</u> at some length.  Br. at 3-4; 7. It is wholly unclear why he thinks that opinion matters, since he explicitly concedes that:

- The judgment is "not binding on Plaintiffs, as they are not named parties," Br. at 3; and

SLC-6053609-2              8

- The opinion "did not rule" on whether MERS "has a 'claim' against the subject Deed of Trust." Br. at 4.

Not only is MERS not bound by that decision, its holding is irrelevant. Bellistri claims that <u>Ocwen</u> held that the subject deed of trust is not enforceable due to a split in the ownership of the note and the deed of trust. Not so. <u>Ocwen</u> held only that Ocwen lacked standing to challenge the quiet title judgment, because there was no evidence in that case regarding the ownership of the promissory note securing the deed of trust. 284 S.W.3d at 623-24. The court noted that the "practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, *unless the holder of the deed of trust is the agent of the holder of the note*." *Id*. at 623 (emphasis added).

Here, the record negates any similar concerns. The undisputed facts establish that in September of 2006, MERS held legal title to the beneficial interest in the deed of trust as nominee, or agent, for Deutsche Bank, the then-holder of the promissory note. PSOF 40-42, 48-49, 53-54, 56. The evidence lacking in the <u>Ocwen</u> case is before this Court. And that evidence proves that – at all relevant times – MERS had enforceable rights in the deed of trust on behalf of the note holder.

Bellistri string cites a number of other cases allegedly holding that MERS has no standing to file this suit. Br. at 5. The state cases have no relevance whatever to Article III standing. The bankruptcy cases arise in the context of motions for relief from stay when the owner of the note was not a party to the motion or unable to produce the original note. None of these cases even mention <u>Sprint</u>.

After <u>Sprint</u>, it is crystal clear that a nominee has standing to prosecute a claim to redress the injury to the beneficial owner. Setting aside the collector's deed, or holding that it is subject

to Deutsche Bank's lien, will redress the injury to Deutsche Bank.  MERS has standing to file this lawsuit as nominee.

**II.     MERS Is Not Launching A Collateral Attack On The Judgment.**

In its motion for summary judgment, MERS asked this Court to either set aside the collector's deed or to declare that Bellistri holds it subject to the Deutsche Bank lien.  MERS did not ask the Court to set aside the judgment in the Ocwen case and it does not seek such relief.

There is absolutely no need to set aside the Ocwen judgment in order to set aside the collector's deed.  The Ocwen judgment is binding as between the parties thereto, but it does not bind MERS.  "Res judicata bars only claims by parties and privies."  Romeo v. Jones, 86 S.W.3d 428, 432 (Mo. App. 2002).  MERS was not a party to that case and had no notice or knowledge of it until after the court of appeals issued its ruling.  POSF 63-64.  As explained in MERS' memorandum in support of its motion for summary judgment, MERS is not in privity with Ocwen.

Bellistri's assertion that "[a]ll parties who had, or claimed to have, or appeared of record to have any interest" in the subject property, Br. at 9, is simply untrue.  MERS claimed an interest in the property, of record, but Bellistri failed to notify MERS of its redemption rights or join it to the Ocwen lawsuit.

Bellistri's invocation of the full faith and credit clause, Br. at 8, is irrelevant.  To repeat, MERS is not seeking to set aside the judgment, only the collector's deed.  Full faith and credit applies to judgments, not to a collector's deed.

### III.     The Jones-Munger Act Entitles MERS To Notice Of Redemption Rights, Because MERS Held A Claim Of Record To The Property.

Point IV-B of Bellistri's memorandum argues that § 140.405, R.S.Mo., does not entitle MERS to notice of redemption rights.  As explained in more detail at pp. 15-20 of MERS' memorandum in support of its motion for summary judgment, it is uncontested that MERS claimed of record an interest in the property as nominee for the lender and its assigns.  In order to obtain a collector's deed, the purchaser at a tax sale must notify any person with a publicly recorded "claim" against the property.  § 140.405.[1]

Missouri courts have held that the statute means precisely what it says.  It requires notice to "all persons who have or claim to have **or appear of record**" to have such a claim.  Shaw v. Armstrong, 235 S.W.2d 851, 855 (Mo. 1951) (emphasis added).  Accord, Campbell v. Siegfried, 823 S.W.2d 156, 158 (Mo. App. 1992) ("plaintiff would have, at the very least, the equivalent of a 'claim upon that real estate'").

Enforcing the statute in accordance with its terms is the only sensible policy result.  It gives purchasers at tax sales a simple, bright-line rule to follow:  notify all who claim a recorded interest in the property.  It permits all such claims to be adjudicated in a single proceeding.  That conserves scarce judicial resources and is fair to all parties.

Paragraph 7 of Bellistri's Answer specifically admits that he "did not mail any notice of tax redemption rights to MERS."  The statute is crystal clear on the consequences of such failure: it "shall result in such purchaser's loss of all interest in the real estate."  § 140.405, R.S.Mo. "Bellistri's failure to comply with the mandatory notice requirement results in the loss of his interest in the property."  Hames, 300 S.W.3d at 240.

---

[1]     Contrary to Bellistri's suggestion, Br. at 12, the Court's jurisdiction of this claim is not limited to pendant jurisdiction.  As ¶ 6 of the complaint alleges, there is also diversity jurisdiction.

Bellistri makes no serious effort to address the plain terms of the statute. Instead, he resorts to evasions. For example, he claims there are no cases holding that MERS is entitled to notice when it claims an interest as nominee. Br. at 12. It is precisely because there are no cases one way or the other that MERS seeks a declaratory judgment that it is entitled to notice.

