IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ) ) | |
| MERSCORP, INC., ) ) | |
| Plaintiffs, ) ) | |
| v. ) | No. 4:09-CV-00731-CAS |
| ROBERT BELLISTRI, ) ) | |
| Defendant. ) | |

**REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant, by counsel, and states the following as his Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment:

**IA.**

**DEFENDANT'S REPLY TO PLAINTIFFS' ARGUMENT THAT DEFENDANT'S CONTINUING REFUSAL TO PROVIDE NOTICE TO MERS AS NOMINEE DAMAGES MERS' BUSINESS MODEL AND THE REQUESTED DECLARATORY RELIEF WILL REDRESS THAT INJURY AND GIVE MERS STANDING TO PROSECUTE THIS ACTION.**

Plaintiffs argue that: "Bellistri is in the business, *inter alia*, of bidding on properties at tax foreclosure sales." Plaintiffs' Memorandum in Opposition to

1

Defendants' Motion for Summary Judgment, at page 5. Plaintiffs argue that: "Obviously, in future tax foreclosure sales, he [Defendant Bellistri] has no intention to provide any such notice." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, at page 5. Where is the evidentiary record to support any such allegations? Considering the time, expense and resources that have been expended in litigating the title to the subject real estate, Defendant could very well decide to provide notice to MERS (regardless of the result reached in this case) when appropriate, in order to avoid the intimidation and costs imposed by Plaintiffs (purportedly holding 63 million loans representing trillions of dollars) in bringing suit against Defendant, a single individual. Further, Plaintiffs have not presented any evidence to show the volume of tax sale transactions Defendant Robert Bellistri has conducted in recent years or in years past, or how many such transactions Defendant Robert Bellistri intends to conduct in the future. Considering Defendant's age, his current financial situation, the current real estate market, and the continuing difficulty in obtaining judicial confirmation of collector's deeds (as evidenced by this case and others), it is certainly possible that Defendant may not in the future purchase any tax liens encumbering real estate in which Plaintiffs purportedly claim an interest. Plaintiffs cite two appellate opinions to prove that Defendant Robert Bellistri is in the continuing business of bidding on properties at tax foreclosure sales—one involving a tax sale in the year 2002 (*Hames v. Bellistri*) and the tax sale in this case that occurred in 2005. Two transactions more than four years ago should not constitute a business operation that threatens Plaintiffs. There is definitely no evidence in the record of the future intentions of Defendant Bellistri with respect to the provision of notices to Plaintiffs.

2

At page 5 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, that: "Bellistri's claimed ability to confirm a collector's deed without notice to MERS 'will inevitably result in loss of business to MERS.'"

*Bellistri v. Ocwen Loan Servicing LLC,* 284 S.W.3d 619 (Mo. App, E.D. 2009), was decided on March 3, 2009, more than one year ago. If Bellistri's ability to confirm a collector's deed without notice to MERS would "inevitably" result in loss of business to MERS, Plaintiffs should be able to show some concrete loss of business since March 3, 2009. Plaintiffs have not. The Plaintiffs do not state that they have agreed to indemnify or have indemnified anyone for any losses resulting from the tax lien foreclosure process associated with the subject real estate. See pages 5-6 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (claiming that unnamed MERS' members have demanded that MERS compensate them for the loss of security interests in property and likely will in the future receive such claims for indemnity).

Plaintiffs argue: "MERS does have a property interest in maintaining and growing its business and Bellistri's failure to give the required notice damages that interest." Page 6 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment. Plaintiff MERS assigned "all right, title and interest" it had in the subject deed of trust to Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, under the Assignment of Deed of Trust. Defendant's Motion for Summary Judgment Exhibit E. Plaintiffs did not reserve in the assignment the right to assert the claims purportedly stated in this case. Despite assigning away all right, title and interest in the subject real

3

estate, Plaintiffs ask this Court to overturn or otherwise negate a state court judgment binding the successor in interest of MERS by declaring Defendant's Collector's Deed invalid or his title subject to the Deed of Trust (Defendant's Motion for Summary Judgment Exhibit B). The assignment of all right, title and interest in the subject real estate is not "equally irrelevant", as argued by Plaintiffs at page 6 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment. Plaintiffs have not sought a monetary damage award from Defendant. The relief sought is to overturn or otherwise negate the state court judgment confirming the validity of Defendant's Collector's Deed.

