IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and MERSCORP, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 4:09-CV-00731-CAS |
| vs. | ) ) | |
| ROBERT BELLISTRI, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Mortgage Electronic Registration Systems, Inc. and Merscorp, Inc. (collectively MERS) respectfully submit this reply memorandum in support of their motion for summary judgment against defendant Robert Bellistri (Bellistri).

**Introduction**

MERS' initial brief established that § 140.405, R.S.Mo., required Bellistri to notify MERS of its redemption rights in the property before Bellistri could obtain a valid collector's deed. MERS claimed a record interest in the property as beneficiary as the nominee for the lender and its successors and assigns and the statute requires no more. On behalf of the lender, MERS has the right to file suit to foreclose on the deed of trust or otherwise enforce the lien. Those are property rights that the State of Missouri cannot divest without due process.

MERS' opening brief also established that MERS had standing to file this lawsuit. As nominee, it has standing to sue for the injury to its lender; that injury was complete

when Bellistri recorded his collector's deed; and the relief requested will redress that injury.  Alternatively, Bellistri's repeated insistence that he need not give MERS the statutorily required notice has done and will continue to do serious damage to MERS' business.

Bellistri cannot answer any of these arguments and he generally does not even try.  Instead, he resorts to red herrings.  His principal red herring, repeated several times, is that Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619 (Mo. App. 2009), held that MERS' assignment of its rights to Ocwen split the deed of trust from the underlying note, and thus made the deed unenforceable.

This is a complete red herring because this action does not seek to enforce the deed of trust.  It seeks to set aside the collector's deed, because Bellistri did not comply with the mandatory requirements of § 140.405 and thus damaged MERS long before it ever assigned the deed of trust to Ocwen. Alternatively, this action seeks an order that Bellistri's interest in the property is subject to the deed of trust.

Bellistri's argument is also factually wrong.  Ocwen may not have provided a proper record to decide the issue; MERS has.  On this record, it is uncontested that from 2002 until the present, the owner of both the note and the beneficial interest under the deed of trust is Deutsche Bank; that MERS held legal title to the beneficial interest under the deed of trust on behalf of Deutsche Bank and was authorized to act, as nominee, to enforce Deutsche Bank's interests under the deed of trust.

Bellistri's second red herring, also repeated several times, is that MERS' assignment of its interest in the deed of trust to Ocwen deprives MERS of standing to prosecute this action.  But the principal basis for MERS' standing in this case is

Bellistri's repeated assertions that he does not need to give notice of redemption rights to MERS, even though it claims a recorded interest in real property. That position is a frontal assault on MERS' basic business model. MERS cited several cases establishing that such assaults give the victim standing to sue and Bellistri cannot respond.

Bellistri's third red herring is that the paper-centric system of recording interests in property is more accurate and more efficient than the alleged "Black Box" that MERS operates. Bellistri does not support these allegations with any evidence. The only evidence in the record is MERS' evidence that its system is far more efficient, far more accurate, and far less expensive.

## Argument

**I.    Bellistri's Deed Is Void Because Bellistri Failed To Comply With The Mandatory Requirements Of The Jones-Munger Act By Giving Notice To MERS Of Its Redemption Rights.**

Point I of MERS' opening brief presented a simple, straightforward argument based on the plain text of § 140.405. A tax purchaser who wants a collector's deed must notify anyone with a "publicly recorded . . . claim" to the property of its right of redemption and the failure to provide such notice "result[s] in such purchaser's loss of all interest" in the property. MERS claimed an interest of record in the subject property and Bellistri failed to give it notice. Ergo, he has forfeited his interest in the property.

Bellistri does not even try to respond to this simple argument. He does not dispute that MERS claimed an interest in the property and that that claim was recorded. He does not analyze the text of the statute or try to explain why it means anything other than what it plainly says. Instead, he resorts to strawmen and evasions.

Citing <u>Glasgow Enterprises, Inc. v. Kusher</u>, 231 S.W.3d 201 (Mo. App. 2007), Bellistri claims that notice to the party designated to receive tax notices does not satisfy the statute. He claims that this party was also a nominee, "indistinguishable" from MERS, and that notice to the principal is sufficient. Br. at 5-6.

A holding that notice to MERS is not **sufficient** to satisfy § 140.405 hardly establishes that such notice is not **necessary** to satisfy the statute. The <u>Kusher</u> court emphasized that its holding was "particularly" valid, because the "same page of the same document provides the name and address of the deed of trust's beneficiary." 231 S.W.3d at 205. Glasgow lost its interest in the property because it did not give notice to everyone with a recorded claim to an interest in the property. Bellistri did exactly the same thing and should suffer the same fate.

