**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 4:09-CV-731 CAS |
| v. | ) | |
| | ) | |
| ROBERT BELLISTRI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This declaratory judgment matter is before the Court on the parties' cross-motions for summary judgment, which are fully briefed. For the following reasons, the Court will grant plaintiffs' motion for summary judgment and deny defendant's motion for summary judgment.

**Background**

In March 2002, Glen Crouther purchased real property located in Arnold, Missouri, and executed a promissory note and deed of trust in favor of BNC Mortgage Inc. ("BNC"). The deed of trust did not name BNC as the beneficiary, but instead named plaintiff Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee of BNC and its successors and assigns.

Crouther failed to pay taxes on the property in 2002, 2003 and 2004. The Jefferson County Collector of Revenue held a tax sale for the property in August 2005 pursuant to Section 140.190, Missouri Revised Statutes (2000).[1] Defendant Bellistri was the high bidder at the tax sale, and was issued a certificate of purchase pursuant to § 140.290 on August 22, 2005. On May 12, 2006,

---

[1] All subsequent statutory references are to the Missouri Revised Statutes.

Bellistri sent BNC a notice of redemption as required under Section 140.405 of the Jones-Munger Act (the "Act"),[2] but did not send notice to MERS.

The collector of revenue of Jefferson County, Missouri, issued Bellistri a collector's deed in September 2006.  On April 4, 2007, after the collector's deed was issued, MERS, as nominee for BNC, assigned the deed of trust to Ocwen Loan Servicing, LLC ("Ocwen"), as servicer for Deutsche Bank National Trust Company.

Bellistri filed an action in state court to quiet title and eject Crouther from the property.  The defendants were Ocwen and Crouther.  The state circuit court granted Bellistri's motion for summary judgment against Ocwen and Crouther.  Ocwen appealed, and the Missouri Court of Appeals affirmed on the basis that Ocwen lacked standing because it did not have a legally cognizable interest in the property.  Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623-24 (Mo. Ct. App. 2009).

MERS and MERSCORP, Inc. (collectively "MERS") filed this action seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, declaring the collector's deed and quiet title judgment entered thereon void, or declaring that Bellistri took title to the real property subject to the debt secured by the deed of trust on the property at the time of the tax sale.  MERS asserts that both federal question and diversity jurisdiction exist.  Count I seeks a declaration that Bellistri violated the Jones-Munger Act by failing to provide notice to MERS of the tax sale and its right of redemption.  Complaint at 14.  Count II seeks a declaration that MERS' due process rights under the 5th and 14th Amendments were violated because the tax sale and issuance of the collector's deed deprived it of its property interest without notice and an opportunity to be heard.  Id. at 15-16.

---

[2]The Jones-Munger Act is codified at Sections 140.010-.855 of the Missouri Revised Statutes.

MERS' prayer for relief seeks the following:

> A.  A declaratory judgment declaring that Mr. Bellistri's failure to provide MERS notice of the tax sale and MERS' right of redemption violated the Jones-Munger Act, or in the alternative, a declaratory judgment that the tax sale provisions of the Jones-Munger Act are unconstitutional and void.

> B.  A declaratory judgment declaring that Mr. Bellistri's failure to provide MERS notice of the tax sale and MERS' right of redemption violated MERS' rights of procedural due process under the 5th and 14th Amendments of the United States Constitution and Article I, Section 10 of the Missouri Constitution.

> C. A declaratory judgment (i) declaring that the Collector's Deed issued to Mr. Bellistri and Circuit Court Judgment quieting title based on said Collector's Deed are null and void;[3] or (ii) ordering that Mr. Bellistri holds title to the Property subject to the Deed of Trust and indebtedness secured thereby.

> D. An award of costs and reasonable attorneys' fees to plaintiffs under 42 U.S.C. § 1988.

Complaint at 16-17.

**Legal Standard**

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party.  City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then

---

[3]Plaintiffs abandoned their request for a declaratory judgment that the state court quiet title judgment is null and void.  See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 10 (Doc. 37).

shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Where the parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law.  See, e.g., Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.").

**Facts**

I.

As a threshold matter, Local Rule 4.01(E) imposes requirements concerning statements of uncontroverted material fact in connection with summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Both parties filed statements of uncontroverted material fact in support of their motions for summary judgment. In significant part, defendant's response (Doc. 40) to plaintiffs' statement of facts fails to comply with the local rule. With respect to thirty-five identified paragraphs, defendant objects on the general grounds that (1) the allegations are based on opinion, and/or (2) no foundation has been laid for the introduction of the opinions, and/or (3) the allegations are based on hearsay, and/or (4) the allegations are not relevant because MERS no longer has any interest in the subject deed of trust.[4] Defendant fails to identify which objection relates to each statement of fact, and also fails to support his objections with specific references to portions of the record upon which he relies.

The "concision and specificity required" by rules such as Local Rule 4.01(E) "seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (cited case omitted). This type of local rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of

---

[4]Defendant's general objections as listed above are made in response to plaintiffs' Statement of Uncontroverted Material  Fact paragraph numbers 6-11, 13-17, 23-26, 29-35, and 69-80.

material fact to support a claim or a defense." Id. (internal quotation and citation omitted).  The Court will not attempt to determine which of the potential four objections defendant intended to lodge with respect to the thirty-five paragraphs, and each is deemed admitted under Local Rule 4.01(E).

II.