Bellistri claims that MERS appears on the second page of the deed of trust, not the first. Br. at 12-13. He does not explain what conceivable difference that makes, so long as the second page was recorded. Bellistri's sole authority for this point, CedarBridge, LLC v. Eason, 293 S.W.3d 462 (Mo. App. 2009), is no support at all.

CedarBridge correctly states that the tax purchaser must give notice to all who hold a "publicly recorded . . . claim to the real estate." 293 S.W.3d at 465. It then states, in dictum, that parties "whose names and addresses appear on the front page of the deed of trust . . . must receive notice *as well*." Id. (emphasis added). Nothing in the opinion even hints that such parties are the only ones who must receive notice and the opinion affirms a judgment against the tax purchaser for failure to provide notice to all persons entitled to it.

Bellistri claims that MERS cannot be both a nominee and a beneficiary under the deed of trust. Br. at 13. He does not explain why and the one case he cites, Prindable, did not even involve a deed of trust. In any event, none of this is responsive to MERS' argument that it **claimed** a record interest in the property and hence was entitled to notice of redemption rights.

Bellistri claims that only the holder of a note can enforce the deed of trust and that Ocwen found that BNC was the holder. Br. at 13-14. As previously explained, Ocwen was based upon a lack of evidence and MERS is not bound by the record – or lack thereof – in that case. Here, the evidence proves that MERS held the deed of trust as agent for the note-holder. And again, this is completely irrelevant. This is not an action to enforce a deed of trust but to set

aside a collector's deed when Bellistri has failed to give notice of redemption rights to an entity with a record claim to the property.

Bellistri's final argument is that Siegfried requires MERS to have an "interest" in the property in order to receive notice and MERS has no such interest. Br. at 14. For the reasons set forth in Point IV of this brief, MERS does indeed have a legal interest in the property. But it would make no difference if MERS did not have such an interest, because the statute requires only that MERS **claim** an interest in the property. There is no dispute that MERS claimed an interest.

### IV. Bellistri Violated MERS' Right To Due Process Under The Fourteenth Amendment And The Missouri Constitution In Failing To Give Notice.

Point IV-A of Bellistri's brief argues that MERS' interest in the property is not sufficiently great to implicate due process. He is wrong for two reasons. First, as explained at pp. 20-22 of MERS' opening brief, § 140.405 gives MERS a statutory right to notice which due process protects. Second, MERS' interest as a nominee is entitled to due process protection.

As MERS set forth in detail at pp. 23-26 of it memorandum in support of MERS' motion for summary judgment:

- The Supreme Court of the United States has held that the holder of a bare legal right to sue, with no beneficial interest therein, has a "property right." Sprint, 128 S.Ct. at 2543.

- Under Missouri law, bare legal title is sufficient to file a lawsuit and the right to file a lawsuit is a property right protected by due process.

- MERS also has the legal right to enforce the lien, and that is also a "substantive right[] in specific property."  Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 590 (1935).

Bellistri's sole argument here is that the Kansas Supreme Court has rejected MERS' argument under both the Kansas and United States Constitutions.  Br. at 10-11, quoting Kesler, 216 P.3d at 169-70.  Kesler held only that the trial court did not abuse its discretion in denying MERS' motion to set aside a default judgment in a foreclosure action and its motion to intervene as a necessary party in that action.  While Kesler may be dispositive of those issues under Kansas law, it says nothing about Missouri law and is not controlling on federal law.

The basis for Kesler is the Kansas Supreme Court's holding that MERS failed to demonstrate that "it possessed any tangible interest in the mortgage beyond a nominal designation as the mortgagor."  216 P.3d at 169.[2]  Under Sprint and the Missouri cases on which it relied, MERS did not need anything beyond its designation as nominee to have a protected property interest.

Bellistri's only other argument is that the injury to MERS' business is indirect injury and does not raise its status as nominee to a protected property right.  Br. at 11-12.  That is irrelevant.  MERS relies on those injuries to give it standing to seek to set aside the collector's deed, not to establish the due process violation.

---

[2]  The court's decision turned upon its finding that MERS did not show any injury to it resulting from the lack of service of the foreclosure action.  216 P.3d at 168-69.  MERS has established significant damages resulting from Bellistri's lack of notice in this case.  For this additional reason, Kesler has no bearing here.

### Conclusion

For these reasons, MERS respectfully prays that the Court grant it summary judgment on its claims and set aside the collector's deed in favor of Bellistri. In the alternative, MERS prays that the Court enter judgment that the Deutsche Bank lien remains in full force and effect.

        Respectfully Submitted,

        **HUSCH BLACKWELL SANDERS LLP**

        By: s/ JoAnn T. Sandifer
             Mark G. Arnold, E.D.Mo. # 2534
             mark.arnold@huschblackwell.com
             JoAnn T. Sandifer, E.D.Mo. # 33227
             joann.sandifer@huschblackwell.com
             190 Carondelet Plaza, Suite 600
             St. Louis, MO  63105
             (314) 480-1500 – telephone
             (314) 480-1505 – facsimile

        *Attorneys for Plaintiffs Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2010, the foregoing was filed electronically with the Clerk of Court to be served by operation of the court's electronic filing system upon the following:

Phillip K. Gebhardt, Esq.
Gebhardt Real Estate and Legal Services, L.L.C.
1720 North Main Street
Desoto, MO  63030

        s/ JoAnn T. Sandifer
        JoAnn T. Sandifer