Further, there is no case or controversy between Defendant and Plaintiffs regarding Plaintiffs' business model. Defendant has no interest in Plaintiffs' business model, and there is no showing the Defendant ever had actual knowledge of the existence of Plaintiffs' business model or of Plaintiffs' existence at any time relevant to the noticing of tax sale redemption rights that occurred on May 12, 2006.[1]

### IB.

### DEFENDANT'S REPLY TO PLAINTIFFS' ARGUMENT THAT MERS' STATUS AS THE NOMINEE OF THE LENDER ALONE GIVES IT STANDING TO SUE.

Plaintiffs cite *Sprint Communications Co. v. APCC Services, Inc.* 128 S.Ct. 2531, 2542 (2008) for the proposition that an "assignee can sue based on his assignor's injuries." Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary

---

[1] Defendant concedes that he is charged with constructive knowledge of the content of the Deed of Trust under Missouri's Recording Statutes, §§ 442.380 to 442.400, RSMo.

Judgment, at page 7.  In this case, MERS was the assignor, and under the Assignment of Deed of Trust (Defendant's Motion for Summary Judgment Exhibit E), Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, is the assignee.  Under the *Sprint Communications Co.* case, Ocwen Loan Servicing LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, would have the right to sue based on MERS' purported injuries (as MERS was the assignor in this case).  Ocwen Loan Servicing LLC (in its above-indicated capacity) was a party to the prior state court judgment and is presumably bound by that judgment.  How does the *Sprint Communications Co.* case help Plaintiffs after they have assigned away all right, title and interest in the Deed of Trust to a party whose interests in the subject real estate have already been adjudicated?

Plaintiffs argue that MERS is not bound by the *Bellistri v. Ocwen Loan Servicing, LLC* case, at pages 8-9 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment.  That proposition may be true—MERS was not a party to the state court judgment.  However, that is not the end of the analysis.  Ocwen Loan Servicing LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, is the successor in interest of all right, title and interest of MERS in the Deed of Trust, and the interest of Deutsche Bank National Trust Company (in the above-referenced capacity), as successor of MERS, has been litigated in

5

the state court action. These claims could have, but were not, presented to the state court for decision in the prior state court litigation.

At page 9 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs argue that evidence lacking in the state court proceedings is present here—evidence purportedly showing that at all relevant times MERS had enforceable rights in the deed of trust on behalf of the note holder. Defendant does not agree that the evidentiary record before it shows who held the note, who had the right to enforce the note and whether MERS was authorized to assign the Deed of Trust on behalf of the note holder. Plaintiffs show no evidence of the endorsements on the note or whether the note was endorsed in blank, and if the note was endorsed in blank, there is no evidence who was in possession of the note at relevant times—Ocwen Loan Servicing LLC or the "interim flow pool" or the "segregated CDC Mortgage Capital Trust." Affidavit of Nichelle Jones, at paragraph 7. If, in fact, the note is endorsed in blank and is held by Ocwen Loan Servicing LLC as agent for its principal, then Ocwen Loan Servicing LLC, as agent for its principal, would need to authorize MERS to assign the Deed of Trust. Nothing like this is in the record before the Court.

At page 9 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs argue that the "string" of citations of cases by Defendant holding that MERS has no standing is irrelevant to Article III standing. Plaintiffs do not tell us in their Memorandum how the "real party in interest" requirements of the state and federal rules of civil procedure interpreted in the state court and bankruptcy court decisions cited by Defendant are any different from the prudential and Article III standing requirements interpreted in *Sprint*. Counsel for Defendant is not aware of any

6

differences in the analysis used in the "real party in interest" rules of civil procedure and the combined prudential and Article III standing rules used by federal courts.

## II.

## DEFENDANT'S REPLY TO PLAINTIFFS' ARGUMENT THAT MERS IS NOT LAUNCHING A COLLATERAL ATTACK ON THE JUDGMENT.

Plaintiffs argue that MERS claimed an interest in the property, of record, but Bellistri failed to notify MERS of its redemption rights or join it in the *Ocwen* lawsuit. Page 10 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment. MERS was not joined as a party to the *Ocwen* lawsuit, because its assigned away all right, title and interest in the Deed of Trust to its successor in interest who was a party to the *Ocwen* lawsuit. Defendant's Motion for Summary Judgment Exhibit E (Assignment of Deed of Trust). The assignee of MERS is bound by the state court judgment, and MERS should not be able to obtain a judgment in this Court that negates the state court judgment when MERS assigned all right, title and interest in the Deed of Trust to its successor in interest prior to the entry of the state court judgment. That state court judgment should receive full faith and credit protection.