Here, MERS is the named beneficiary in the deed of trust, in its capacity as nominee for the lender and its assigns, thus <u>Kusher</u> supports MERS' argument that it was entitled to notice under the Missouri statute. Providing the notice to MERS' "disclosed principal" was not, as Bellistri claims, sufficient compliance with § 140.405. The deed of trust identified BNC as the original lender; it clearly disclosed that MERS is the beneficiary for the "Lender and Lender's successors and assigns" and provides that the "Note (together with any interests under this Security Instrument) may be sold one or more times without prior notice to the Borrower." D. Ex. 3, Definitions and ¶ 20. Thus Bellistri, and the world, were on notice that BNC might transfer the note; that MERS was the beneficiary of record; and that notice to MERS was essential to comply with the statute.

Based almost entirely on non-Missouri authority, Bellistri argues that MERS did not have a **valid** claim to the property. Br. at 6-8. That is completely irrelevant. Section 140.405 does not limit notice to persons with "valid claims" against the property; it requires notice to all who "**claim**" an interest of record. He concedes that MERS claimed an interest of record.

As MERS explained in its opening memorandum, that is the only sensible way to construe the statute. It creates a simple, bright-line test: the tax purchaser has to notify anyone with a recorded claim against the property. In turn, that allows all such claims to be adjudicated in a single proceeding. Bellistri does not even try to answer these policy arguments.

Bellistri claims that Glasgow Enterprises, Inc. v. Brooks, 234 S.W.3d 407 (Mo. App. 2007), is distinguishable, because the wife derived her interest in the property from the laws of marriage, not the deed of trust. Br. at 8. She derived her right to notice under the statute from the recorded deed of trust claiming an interest in the property, just as MERS was entitled to notice by claiming an interest of record. Bellistri does not discuss any of the other cases on which MERS relied.

Bellistri argues at length that Missouri cases are not consistent about the content of the notice of redemption. Br. at 8-12. The argument is irrelevant. This case is about whether MERS had a statutory right to receive some kind of notice of redemption rights, not what that notice was. Section 140.405 unambiguously says that notice must be given to all who **claim** an interest of record, which MERS unquestionably did.

Bellistri's only other argument about the statute is that § 140.520 provides that "mere irregularities" in the process do not invalidate a collector's deed. Br. at 9 n.2. The

failure to provide statutorily required notice to all who claim an interest in property cannot be a "mere irregularity." If it were, then § 140.520 would repeal those portions of § 140.405 requiring notice to all who claim a record interest and forfeiting the tax purchaser's interest in the property as a sanction for failing to provide it. That would violate the most basic rules of statutory construction. Winfrey v. State, 242 S.W.3d 723, 725 (Mo. banc 2008) ("[e]ach word or phrase in a statute must be given meaning if possible").

Anheuser-Busch Employees' Credit Union v. Davis, 899 S.W.2d 868 (Mo. banc 1995), is in point. The Credit Union had a recorded deed of trust on property that was sold at a tax sale. No one provided notice to the Credit Union. The purchaser attempted to salvage the sale by arguing that the Credit Union had constructive notice of the deficient taxes. The Supreme Court disagreed:

> The Credit Union, as a holder of a publicly recorded deed of trust, was entitled to notice mailed to its last known available address or by personal service. Because the Credit Union received no such notice, the tax sale was insufficient to extinguish its deed of trust.

899 S.W.2d at 870 (citation omitted). The same is true here.

The plain terms of § 140.405 required Bellistri to notify MERS of its redemption rights, and his failure to do so forfeits all interest in the property.

II. **Bellistri's Deed Is Void As To MERS And MERS' Lenders And Assignees Because Bellistri Violated MERS' Due Process Rights Under The Fourteenth Amendment And The Missouri Constitution In Failing To Give The Statutorily Required Notice.**

Point II of MERS' opening brief established that, for two separate reasons, the due process clauses of the federal and Missouri Constitutions entitled MERS to notice of its redemption rights. The first reason was that, having given MERS a statutory right to

notice by virtue of its claimed interest in the property, the State of Missouri could not arbitrarily withdraw that right.  Bellistri has absolutely nothing to say about that legal theory, which alone admits its validity:

> A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  We will not do his research for him.  The principles of waiver apply to the government in criminal cases as much as to a private party in civil litigation.

United States v. Giovannetti, 919 F.2d 1223, 1230 (7th Cir. 1990) (emphasis original) (citations and internal punctuation omitted).