The Court finds the following facts for purposes of the instant motions for summary judgment:

1.  The subject property is a tract of land located in Jefferson County, Missouri, commonly known as 1210 Airglades, Arnold, Missouri 63010 (the "Property"), and more particularly described as:

> All of Lot Fifty-Six (56) of BAYSHORE, NORTH PLAT ONE, a Subdivision in U.S. Survey 202, as shown by plat on file in the Recorder's Office of Jefferson County, Missouri in Plat book 40, pages 13 and 14.

See Plaintiffs' Ex. 3, certified copy of the Deed of Trust.[5]

2.  On or about March 5, 2002, Glen L Crouther executed a promissory note to BNC Mortgage Inc. in the principal amount of $93,595.00 (the "Note"), that was endorsed in blank.  See Ex. 2, Aff. of Nichelle Jones, ¶ 3 and Ex. A attached thereto.

3.  To secure payment of the Note, Glen L. Crouther conveyed a security interest in the Property to MERS by deed of trust (the "Deed of Trust").  See Ex. 3, certified copy of the Deed of Trust.

4.  The Lender identified on the Deed of Trust was BNC Mortgage, Inc.  See Ex. 3, certified copy of the Deed of Trust.

---

[5]All subsequent exhibit references are to exhibits submitted in support of plaintiffs' motion for summary judgment.

5.  Mortgage Electronic Registration Systems, Inc. was identified as a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns and Mortgage Electronic Registration Systems, Inc. was named as beneficiary under the Security Instrument in that capacity.  See Ex. 3, certified copy of the Deed of Trust, Definitions (E).

6.  The provision of the Deed of Trust entitled "Transfer of Rights in the Property" provides that "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."  See Ex. 3, certified copy of the Deed of Trust.

7.  MERS held the above-described interests under the Deed of Trust until April of 2007. See Ex. 1, Aff. of William Hultman, ¶ 39.

8.  Beth Mahn, the Collector of Revenue of Jefferson County, Missouri (the "Collector") held a tax sale for the Property on August 22, 2005.  See Complaint (Doc. 1), ¶ 37 & Amended Answer (Doc. 12), ¶ 3.

9.  The sale was not a third-offering sale.  See Complaint (Doc. 1), ¶ 37 & Amended Answer (Doc. 12), ¶ 3.

10.  Defendant Robert Bellistri was the high bidder at the tax sale and the Collector issued a tax sale certificate of purchase on the Property.  See Complaint (Doc. 1), ¶ 38 & Amended Answer (Doc. 12), ¶ 3; and Ex. 4, certified copy of Collector's Deed.

11.  On May 12, 2006, Mr. Bellistri sent a certified letter addressed to BNC Mortgage notifying that entity of its right to redeem its security interest within 90 days from receipt of the letter.  See Ex. 5, certified copies of pleadings from Circuit Court of Jefferson County.

12.  This was the only notice of redemption right provided by Mr. Bellistri to any entity that might have held the deed of trust on the Property.  See Ex. 5, certified copies of pleadings from Circuit Court of Jefferson County.

13.  As of May 12, 2006, MERS remained the named beneficiary on the Deed of Trust on the Property.  See Ex. 1, Aff. of William Hultman, at ¶ 40.

14.  On May 12, 2006, MERS claimed an interest in the Property as holder and beneficiary of the legal title to the Deed of Trust on behalf of the owner of the Note.  See Ex. 1, Aff. of William Hultman, at ¶ 41.

15.  Bellistri admits that he did not mail any notice of tax sale redemption right to MERS. Bellistri's Amended Answer (Doc 12), at ¶ 7; Ex. 5.

16.  Bellistri asserts that "Section 140.405, RSMo, and the Due Process Clauses of the United States and Missouri Constitutions do not require that notice of tax sale redemption rights be sent to an agent or nominee of a beneficial owner."  Bellistri's Amended Answer (Doc. 7), at ¶ 61.

17.  In 2006, BNC no longer owned and had no interest in the Note or Deed of Trust.  See Ex. 2, Aff. of Nichelle Jones, ¶ 6.

18.  In 2002, BNC conveyed the Note to Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HEI.  See Ex. 2, Aff. of Nichelle Jones, ¶ 6.

19.  Following its initial purchase, the Note was held in an interim flow pool and on June 18, 2002, the Note was deposited into the segregated CDC Mortgage Capital Trust.  Since that date until the present, Deutsche Bank, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HEI, has held the ownership interest in the Note.  See Ex. 2, Aff. of Nichelle Jones, ¶ 7.

8

20.  On or prior to June 18, 2002, Deutsche Bank contracted with Ocwen Loan Servicing, LLC ("Ocwen") to serve as agent and servicer for it with respect to the Note, and Ocwen has served in that role ever since.  See Ex. 2, Aff. of Nichelle Jones, ¶ 8.

21.  From April 2002 through April 2007, MERS held legal title to the beneficial interests in the Deed of Trust on behalf of Deutsche Bank, as Trustee for the registered holders of the CDC Mortgage Capital Trust 2002-HEI ("CDC").  See Ex. 1, Aff. of William Hultman, ¶ 42.

22.  During the timeframe identified above, and continuing to the date of the Hultman Affidavit, Deutsche Bank, CDC and Ocwen were and remain members of MERS pursuant to MERS' Rules and Procedures.  See Ex. 1, Aff. of William Hultman, ¶ 43.