## III.

## DEFENDANT'S REPLY TO PLAINTIFFS' ARGUMENT THAT THE JONES-MUNGER ACT ENTITLES MERS TO NOTICE OF REDEMPTION RIGHTS, BECAUSE MERS HELD A CLAIM OF RECORD TO THE PROPERTY.

Plaintiffs argue that MERS is entitled to notice under Section 140.405, RSMo, because it had a recorded "claim" against the subject property. Page 11 of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment. Plaintiffs fail to discuss *Glasgow Enterprises, Inc. v. Kusher,* 231 S.W.3d 201 (Mo. App., E.D. 2007), where the Court held that parties named in a deed of trust as persons who are to receive tax notices are not entitled to notice under Section 140.405, RSMo, because the beneficiary under the deed of trust is entitled to notice. *Kusher* identifies the beneficiary of the deed of trust as a party to whom notice is required to be given under Section 140.405, RSMo.

Section 140.405, RSMo, requires notice to "any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim ..., including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale."

Section 140.405, RSMo, was enacted in 1984 to implement the constitutional rights of mortgagees under *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and *Lohr v. Cobur Corp.*, 654 S.W.2d 833 (Mo. banc 1983). *M & P Enterprises, Inc. v. Transamerica Financial Services,* 944 S.W.2d 154, 157 (Mo. banc 1997). Despite the specific statutory reference to "holders" of deeds of trust in describing those entitled to notice under Section 140.405, RSMo, Plaintiffs argue that they have a "claim" against the subject property under the general catch-all provision in the statute. Section 140.405, RSMo,

As originally enacted in 1984, Section 140.405, RSMo, did not specifically require notice to "owners"—a vestige of the historical purpose of the statute in implementing constitutional rights of mortgagees under *Mennonite* and *Lohr*. In *Campbell v. Siefried,* 823 S.W.2d 156 (Mo. App. 1992), *James v. Mullen,* 854 S.W.2d 577 (Mo. App., W.D. 1993), and *Harrison v. Anglin,* 973 S.W.2d 924 (Mo. App., S.D. 1998), owners and anyone who could lose a publicly recorded property interest through the issuance of a collector's deed were included as those who have a "claim" to the property under Section 140.405, RSMo. After these cases were handed down, in 1996, the words "including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale" were added to the statute. It is now abundantly clear that Section 140.405, RSMo, requires notice to record owners of real estate, and that record owners have a "claim" to the real estate.

While making an expressed and specific reference to requiring notice to "holders" of deeds of trust in the same sentence requiring notice to those with "claims" against real estate, counsel for Defendant believes that the General Assembly has manifested a clear intention that the two should be distinguished. *See City of Springfield v. Brechbuhler,* 895 S.W.2d 583, 587 (Mo. banc 1995). The rule of statutory construction known as *ejusdem generis* may be of aid to this Court. When particular words of description are followed by general words, the general words are to be limited in their meaning so as to embrace only a class of things indicated by the particular words; this is because, if the general words were intended to embrace things different in character from those specifically mentioned, there would be no reason for the specific enumeration. *National Bank of Commerce v. Estate of Ripley,* 161 Mo. 126, 61 S.W. 587, 587-588 (Mo. 1901).

In this case, Section 140.405, RSMo, does not simply require notice to anyone with a publicly recorded "claim" against the real estate, that statute requires notice to "any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem such person's publicly recorded security or claim ..., including one who was the publicly recorded owner of the property sold at the delinquent land tax auction previous to such sale." Section 140.405, RSMo.

Considering the history of Section 140.405, RSMo, in implementing the constitutional rights of mortgagees or beneficiaries under a deed of trust to notice of tax sale rights and the specific reference requiring notice to holders of deeds of trust, the lack of a specific reference to nominees or other parties who might be named in a deed is problematic for Plaintiffs. Section 140.405, RSMo, specifically requires notice to the "holder" of the Deed of Trust, and the statute has been interpreted to require notice to both the beneficiary and the trustee, as both the trustee and the beneficiary are the "holders" of the legal and equitable title to the Deed of Trust. *Cedarbridge LLC v. Eason*, 293 S.W.3d 462, 467 n.5 (Mo. App., E.D. 2009).

Now MERS, as a publicly recorded agent or nominee of the beneficiary/lender, claims its own independent right to notice apart from the holders of the legal and equitable title to the deed of trust under the aegis of a "claim" against the property.

By specifically requiring notice to the "holder" of the Deed of Trust, which has been interpreted as both the trustee (holding bare legal title to the deed of trust) and the beneficiary (holding the economic beneficial interest in the deed of trust) in *Eason*, there is no true property ownership interest left in the deed of trust—either equitable or legal—

that Section 140.405, RSMo, has not required notice to in requiring notice to the "holder" of the deed of trust.