The second reason MERS has a constitutional right to notice is that its status as a nominee, holding bare legal title to the beneficial interest in the deed of trust, is a protected property interest.  It includes the right to file suit and the right to enforce the lien, which are both property rights.  MERS cited a 2008 opinion of the United States Supreme Court, several earlier opinions of that Court, and five Missouri cases for these propositions.

Bellistri does not even try to respond to these cases.  Instead, he claims that a "growing body of law" – consisting of precisely one case, Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009) – "deals with MERS directly" and hence is "more on point" than the cases MERS cited.  Br. at 14.

The actual holding in Kesler was that the trial court did not abuse its discretion in denying MERS' motion to set aside a foreclosure sale and to intervene in that action.  The rationale was that MERS had "suffered no direct, ascertainable loss" as a result of the foreclosure sale.  216 P.3d at 170.

Kesler is wrong on the law and distinguishable on the facts. It is wrong on the law because it does not even mention Sprint Communications Co. v. APCC Services, Inc., 554 U.S. 269, 128 S. Ct. 2531 (2008). As explained in MERS' original memorandum, Sprint squarely holds that an assignment of bare legal title does create a "property right" in the assignee. 128 S. Ct. at 2544. The five Missouri cases cited in Sprint stand for the same proposition. Here, that property interest carries with it the right to file a lawsuit and the right to enforce the lien. These rights warrant due process protection.

Kesler is factually distinguishable, because MERS has proven that Bellistri's failure to give notice to MERS has caused and will cause concrete harm to MERS. Its largest members have expressed concern about MERS' ability to protect their security interests in light of this and similar situations. PSOF 72-78. Its members have previously sought recovery against MERS for loss of their security interest in property and likely will in the future. PSOF 79-80. If MERS' basic business model cannot protect its members' security interests, common sense and the uncontested evidence in the record proves that MERS will lose business.

Bellistri's only other argument on due process is that MERS assigned its rights to Ocwen before entry of judgment in the Ocwen lawsuit. Br. at 14-15. In MERS' original memorandum, it explained why that made no difference:

- Bellistri recorded his collector's deed in September 2006, before MERS assigned its rights and the injury was then complete.

- The relief requested will redress the injury that Deutsche Bank sustained.

- Bellistri is estopped from taking advantage of his own wrongdoing.

Bellistri does not even try to respond to this argument, and hence has confessed it. Giovannetti, 919 F.2d at 1230.

There is no question that Bellistri violated due process in failing to give notice to MERS of its redemption rights. Bellistri does not dispute that the proper relief for that violation is to subject the property to Deutsche Bank's lien.

### III. MERS Has Standing To Challenge Bellistri's Failure to Provide Notice.

MERS' initial brief argued that it had standing to prosecute this action, because the recording of the collector's deed and Bellistri's insistence that he has no obligation to give notice to MERS is a direct challenge to MERS' fundamental business model. As such, it creates a realistic danger that MERS will lose customers. The requested declaratory relief will redress that injury by clarifying that MERS is legally entitled to notice when it appears of record to claim an interest in property.

MERS has standing to prosecute this lawsuit based on that theory alone. As usual, Bellistri does not even try to answer it and, under Giovannetti, has confessed it. So MERS has standing regardless of its status as nominee of the lender and the lenders' assigns.

MERS also explained that it had standing as a nominee. In Sprint, the Supreme Court squarely held that an assignee with no independent beneficial interest in the proceeds had standing to sue to redress the injury to the beneficial owner's interest. That is the functional equivalent of MERS' position with respect to this deed of trust and Bellistri, yet again, makes no effort to respond.

Bellistri does argue that MERS cannot hold bare legal title to the deed of trust, because the trustee stands in that position. He quotes language from the deed of trust to

the effect that MERS is a beneficiary of the deed of trust in its capacity as nominee.  Br. at 16-17.

This is pure semantics.  The cases Bellistri cites stand for the proposition that the trustee holds bare legal title to the mortgaged property; his only right is the right to sell the property upon default at the beneficial owner's request.  In contrast, MERS holds the note-owners' beneficial interests in the deed of trust as nominee or agent for the note-holder.[1]  Moreover, it does not matter which legal pigeonhole MERS occupies:  agent, nominee, assignee, or straw party.  Its interest is still derivative of that of the lender and the lender's assigns.  <u>Sprint</u> squarely holds that one with a derivative injury has standing to sue to redress the principal's injury.[2]

Bellistri's only other argument on this point is that MERS assigned its interest to Ocwen after he recorded the collector's deed and after the alleged harm to MERS. But MERS has explained why that assignment does not affect its standing and Bellistri has no response.