23.  During 2006, MERS had obligations to provide notices to the servicer on the Note, Ocwen, as set forth in MERS' Rules of Membership and MERS' Procedures Manual and the prior versions of MERS' Rules and Procedures which prescribed substantially identical notice obligations in May of 2006.  See Ex. 1, Aff. of William Hultman, ¶ 45 and Exs. A and B attached thereto.

24.  Neither Deutsche Bank nor Ocwen received any notice of the tax sale proceeding prior to the issuance of the Collector's Deed.  See Ex. 2, Aff. of Nichelle Jones, ¶ 11.

25.  On or about September 19, 2006, the Collector issued a collector's deed to Defendant Robert Bellistri, recorded as Document No. 2006R-046167 of the Jefferson County Land Records (the "Collector's Deed").  See Ex. 4, certified copy of Collector's Deed.

### Proceedings in the Circuit Court

26.  In December 2006, Mr. Bellistri filed a quiet title action in the Circuit Court of Jefferson County, Missouri, at Hillsboro, based on his Collector's Deed.  The defendants were Ocwen and Glen Crouther.  See Ex. 5, certified copies of pleadings from Circuit Court of Jefferson County.

27. On April 4, 2008, the Circuit Court of Jefferson County granted Mr. Bellistri's motion for summary judgment against Ocwen and Crouther and entered judgment vesting Mr. Bellistri with fee simple title in and to the Property and the improvements thereon (the "Judgment"). <u>See</u> Complaint (Doc. 1, ¶ 45) & Amended Answer (Doc. 12), ¶ 3.

28. Ocwen appealed the Judgment and on March 3, 2009, the Missouri Court of Appeals for the Eastern District affirmed the judgment on the grounds that Ocwen lacked standing to seek to set aside the tax sale. <u>Bellistri v. Ocwen</u>, 284 S.W.3d 619 (Mo. Ct. App. 2009).

29. On or about March 5, 2009, MERS corporate first learned, via an article on the Internet, about the litigation filed by Bellistri in the Circuit Court of Jefferson County, Missouri, to quiet title in the Property in himself based upon a Collector's Deed. <u>See</u> Ex. 1, Aff. of William Hultman, at ¶ 46.

30. Based upon its review of the pleadings filed in the quiet title action, MERS first learned that the Property had been the subject of tax sale proceedings in 2006 and that Mr. Bellistri was the high bidder at the tax sale. <u>See</u> Ex. 1, Aff. of William Hultman, at ¶ 47.

### MERS and the MERS® System

31. Mortgage Electronic Registration Systems, Inc. ("MERS") is a corporation organized under the laws of Delaware with its principal place of business in the State of Virginia. <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 5.

32. MERSCORP, Inc. is a private stock corporation organized under the laws of Delaware with its principal place of business in the State of Virginia. <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 6.

33. MERS is a wholly-owned subsidiary of MERSCORP, Inc., a private stock corporation whose shareholders and members include originating lenders and secondary market investors that use its services. <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 7.

34. Unless otherwise indicated herein, Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc are collectively referred to as "MERS."

35. MERS was developed in 1993 when Fannie Mae, Freddie Mac and Ginnie Mae published a white paper that analyzed the need for an electronic mortgage registration system for mortgage rights. See Ex. 1, Aff. of William Hultman, ¶ 9.

36. The need for such a system arose due to the active secondary mortgage market in the United States. See Ex. 1, Aff. of William Hultman, ¶ 9.

37. Originating lenders routinely sell the mortgage loans on the secondary market to investors such as Fannie Mae or Freddie Mac. See Ex. 1, Aff. of William Hultman, ¶ 10.

38. Because the investors in the secondary market often consist of institutional entities such as mutual funds and insurance companies, those entities often contract with servicing companies to handle the loan servicing obligations. See Ex. 1, Aff. of William Hultman, ¶ 12.

39. Prior to MERS, the investor or its designee would typically hold the note, with the servicing company appearing as the mortgagee in the land records. See Ex. 1, Aff. of William Hultman, ¶ 13.

40. If the servicing rights in the loan were sold or assigned, or in the absence of a servicing entity, if the investor's interest in the note was sold or assigned, those assignments had to be recorded in the land records to ensure that the proper entities received notice of actions affecting the security interest. See Ex. 1, Aff. of William Hultman, ¶ 14.

41. The process of drafting and recording multiple assignments incurs expense in terms of transaction costs, lawyers' fees, and filing fees. See Ex. 1, Aff. of William Hultman, ¶ 15.

42. These costs were often passed to the consumers – buyers and sellers of real estate. See Ex. 1, Aff. of William Hultman, ¶ 15.

43.  In addition, multiple assignments of mortgage interests led to errors and uncertainty in the chain of title because assignments were often missing, incomplete, inaccurate, or misfiled.  See Ex. 1, Aff. of William Hultman, ¶ 16.

44.  These problems led government corporations and agencies, including Fannie Mae, Freddie Mac, Ginnie Mae, the Federal Housing Administration, and Department of Housing and Urban Development, and the Department of Veterans Affairs, to participate in the creation of MERS, with many of these entities serving on MERS' Steering Committee and Advisory Council. See Ex. 1, Aff. of William Hultman, ¶ 18.

45.  The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land records.  See Ex. 1, Aff. of William Hultman, ¶ 19.

46.  Members pay annual membership fees for the right to register loans on the MERS® System, a registration fee to register a loan on the MERS® System, and transaction fees for other transactions and services performed on the MERS® System.  See Ex. 1, Aff. of William Hultman, ¶ 20.

47.  Every mortgage registered on the MERS® System has a unique mortgage identification number.  See Ex. 1, Aff. of William Hultman, ¶ 21.