Essentially, Plaintiffs assert that they have a "claim" against the real estate entitling them to notice as agent for their undisclosed principal. Requiring notice to agents of principals will greatly expand and confuse the right to notice under Section 140.405, RSMo. For example, is the attorney of each judgment creditor (whether or not the attorney has filed notice of an attorney's lien) entitled to notice under Section 140.405, RSMo, independent of any notice provided the judgment creditor? Is every revenue agent who signs a publicly recorded Notice of Federal Tax Lien entitled to notice under Section 140.405, RSMo, independent of any notice provided to the Internal Revenue Service? Is every government official signing a notice of special tax bill or other notice of lien entitled to notice under Section 140.405, RSMo, independent of any notice provided to the governmental authority imposing the lien? It is hard to distinguish the interest of MERS, as an agent or nominee, from these other publicly recorded interests of agents acting for their principals.

Imposing a duty to provide notice of tax sale redemption rights to each and every publicly recorded agent acting for a principal will create uncertainty and an unduly burdensome duty for tax sale purchasers. Tax sale purchasers provide moneys for the general operation of local governmental entities through their payment of the tax obligations of others. Increasing the disincentives for investment in real estate tax liens will logically lead to lesser funding levels for essential governmental operations, such as public safety (such as the salaries of fire and police personnel), public education (such

11

the salaries of teachers), and the general public welfare (such as the salaries of governmental administrative personnel).

## IV.

## DEFENDANT'S REPLY TO PLAINTIFFS' ARGUMENT THAT BELLISTRI VIOLATED MERS' RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND THE Missouri CONSTITUTION IN FAILING TO GIVE NOTICE.

Plaintiffs argue in their Memorandum in Opposition to Defendants' Motion for Summary Judgment that, because Plaintiffs purportedly have Article III standing to bring suit based upon their assignor's injuries, therefore Plaintiffs have shown a property interest protected by due process. See pages 13 and 14 of said Memorandum.

In *McCullough v. Aegon USA, Inc.*, 585 F.3d 1082 (8th Cir. 2009), the Eighth Circuit analyzed the *Sprint* decision as it would apply in creating a right to sue under ERISA by participants in defined benefit plans. The claimants argued that provisions in ERISA assigned claims for breach of fiduciary duties to plan participants. The Court stated:

> We are not convinced that *Sprint* sweeps as broadly as McCullough suggests. *Sprint* and *Vermont Agency* both involved plaintiffs who were assigned claims by parties who were originally injured. See *Sprint*, 128 S.Ct. at 2542; *Vermont Agency*, 529 U.S. at 773, 120 S.Ct. 1858. *Sprint* also relied on the historical recognition of an assignee's ability to sue, 128 S.Ct. at 2536-42, and *Vermont Agency* relied on the "long tradition of qui tam actions." 529 U.S. at 775, 120 S.Ct. 1858. Here, however, there is neither a long history of recognizing suits by ERISA plan participants to sue on behalf of a plan, see *Harley*, 284 F.3d at 907, nor any assignment by the Plan to McCullough to sue on its

12

> behalf. Nor does McCullough assert that § 1132(a)(2) "assigns" a claim belonging to the government, as did the *qui tam* statute at issue in *Vermont Agency*. See 529 U.S. at 773, 120 S.Ct. 1858.
>
> McCullough suggests instead that Congress assigned a claim of one private party (the ERISA plan) to another private party (a participant in the plan). This court in *Harley* was reluctant to ascribe that intention to Congress, believing that such an interpretation of § 1132(a)(2) raised serious constitutional concerns. If Congress could assign an ERISA plan's claim to a participant who is not injured, the court wondered, then what principled reason would preclude Congress from assigning the claim to any stranger? *See* 284 F.3d at 906-07 ("If the statute authorized any stranger to the plan to bring such an action, would that suffice to confer standing? Surely not, for `Article III forecloses the conversion of courts of the United States into judicial versions of college debating forums.'") (*quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). *Sprint* does not purport to revolutionize the law of standing by authorizing Congress to "assign" claims from one private party to another and thereby to create a constitutionally sufficient injury in fact. To the contrary, the Court in *Sprint* thought it was the dissenting opinion that advocated "a sea change in the law," 128 S.Ct. at 2543, and suggested that its holding merely assured continuity — citing, for example, that "[t]rustees bring suits to benefit their trusts; guardians ad litem bring suits to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suit to benefit testator estates; and so forth." *Id.* Without more specific guidance from the Supreme Court that it has expanded Article III standing as broadly as McCullough suggests — and beyond the historically grounded examples cited in Sprint — we do not feel at liberty to disregard this court's more circumspect view in *Harley*.