### IV.     The Ocwen Lawsuit Does Not Bar MERS From Prosecuting This Case.

MERS' opening brief established that, for two separate reasons, the <u>Ocwen</u> judgment does not bar the prosecution of this suit.  First, the court of appeals' holding in that case was based on Ocwen's lack of standing, and Bellistri admits that is not a

---

[1]     While MERS may have shortened the references to its interest in the deed of trust at some places in its brief for simplicity, MERS made it very clear in its statement of facts and its brief that it held legal title to the beneficial interest under the deed of trust, as nominee for the lender, its successors and assigns. MERS' memo in support of summary judgment, pp. 7, 9;   PSOF 21, 40, 41.  The stray statement in MERS' brief that it held legal title in the note is simply an error; again, the statement of facts and brief explain that the legal title to the note was vested in Deutsche Bank and that MERS was authorized to act on behalf of Deutsche Bank.  Memo, p. 10, PSOF 22, 53, 54, 57, Ex. 3.

[2]     Bellistri repeats his argument that notice to the principal is sufficient to satisfy § 140.405.  Br. at 18.  MERS has already explained why that argument is wrong and that the case Bellistri cites in no way supports it.

decision on the merits.  Br. at 25.  Second, MERS was neither a party to that case nor in privity with any party to it.

Bellistri ignores the second argument.  As to the first, he claims that <u>Ocwen</u> held that there was a split in the ownership of the note and deed of trust, which cannot be cured.  Br. at 25.  In fact, <u>Ocwen</u> held exactly the opposite:  MERS' attempt to assign the deed of trust "had no force."  284 S.W.3d at 623.  Ocwen lacked "a legally cognizable interest" in the property, and hence had no "standing to seek relief," because there was no evidence that it held either the promissory note or an enforceable interest in the deed of trust.  <u>Id.</u>

The balance of Bellistri's discussion of res judicata resorts to his red herrings.  The first red herring is that the deed of trust and the underlying note were somehow split by the assignment to Ocwen, so that the deed of trust is now unenforceable.  Br. at 21.  That is completely irrelevant to any issue in this lawsuit.

This is not an action to foreclose the deed of trust.  It is an action to declare that due process and § 140.405 requires Bellistri to give notice to MERS as a nominee of record for the beneficial owner and that his failure to do so either voids his collector's deed or makes it subject to Deutsche Bank's lien.  Thus, the status of the ownership of the note and deed of trust after the alleged wrong – the failure to provide notice of the tax sale – has no bearing on the issues in this case.

On the current record, this particular red herring is also dead flat wrong.  In the <u>Ocwen</u> case, the Missouri court stated that when different people hold the note and deed of trust, the mortgage becomes ineffectual because it is impossible for the holder of the note to foreclose, "unless the holder of the deed of trust is the agent of the holder of the

note." 284 S.W.3d at 623-24 (citing Restatement (Third) of Property, § 5.4).[3] The court held that, under the facts in that record, it appeared that MERS assigned the deed of trust to Ocwen separate from the note rendering the assignment ineffectual and leaving Ocwen with no interest thereunder. Id. Notably, in that case, there was no evidence regarding the then current ownership of the note.

Here, the record establishes that there was no improper splitting of the interests under the deed of trust, either before or after the assignment. Prior to the assignment, Deutsche Bank held the note and the beneficial interest in the deed of trust. MERS was the nominee with full authority to act on behalf of Deutsche Bank, including the right to foreclose. The uncontested facts in the record are:

- Since June 18, 2002, Deutsche Bank has held the note, previously endorsed in blank by BNC, in its capacity as trustee. PSOF 54, Ex. 2, ¶ 3.

- The deed of trust stated that the beneficiary is "MERS (solely as nominee for Lender and Lenders' successors and assigns) and the successors and assigns of MERS." PSOF 41, Ex. 3 at 2.

- MERS has the right to "to exercise any and all of" the Lender's interests under the deed of trust, "including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ." PSOF 41, Ex. 3 at 3. *See also* PSOF 22.[4]

---

[3] That section states in relevant part, that "a mortgage may be enforced only by, *or in behalf o*f, a person who is entitled to enforce the obligations the mortgage secures." Restatement (Third) of Property, § 5.4, p. 380 (emphasis added). Comment e explains that transfer of the mortgage separate from the deed of trust does not invalidate the mortgage if the party holding deed of trust has authority from the note holder to enforce the mortgage. Id.

[4] Bellistri objected to ¶ 22 on the ground that it was a legal conclusion. Not so. It is testimony about the customs and usages of the industry, which is plainly admissible. Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co., 722 F. Supp. 485, 497 (N.D. Ill. 1989). And the undisputed language in the Deed of Trust quoted in the text clearly supports it.