48.  The borrower executes a deed of trust or mortgage (depending on the state) that is recorded is the land records and that deed of trust or mortgage lists Mortgage Electronic Registration Systems, Inc. as beneficiary, as nominee for the lender or the lender's successors and assigns.  See Ex. 1, Aff. of William Hultman, ¶¶ 21, 22.

49.   Mortgage Electronic Systems, Inc. will typically remain the mortgagee of record throughout the life of the loan; transfers between lenders or servicing contracts are tracked electronically through the MERS® System.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 23.

50.  At this time, approximately 50% of residential mortgages (or some 63 million loans) are registered on the MERS® System.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 24.

51.  In Missouri, MERS has approximately 600,000 active loans on which it holds the mortgage lien as the recorded mortgagee.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 25.

52.  The essence of MERS' business is to create a system for holding legal title to a security interest under a deed of trust or mortgage and a system to track changes in those mortgage interests in order to eliminate the need for frequent, recorded assignments of subsequent transfers of the servicing entity.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 26.

53.  One of the services MERS provides for its members is to keep track of the servicing entity and the note owner and to receive on their behalf legal notices of foreclosures, tax sales or other proceedings impacting the note-owner's interests in property.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 27.

54. The standard Rules governing membership in MERS, and incorporated into all MERS' agreements with its members, provide that MERS shall, within two business days, forward to the appropriate MERS Member or Members, in accordance with MERS' Procedures, all notices and other correspondence received by MERS with respect to the mortgage loans registers on the MERS® System for which MERS serves as mortgagee of record or secured party.  <u>See</u> Ex. 1, Aff. of William Hultman, ¶ 28 and Ex. A attached thereto.

55.  To carry out this obligation, MERS operates an electronic mailroom.   Pursuant to its Procedures Manual, which is incorporated into its agreement with its members, MERS scans all mail

received by it and routes the mail electronically to the current servicer or member.  See Ex. 1, Aff. of William Hultman, ¶ 29 and Ex. B attached thereto.

56.  MERS' members rely upon MERS to receive these legal notices and advise the servicing entity or current note owner of action that needs to be taken in response to the notice.  See Ex. 1, Aff. of William Hultman, ¶ 30.

57.  Where properties are registered with MERS, there is no need to review land records in search of multiple assignments.  See Ex. 1, Aff. of William Hultman, ¶ 31.

### MERS and the Tax Sale Proceedings

58.  If MERS had received notice of the tax sale proceedings of the Property, according to its Procedures Manual it should have immediately forwarded that notice to Ocwen, the servicing entity on the loan, or the Note owner so that action could be taken to protect the security interest in the Property and the interests of Deutsche Band and CDC.  See Ex. 1, Aff. of William Hultman, at ¶ 49.

59.  If MERS had notified Ocwen of the tax sale proceedings, pursuant to Ocwen's standard practices and agreement with Deutsche Bank, Ocwen should have immediately notified Deutsche Bank and paid the taxes, defended the proceedings, foreclosed on the property, or taken other action to protect the interests of Deutsche Bank.  See Ex. 2, Aff. of Nichelle Jones, ¶ 12.

60.  Mr. Bellistri did not provide notice to MERS, and MERS did not learn of the tax sale through other means until March 2009.  Accordingly, MERS did not protect its interests in the Property or the interests of Deutsche Bank or CDC, or notify Ocwen, Deutsche Bank or CDC, pursuant to its contractual obligations, of the necessity for action to protect those interests.  See Ex. 1, Aff. of William Hultman, at ¶ 50.

61.  In addition to the damage and loss of customer good will associated with this particular transaction and the detrimental impact upon MERS' relationship with Ocwen, Deutsche Bank, and CDC, the result in the tax sale proceeding threatens the plaintiffs' overall business model – at least in Missouri.  See Ex. 1, Aff. of William Hultman, at ¶ 51.

62.  MERS' business model is structured on the belief that under statutes like the Jones-Munger Act, tax purchasers must give notice to all persons and entities that claim a recorded interest in property, whether as nominee or otherwise.  See Ex. 1, Aff. of William Hultman, at ¶ 52.

63.  MERS' members, and the services that act on behalf of those members, rely on MERS to notify them of proceedings that might impact the members' interests in the secured property.  See Ex. 1, Aff. of William Hultman, at ¶ 53.

64.  Bellistri's claimed ability to obtain title without notifying MERS of the tax sale proceedings, despite MERS' record claim to a security interest, has caused MERS members to express to MERS fear of losing of their security interests without notice or an opportunity to protect those interests.  See Ex. 1, Aff. of William Hultman, at ¶ 54.

65.  Members of MERS, including two of its largest members, Fannie May and Freddie Mac, have expressed concern to MERS regarding the protection of their security interests that MERS holds as beneficiary of record as nominee for those entities.  See Ex. 1, Aff. of William Hultman, at ¶ 55.

66.  In addition, the American Land Title Association and the Mortgage Bankers Association, both significant players in the national mortgage industry, have expressed similar concerns to MERS regarding MERS' ability to protect its members' security interests.  The Mortgage Bankers' Association represents most of MERS' members.  See Ex. 1, Aff. of William Hultman, at ¶ 56.

15

67.  These concerns were raised in direct response to Deutsche Bank's loss of its security interest in the subject Property, the related Missouri state court litigation, and decisions from Arkansas and Kansas courts that similarly call into question MERS' right to notice of proceedings that could detrimentally impact the security interests that MERS holds as nominee for its members. See Ex. 1, Aff. of William Hultman, at ¶ 57.