585 F.3d at 1087-1088 (footnote omitted).

By analogy, this analysis shows that *Sprint* may give an assignee standing to sue for collection purposes, but *Sprint* does not address the issue of whether a nominee

13

purportedly holding bare legal title to the beneficial interest under a deed of trust creates any substantive or property rights of the agent independent of its principal to notice or any other procedural or substantive rights under the due process clauses of the United States or Missouri Constitutions.

Nothing in the Deed of Trust evidences any intent to grant or assign to MERS any substantive right with respect to the Deed of Trust (to sue or otherwise). Nothing in the Deed of Trust gives MERS any substantive or procedural rights, such as the right to sue to foreclose the deed of trust or to cause a non-judicial foreclosure of the Deed of Trust. Section 443.190, RSMo, allows the mortgagee to bring suit to judicially foreclose a deed of trust. Counsel for Defendant is not aware of any Missouri case law holding that the nominee of the mortgagee holding bare legal title to the beneficial interest under a deed of trust has the right to bring an action to judicially foreclose a deed of trust.

The only purported property interest of Plaintiffs in the Deed of Trust is its indirect monetary interest in maintaining its business model and its interest in creating a constitutionally protected procedure requiring that notice of tax sale redemption rights be sent to MERS. Plaintiffs do not claim any ascertainable monetary interest in the Deed of Trust. Plaintiffs do not have a property interest protected by due process under the analysis contained in *Landmark National Bank v. Kesler,* 216 P.3d 158, 169-170 (Kan. 2009).

## CONCLUSION

For the foregoing reasons, Defendant concludes: (1) Plaintiffs have no standing to assert rights in the subject real estate, as MERS assigned away all of its right, title and interest in the Deed of Trust, and there is no "inevitable" loss in business to Plaintiffs as a

14

result of the confirmation of Defendant's Collector's Deed; (2) the *Sprint Communication Co.* case does not support Plaintiffs position in this case, as said case held that the assignee of a claim has the right to sue to enforce claims of the assignor, despite the fact that the assignee may have no direct, ascertainable interest in the assigned claim. In this case, MERS is the assignor and Ocwen Loan Servicing LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, is the assignee; (3) Plaintiffs may not collaterally attack the state court Judgment quieting the title to the subject real estate, because MERS assigned all right, title and interest in the Deed of Trust to Ocwen Loan Servicing LLC, as Servicer for Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CDC Mortgage Capital Trust 2002 HE1, Mortgage Pass-Through Certificates, Series 2002-HE1, which is a party to the state court judgment and is bound by that judgment; (4) § 140.405, RSMo, does not provide MERS the right to notice as the holder of a "claim" against the subject property, as that statute specifically gives the right to notice to holders of deeds of trust, which has been interpreted in *Eason* to be both the trustee holding legal title to the deed of trust and the beneficiary holding the beneficial interest in the deed of trust, and Plaintiffs have no ascertainable or monetary claim against the real estate; and (5) the Due Process Clauses of the United States and Missouri Constitutions do not require that notice of tax sale redemption rights be sent to an agent or nominee of a beneficial owner having no direct, ascertainable interest in the subject real estate. Accordingly, Defendant requests that this Court deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

Respectfully submitted,

GEBHARDT REAL ESTATE AND
LEGAL SERVICES, L.L.C.

By: _____
Phillip K. Gebhardt, Mo. Bar #29569
U.S.D.C., E.D. of Mo. # 61304
1720 North Main Street
Desoto, Missouri 63020
(636) 337-0615
Fax (636) 586-3504
Email pkgmag@swbell.net
Attorney for Defendant Robert Bellistri

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served in accordance with this Court's electronic filing procedures this 27th day of May 2010 to Mark G. Arnold, Husch Blackwell Sanders, LLP, Attorney for Plaintiffs, at mark.arnold@huschblackwell.com, and JoAnn Tracy Sandifer, Husch Blackwell Sanders, LLP, Attorney for Plaintiffs, at joann.sandifer@huschblackwell.com.

_____

Copy to Robert Bellistri
F:\Shared Data\Law Clients\Bellistri, Robert\1210 Airglades\MERS v. Bellistri\Reply to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment
File No. 09-129-L
pkg