Thus, the deed of trust was fully enforceable at the time MERS held an interest therein, the only time relevant to this action. And though irrelevant here, the assignment did not change that. MERS did not assign the deed of trust separate from the note. It conveyed only the interests MERS held: legal title to the beneficial interests on behalf of Deutsche Bank. The beneficial interests in the note and deed of trust remained vested in Deutsche, and Ocwen succeeded to MERS' right under the deed of trust to enforce the deed of trust on behalf of Deutsche.

Moreover, the deed of trust authorized the assignment. It provided that the beneficiary under the deed of trust was "MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." Ex. 3 at 3. So MERS has proven that "it has the legal authority to assign a deed of trust as an agent of its principal and the holder of the note(s) secured by the Deed of Trust at the time of the assignment." Br. at 3. The record in Ocwen may not have established these facts, but the record before this Court unquestionably does. The Ocwen opinion cannot bind a non-party like MERS.

Bellistri's second red herring speculates about the problems that MERS' system might create. He complains that the MERS system is "secretive" and potentially subject to error, in contrast to the alleged "transparency"ของ the paper-centric recording system in use since the 19th century. And he worries that tax purchasers must "depend upon the word, charity and authority of 'servicing agents' or MERS" for information about who owns what. Br. at 22-25.

There are a variety of problems with these arguments. First, they all rest on speculation rather than evidence. As MERS has explained, there never was a split

between the note and the beneficial interest in the deed of trust. The only evidence in the record is that MERS' state-of-the-art electronic system automatically tracks any assignment of the underlying notes and automatically forwards any legal notices MERS receives to that owner. PSOF 23; 29. MERS' system is faster, more accurate, and more efficient that the paper-centric system previously used. PSOF 32; 34.[5]

Bellistri's suggestion that he and other tax purchasers are dependent on the "charity" of MERS is absurd. All Bellistri has to do to protect himself is to comply with § 140.405 and give notice to all entities, including MERS, who claim a record interest in the property. If MERS fails to pass that notice on to the owner of the note, such that the owner fails to take steps to protect its interest, that is MERS' problem, not Bellistri's.

Bellistri's argument that borrowers do not know who to contact absent a recorded assignment, Br. at 23, is equally speculative. MERS is of record on the mortgage or deed of trust; all that borrowers have to do is call MERS. The only evidence in the record is that MERS can provide borrowers, purchasers and title companies with "instantaneous on-line access to" the identity of the loan servicer, who has information about the status of the note at its fingertips. PSOF 33. Under the pre-MERS system, borrowers might confront much more difficulty ascertaining the holder of their note, since assignments in the chain of title were often missing, incomplete, inaccurate or misfiled. PSOF 15.

Bellistri's arguments also completely undercut his earlier claim that he is not launching a "frontal attack on Plaintiffs' business model." Br. at 2. All of the speculative harms about which he worries are inherent in a system that replaces the paper-centric recording of assignments with 21st century technology. It is uncontested

---

[5] Bellistri's objections to this evidence are frivolous. The Hultman affidavit, which is the source of this information recites that it was made on personal knowledge, based on his "background and experience with MERSCORP." Hultman Aff. ¶ 4. Bellistri has presented no evidence to the contrary.

that consumer oriented agencies of the United States government were instrumental in the creation of MERS, precisely because the MERS business model is so beneficial to consumers. PSOF 17.

In any event, Bellistri's speculations about MERS' business model have no relevance to whether the <u>Ocwen</u> judgment binds MERS. It does not because the holding rested on standing rather than the merits and because MERS was neither a party to that action nor in privity with a party.

## Conclusion

For these reasons, MERS respectfully prays that the Court grant its motion for summary judgment and issue the requested declaratory relief setting aside the collector's deed and/or declaring that Bellistri holds the property subject to the Deutsche Bank lien.

Respectfully Submitted,

**HUSCH BLACKWELL SANDERS LLP**

By:  s/ JoAnn T. Sandifer
Mark G. Arnold, E.D.Mo. # 2534
mark.arnold@huschblackwell.com
JoAnn T. Sandifer, E.D.Mo. # 33227
joann.sandifer@huschblackwell.com
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
(314) 480-1500 – telephone
(314) 480-1505 – facsimile

*Attorneys for Plaintiffs Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc.*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 28, 2010, the foregoing was filed electronically with the Clerk of Court to be served by operation of the court's electronic filing system upon the following:

Phillip K. Gebhardt, Esq.
Gebhardt Real Estate and Legal Services, L.L.C.
1720 North Main Street
Desoto, MO  63030

                                                     s/ JoAnn T. Sandifer
                                                     JoAnn T. Sandifer