68.  One of MERS' members, Fannie Mae, expressed the particular concern that if tax purchasers are not required to provide notice to MERS of tax sales or foreclosure proceedings, homeowners' associations, which often have a super-priority over other liens, may begin to foreclose on unpaid membership dues without notice to MERS (or the members for whom MERS hold the security interests) and acquire property free of the mortgage, resulting in a significant windfall to these associations.  See Ex. 1, Aff. of William Hultman, at ¶ 58.

69.  MERS' business depends upon proper notice of tax sales, foreclosures and other proceedings that could affect the security interest, and Bellistri's claimed ability to terminate the Deed of Trust in this case without notice to MERS will inevitably result in loss of business for MERS within the State of Missouri.  See Ex. 1, Aff. of William Hultman, at ¶ 59.

70.  When MERS' members lose their security interests as a result of MERS' failure to provide proper notice of tax sales, foreclosures, or similar proceedings, those members have in the past made demand upon MERS to step in and either compensate the member or unwind the transaction that caused the loss of their interest, at considerable expense to MERS.  See Ex. 1, Aff. of William Hultman, at ¶ 60.

71.  If Bellistri or other tax purchasers can continue to obtain title to property in Missouri without notifying MERS of the tax sale proceedings, despite MERS' record claim to a security interest, it is likely that other MERS' members will lose their interests and that those members will

make demand upon MERS to compensate them or to incur expenses to unwind the transaction, if possible.  See Ex. 1, Aff. of William Hultman, at ¶ 61.

**Discussion**

> I.   Bellistri's Collector's Deed is Void Because Bellistri Failed to Comply with the Mandatory Requirements of the Jones-Munger Act by Giving Notice to MERS of its Redemption Rights.

The Jones-Munger Act authorizes the county collector to enforce a lien for unpaid property taxes through sale of the property.  Under the Act, the purchaser at a sale pays the amount of the bid to the county collector, and the collector gives the purchaser a certificate of purchase, describing the land and other information relating to the sale.  §§ 140.280-.290.

The Jones-Munger Act allows the tax purchaser to obtain clear title to the property by means of a collector's deed under § 140.420.  To obtain such a deed, the tax purchaser must comply with § 140.405 (tax purchaser "shall not acquire the deed to the real estate, as provided for in section 140.420, until the person meets with the following requirement").  Section 140.405 provides:

> At least ninety days prior to the date when a purchaser is authorized to acquire the deed, the **purchaser shall notify any person who holds a publicly recorded** deed of trust, mortgage, lease, lien or **claim upon that real estate** of the latter person's right to redeem such person's publicly recorded security or claim. . . . Failure of the purchaser to comply with this provision shall result in such purchaser's loss of all interest in the real estate.

§ 140.405 (emphasis added).

The Jones-Munger Act allows the tax purchaser to confirm the validity of the collector's deed through a quiet title action under § 140.330.  That statute requires the joinder as defendants of "**all** parties who have, or **claim to have, or appear of record** in the county where such land or lot is situated, **to have** any interest in, or **lien upon**, such lands or lots." (Emphasis added).  Under the plain terms of § 140.330, the defendants in an action to quiet title are not limited to those who

17

actually possess an interest in or a lien on the property.  A party seeking to quiet title must include all who "appear of record" with a "claim" to having such an interest or lien.

The word "claim" means "to ask for, esp. as a right" or to "assert in the face of possible contradiction."  Webster's New Collegiate Dictionary (1981) at 203.  The word "claim" is also defined as the "assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional."  Black's Law Dictionary 240 (7th ed. 1999).  The plain terms of both Sections 140.330 and 140.405 do not require that the claim ultimately be adjudged legally valid. If a claimant asserts a claim of record, the claimant is entitled to be given notice of redemption rights and joined to the quiet title action.

The Missouri statute is consistent with the established principle that "[t]he Fourteenth Amendment's protection of 'property' . . . has never been interpreted to safeguard only the rights of undisputed ownership."  Fuentes v. Shevin, 407 U.S. 67, 86 (1972) (persons claiming a contractual right to possession of goods under an installment sales contract were entitled to notice prior to replevin of the goods).  A legitimate claim of a property interest warrants due process protection.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576-77 (1972).

Missouri courts have interpreted the Jones-Munger Act to apply to "all persons who have or claim to have or appear of record" to have such a claim.  Shaw v. Armstrong, 235 S.W.2d 851, 855 (Mo. 1951), overruled on other grounds by Journey v. Miller, 250 S.W.2d 164 (Mo. 1952)).  For example, in Campbell v. Siegfried, 823 S.W.2d 156 (Mo. Ct. App. 1992), a collector's deed was set aside where the tax sale purchaser failed to give notice to a subsequent purchaser of the property that he was acquiring a collector's deed, even though the subsequent purchaser was not a record owner at the time of the tax sale but purchased during the redemption period.  The court observed that the language of § 140.405 "is couched in terms which go from the specific 'deed of trust' to the more

18

general 'lien' or 'claim,'" id. at 158, and concluded this would "include anyone who has not received prior notice of the sale, but who has an interest that could be lost when the collector's deed is issued." Id. The subsequent purchaser had "at the very least, the equivalent of a 'claim upon that real estate.'" Id.

Similarly, in Glasgow Enterprises, Inc. v. Brooks, 234 S.W.3d 407 (Mo. Ct. App. 2007), the owner of the subject property, Mr. Brooks, got married but did not record his wife's interest in the property. Later, the Brooks refinanced the property. The settlement statement showed Mr. Brooks as the sole borrower, but the recorded deed of trust was executed by both Mr. and Mrs. Brooks. The purchaser at tax sale gave the statutory notice to Mr. Brooks but not to Mrs. Brooks. The trial court ruled in favor of the purchaser, but the court of appeals reversed. The court instructed that "Section 140.405 does not require notice to be given only to a publicly recorded owner of the property, i.e., Mr. Brooks, but it also requires notice to be given to any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon the property, i.e., Mrs. Brooks." Id. at 411. The court held that Mrs. Brooks was entitled to receive notice of redemption because the "publicly recorded Deed of Trust indicated that [she] had an interest in the Property." Id. at 411.

Based on the plain language of the statute and the Missouri cases interpreting it, the Court concludes that under § 140.405, notice of redemption rights must be given to anyone who claims a publicly recorded interest in the subject real property. In this case, defendant Bellistri failed to comply with the mandatory notice obligations of § 140.405. On August 22, 2005, when Bellistri purchased the property at the tax sale, MERS claimed a publicly recorded interest in the property as beneficiary as nominee for the lender and the lender's assigns. On May 12, 2006, with MERS still claiming an interest of record, Bellistri sent a notice of redemption to BNC but not to MERS.

On September 19, 2006, when the collector issued its deed to Bellistri, MERS still claimed a recorded interest in the property. Bellistri admits he never sent a notice of redemption to MERS.

The notice requirements of § 140.405 are "mandatory and must be obeyed." Valli v. Glasgow Enterprises, Inc., 204 S.W.3d 273, 277 (Mo. Ct. App. 2006) (quoting Hutchison v. Cannon, 29 S.W.3d 844, 847 (Mo. Ct. App. 2000)). The statute is clear that if a purchaser fails to comply with the statute's notice obligations, it "shall result in such purchaser's loss of all interest in the real estate." § 140.405; see Valli, 204 S.W.3d at 277; Hames v. Bellistri, 300 S.W.3d 235, 238-39 (Mo. Ct. App. 2009) (purchaser lost all interest in property where he failed to correctly state the redemption period in the statutory notice).

Under the plain terms of the statute, Bellistri had to give notice to MERS of redemption rights as a condition of receiving a valid collector's deed, and had to join MERS as a party to the quiet title action. Bellistri's failure to do so divests him of any interest in the property and requires that the Collector's Deed be set aside. MERS is therefore entitled to summary judgment on Count I of the complaint. Bellistri's motion for summary judgment should be denied to the extent it asserts that plaintiffs were not entitled to notice of any tax sale redemption rights under § 140.405.

II. Bellistri's Collector's Deed is Void as to MERS and MERS' Lenders and Assignees Because Bellistri Violated MERS' Due Process Rights Under the Fourteenth Amendment And The Missouri Constitution In Failing To Give The Statutorily Required Notice.

The Fourteenth Amendment to the United States Constitution prohibits a state from depriving any person of liberty or property without due process of law. Because Bellistri was proceeding under § 140.405, "there is no question" that he took on "the governmental obligation to give notice that satisfies due process." Schlereth v. Hardy, 280 S.W.3d 47, 51 (Mo. 2009) (en banc).

Bellistri failed to satisfy that obligation for two independent reasons. First, regardless of the validity of MERS' property interest, § 140.405 gives MERS a legal right to notice of the

proceedings.  Having created that right, the State of Missouri may not arbitrarily deprive MERS of its right.  Second, MERS' interest as a nominee is itself a sufficient property right to trigger a due process right to notice.  The Court will discuss each reason.

### A. The Due Process Clause Protects MERS' Statutory Right To Notice.

The source of most property rights is not the Constitution but "'existing rules or understandings that stem from an independent source such as state law.'"  Perry v. Sindermann, 408 U.S. 593, 602 n.7 (1972) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Here, the plain terms of § 140.405 grant MERS the right to notice once it files its claim of record.  Having given that statutory right to MERS, the State may not deprive MERS of its benefits.  See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (defendant has a "substantial and legitimate expectation" that State will honor a State-created procedural right, "and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation").

In § 140.330, the Missouri legislature has explicitly provided that those persons or entities, like MERS, who have a recorded "claim" to an interest in property "shall be joined as defendants" in an action to quiet title.  In § 140.405, the legislature provided that the tax purchaser "shall notify" all such persons or entities of their redemption rights as a condition of receiving a collector's deed.  These mandatory provisions give MERS a property right in receiving such notice and an arbitrary deprivation of that right violates due process.  The Missouri statute unambiguously gives MERS the right to notice before a collector's deed is issued on any real property in which MERS claims a record interest.

      B. <u>The Due Process Clause Protects MERS' Property Right As Nominee Of The Lender</u>.

The deed provides that MERS is beneficiary as "nominee for Lender or Lender's successors."  One definition of a nominee is a "party who holds bare legal title for the benefit of others."  Black's Law Dictionary 1072 (7th ed. 2002).  Such an interest is sufficient to bring an action at law and is therefore a species of property protected by due process.  The Supreme Court of the United States has held that claims similar to the lien rights MERS holds as nominee for its lenders are property entitled to due process protections.

The Supreme Court addressed the issue in <u>Sprint Communications Co. v. APCC Services, Inc.</u>, 554 U.S. 269, 128 S. Ct. 2531 (2008).  In <u>Sprint</u>, payphone owners assigned their claims for collection against long distance carriers to APCC for collection and APCC agreed to remit all proceeds of the litigation back to the assignors.  APCC had a comparable interest to that of MERS: a bare legal title to the claims but no equitable or beneficial interest therein.  The Court held that this interest was sufficient to confer standing to sue in federal court:

> [F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit.  Trustees bring suits to benefit their trusts; guardians ad litem bring suit to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suits to benefit testator estates; and so forth.

128 S. Ct. at 2543.

Sprint argued that the assignments were "nothing more than a contract for legal services." <u>Id.</u>  The Court disagreed, stating: "There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer (on the lawyer's promise to remit litigation proceeds).  The latter **confers a property right** (which creditors might attach); the former does not."  <u>Id.</u> at 2543-44 (emphasis added).

22

MERS had a legal right to file suit to foreclose the mortgage under § 443.190.  The right to file a lawsuit is "a substantial property right."  Kinsella v. Landa, 600 S.W.2d 104, 107 (Mo. Ct. App. 1980) (statutory right to contest will is a substantial property right).  The right to bring an action is a "constitutionally recognized property interest."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 807 (1985).  The Collector's Deed purports to vest clear title in Bellistri, free and clear of MERS' security agreement.  The deed thus attempts, without notice, to divest MERS of its right to file a lawsuit.  It violates due process to deprive MERS of that "protected property interest" without notice and an opportunity to be heard.  See Richards v. Jefferson County, Ala., 517 U.S. 793, 804 (1996).

The deed of trust also gives MERS the right to enforce the lien on the property via a power of sale in the trustee.  In Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935), the Supreme Court held that such a lien is a "substantive right[] in specific property," 295 U.S. at 590, including the "right to retain the lien until the indebtedness thereby secured is paid."  Id. at 594.  Accord, Anheuser-Busch Employees' Credit Union v. Davis, 899 S.W.2d 868, 869 (Mo. 1995) (en banc) ("mortgagee, whose interest in the property is publicly recorded, has a constitutionally protected property interest"); see also Conseco Fin. Servicing Corp. v. Missouri Dep't of Revenue, 195 S.W.3d 410, 416 (Mo. 2006) (en banc) (by virtue of its lien, "Conseco had a property interest in the manufactured home"); In re Foreclosure of Liens For Delinquent Land Taxes, 226 S.W.3d 250, 255 (Mo. Ct. App. 2007) (mortgagee has a financial interest in property that renders it an "interested party" entitled to bring suit to set aside tax sale even after its interests have been extinguished by the sale).

In purporting to divest MERS of that property interest without notice, the Collector's Deed violates due process.  On both substantive and procedural grounds, the State of Missouri could not

deprive MERS of its interest, as a nominee, in the note and deed of trust without due process. Because Bellistri admittedly gave no notice to MERS, despite its claim of record, the Collector's Deed violates due process.  This violation of due process entitles MERS to summary judgment on Count II of its complaint.

As a result of the due process violation, the Collector's Deed is subject to the lien.  See Anheuser-Busch, 899 S.W.2d at 870 ("Because the Credit Union received no such notice, the tax sale was insufficient to extinguish its deed of trust") (citing Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983)); Lohr v. Cobur Corp., 654 S.W.2d 883, 886 (Mo. 1983) (en banc) (tax sale is "insufficient to extinguish the deed of trust, which remains in full force and effect," when no notice given).  The Court has already held that the Collector's Deed must be set aside under the Jones-Munger Act.  In the alternative, the Court holds that  that the due process violation would require Bellistri to hold the deed subject to the lien of the deed of trust.

III.   Plaintiffs are Entitled to Summary Judgment on Defendant Bellistri's Remaining Affirmative Defenses.

Defendant Bellistri moved for summary judgment on three affirmative defenses: (1) MERS was not entitled to notice of the tax sale under the Jones-Munger Act; (2) MERS lacks prudential or constitutional standing to bring this action; and (3) plaintiffs cannot collaterally attack the state court quiet title judgment because of full faith and credit principles.  The Court has determined that MERS was entitled to notice of the tax sale under the Jones-Munger Act.  It now addresses defendant's other affirmative defenses.

A.   MERS Has Standing to Bring this Action.

The Court rejects Bellistri's contention that MERS lacks prudential or constitutional standing to challenge his failure to provide notice under the Jones-Munger Act.

As the nominee of the original lender, BNC, or the lender's assigns, MERS has bare legal title to the note and deed of trust securing it, and this is sufficient to create standing.  See Sprint, 128 S. Ct. at 2542 (party with bare legal title to claims but no equitable or beneficial interest therein has standing to sue in federal court).  Missouri courts also recognize the "general rule . . . that a bare legal title to the action is sufficient to maintain an action at law."  Holt v. Myers, 494 S.W.2d 430, 437 (Mo. Ct. App. 1973).

Constitutional standing has three elements.  A plaintiff must plead and prove:  (1) An "injury in fact," in other words, an invasion of a legally protected interest that is concrete and particularized, and is actual or imminent, not conjectural or hypothetical; (2) a "causal connection between the injury and the conduct complained of"; and (3) that a favorable decision is "likely" to remedy the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Under Sprint, MERS as a nominee satisfies each of those elements.  First, "'the assignee of a claim has standing to assert the injury in fact suffered by the assignor.'"  Sprint, 128 S. Ct. at 2542 (quoting Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 773 (2000)).  MERS has standing to assert the injury in fact sustained by Deutsche Bank: the loss of the security for the loan it acquired.

Second, there is a direct causal connection between that injury and the conduct of which MERS complains.  If Bellistri had complied with his statutory and constitutional obligation to give notice of the tax sale to MERS, under MERS' Procedures Manual it would have notified Deutsche Bank (through its servicer Ocwen), and Deutsche Bank would have taken the necessary steps to protect its interest and would not have lost its security.

Third, the relief requested – setting aside the collector's deed or making it subject to the lien – will redress that injury: "[T]he statements our prior cases made about the need to show redress of

the *injury* are consistent with what numerous authorities have long held in the assignment context, namely, that an assignee for collection may properly bring suit to redress the injury originally suffered by his assignor." Sprint, 128 S.Ct. at 2543.

Bellistri's claim that MERS no longer has standing because it subsequently assigned its rights to Ocwen is incorrect because it ignores the derivative nature of MERS' injury. The injury to Deutsche Bank, and correspondingly to MERS, was complete in September 2006 when the Collector's Deed was issued to Bellistri. The assignment to Ocwen did not occur until April 2007. Setting aside the Collector's Deed will redress the injury that Deutsche Bank sustained.

MERS also has standing to prosecute this action because the recording of the Collector's Deed and defendant Bellistri's insistence that he has no obligation to give notice to MERS affects MERS' fundamental business model and creates a realistic danger that it will lose customers. MERS' business model is based on the premise that its claim of record would entitle it to notice of events that might affect its customers' security interests, and that MERS would inform its customers of such events in time for them to take appropriate action. Here, Bellistri did not provide notice to MERS of the tax sale of the Property despite its recorded claim, and has taken the position he has no obligation to do so in any other transaction. As a result, several of MERS' customers have expressed concerns to MERS regarding its ability to protect their security interests. The likely result of these concerns is that current investors on mortgages registered on the MERS® System will withdraw from using MERS, causing MERS economic loss. The requested declaratory relief will redress that injury by clarifying that MERS is legally entitled to notice when it appears of record to claim an interest in property, thereby avoiding MERS' economic loss.

## B.  The Quiet Title Action is Not Entitled to Full Faith and Credit

The Court also rejects Bellistri's contention that the quiet title action in state court bars MERS from prosecuting this action based on full faith and credit principles.  Under 28 U.S.C. § 1738, the Full Faith and Credit Act, federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982).  "Full faith and credit comprises the law of issue and claim preclusion and 'is not a jurisdictional matter.'" Knutson v. City of Fargo, 600 F.3d 992, 996 (8th Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)).

"Under issue preclusion, previously known as collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'"  Knutson, id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  "Under claim preclusion, also called res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  Allen, 449 U.S. at 94.  State preclusion law is applied in analyzing issues under the Full Faith and Credit Act.  Knutson, 600 F.3d at 996.

Under Missouri law, issue preclusion or collateral estoppel will apply when (1) the issue in the present action is identical to the issue decided in the prior adjudication; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.  State ex rel. Haley v. Groose, 873 S.W.2d 221, 223 (Mo. 1984) (en banc).

27

Claim preclusion or res judicata applies under Missouri law when the following "four identities" occur: "1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." Creative Walking, Inc. v. American States Ins. Co., 25 S.W.3d 682, 686 (Mo. Ct. App. 2000) (citing King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 501 (Mo. 1991) (en banc)).

Neither issue preclusion nor claim preclusion bars the instant action. First, MERS was not a party to the quiet title action, and it was not in privity with Ocwen. As a matter of law, MERS as an assignor was not in privity with Ocwen, its assignee, with respect to a judgment entered after the assignment. "[L]itigation by the transferee cannot bind the transferor." 18A Wright, Miller & Cooper, Federal Practice & Procedure § 4462 at 666-67 (2d ed. 2002). Because both issue preclusion and claim preclusion require an identity of parties, the doctrines do not apply here.

Second, the Missouri Court of Appeals decided Ocwen on the basis of standing, not the merits. The sole basis for the Ocwen ruling was that "Ocwen lacked a legally cognizable interest in the property, and therefore, it has no standing to seek relief." 284 S.W.3d at 624. Thus, the court never reached the merits. See Healthcare Services of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 612 (Mo. 2006) (en banc) ("Because standing is jurisdictional in nature, a dismissal for lack of standing is not 'on the merits' for res judicata purposes."). Both res judicata and collateral estoppel apply only to "judgments rendered upon the merits." Property Exchange & Sales, Inc. v. King, 822 S.W.2d 572, 573 (Mo. Ct. App. 1992). Because there was no judgment on the merits in Ocwen, neither preclusion doctrine applies.

**Conclusion**

For the foregoing reasons the Court concludes that plaintiffs' motion for summary judgment should be granted as set forth herein, and plaintiffs are entitled to summary judgment on Counts I and II of the Complaint.  Defendant's motion for summary judgment should be denied.  The Court will issue a declaratory judgment that the Collector's Deed issued to defendant Bellistri is void.  The Court notes that defendant's Conditional Supplemental Counterclaim for Equitable Recoupment (Doc. 15) was not addressed in the parties' summary judgment motions and remains pending.  The Court urges the parties to meet and confer in order to present the Court with a proposed order concerning the issues raised by the Counterclaim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment is **GRANTED** as set forth herein.  [Doc. 28]

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED**. [Doc. 21]

An appropriate judgment will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  1st  day of July, 2010.